# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| DARYL WHITE, JR., individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:17-cv-04025-NKL |
| v. | ) ) | |
| JUST BORN, INC., | ) ) | |
| Defendant. | ) ) ) | |

## SUGGESTIONS IN SUPPORT OF PLAINTIFF'S
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION AND FACTUAL BACKGROUND ............................................ 1

II. EXAMINATION OF DEFENDANT'S LABELING STATEMENTS AND WHETHER A REASONABLE CONSUMER WAS MISLED ARE INAPPROPRIATE FOR AND UNAVAILING ON A MOTION TO DISMISS ....... 4

    A.    On a Motion to Dismiss, the Facts Alleged Are Accepted as True and   Viewed in the Light Most Favorable to the Plaintiff ........................................ 4

    B.    A Determination of Whether a Reasonable Consumer Would Be   Misled Is Not Appropriate for a Motion to Dismiss ........................................ 5

        1.    Labeling Statements Are Irrelevant to Slack-Fill Liability ............................ 6

        2.    It Is Settled Law that a Package Label Does Not Dispel   Confusion .......... 7

        3.    Consumers Are Not Charged with Manipulating Defendant's  Products to Determine if They Contain Non-Functional Slack- Fill .............................. 10

III. DEFENDANT'S CONDUCT VIOLATES THE MMPA ........................................ 11

    A.    Plaintiff Has Demonstrated that Defendant Violated the MMPA ................... 11

        1.    Plaintiff Has Properly Pled Ascertainable Loss ........................................... 12

        2.    Plaintiff Has Properly Pled Omission ........................................................... 14

        3.    Defendant Wholly Ignores Plaintiff's Claim that Defendant  Engaged in an Unfair Practice under the MMPA ........................................................... 15

    B.    Plaintiff Seeks Relief Under the MMPA and Missouri Common Law,  Not Under Federal and State Slack-Fill Laws ................................................ 16

    C.    Affirmative Defenses Do Not Absolve Defendant's Conduct ......................... 17

    D.    Plaintiff's Unjust Enrichment Claim Should Not Be Dismissed ..................... 19

    E.    Plaintiff Has Standing to Seek Injunctive Relief ........................................... 19

IV. CONCLUSION ................................................................................................... 20

Case 2:17-cv-04025-NKL   Document 28   Filed 05/11/17   Page 2 of 25

# TABLE OF AUTHORITIES

## CASES

*Arcala v. Golden Grain Company,* No. CGC-16-555084 at 2 (Ca. Super. Ct. Apr. 5. 2017) ................................................................................ 9, 10, 11, 17

*Arcese v. Daniel Schmitt & Co.*, 504 S.W.3d 772, 789 (Mo. Ct. App. 2016) ................ 19

*Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ............... 19

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ......................................... 4, 18

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009) .............................. 18

*Burton v. Hodgson Mill, Inc.*, No. 16-CV-1081-MJR-RJD, 2017 WL 1282882, at *6 (S.D. Ill. Apr. 6, 2017) .......................................................................................................... 5

*Bush v. Mondelez Int'l, Inc.* ("*Mondelez I*"), No. 16-CV-02460-RS, 2016 WL 5886886, at *1 (N.D. Cal. Oct. 7, 2016) ................................................................................. 8, 9

*Cain v. Arthrocare Corp.*, No. 4:06CV0452 HEA, 2006 WL 1892545, at *2 (E.D. Mo. July 10, 2006) ................................................................................................................. 15

*Chester v. TJX Companies, Inc.*, No. 515CV01437ODWDTB, 2016 WL 4414768, at *7–8 (C.D. Cal. Aug. 18, 2016) .......................................................................................... 20

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ...................................................... 8, 9

*Erickson v. Pardus,* 551 U.S. 89, 93 (2007) ....................................................................... 4

*Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209 (E.D.N.Y. 2016) ............................................ 9

*Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. 1972) ...................... 6, 17

*Forman v. Davis,* 371 U.S. 178, 182 (1962) ...................................................................... 4

*Hawkins v. Pearson Candy Co.*, Case No. 16PH-CV01565 ......................................... 2, 9

*Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 931–32 (N.D. Cal. 2014) ....................... 6

*Hobby Indus. Assn. of Am., Inc.,* 101 Cal. App. 3d at 367, 161 Cal. Rptr. 601 (Ct. App. 1980) ............................................................................................................................ 6, 7

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, No. MC 15-1825 (ESH), 2016 WL 6078250, at *6 (D.D.C. Oct. 17, 2016) ..................................... 6, 7

*Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *6-7 (S.D.N.Y. Oct. 26, 2016) ..................................................................................... 7, 10, 16

*Kelly v. Cape Cod Potato Chip Co.,* 81 F. Supp. 3d 754, 758 (W.D. Mo. 2015) ....... 13, 14

*Kline v. Iovate Health Sciences U.S.A.,* 3:15-cv-02387-L-WVG (S.D. Cal. Mar. 27, 2017) ...................................................................................................................................... 17

*Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312-13 (Mo. Ct. App. 2016) 5, 8, 17

*Owen v. Gen. Motors Corp.*, No. 06-4067 CV CNKL, 2006 WL 2803632, at *8 (W.D. Mo. Sept. 28, 2006) ........................................................................................................... 15

*Plubell v. Merck & Co.*, 289 S.W.3d 707, 715 (Mo. App. W.D. 2009) ........................... 13

*Robertson v. Conopco, Inc.*, 2:15-cv-04006-MJW (W.D. Mo. Sept. 26, 2016) ........... 8, 14

*Samet v. Procter & Gamble Co.,* No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *9 (N.D. Cal. June 18, 2013) ........................................................................................... 5, 17

*Ste. Genevieve Sch. Dist. R II v. Bd. of Aldermen of City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. 2002) ................................................................................................................ 20

*Stodghill v. Wellston School Dist.,* 512 F.3d 472, 476 (8th Cir. 2008) .............................. 4

*Thomas v. Costco Wholsale Corp.*, No. 5:12-CV-02908-EJD, 2014 WL 1323192, at *9 (N.D. Cal. Mar. 31, 2014) ............................................................................................... 5

*Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158 JAR, 2016 WL 4073713, at
    *3 n.3 (E.D. Mo. Aug. 1, 2016) ........................................................................ passim
*Victorian v. Wells Fargo Home Mortg.*, 4:15-CV-00667-AGF, 2015 WL 5766256, at *2
    (E.D. Mo. Sept. 30, 2015) ...................................................................................... 10
*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010) ................... 7
*Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) .............................. 5

## STATUTES

§ 196.075, RSMo. .......................................................................................................... 1
§ 407.020.1, RSMo. ............................................................................................... 11, 14
§ 407.025.2, RSMo. ...................................................................................................... 19

## OTHER AUTHORITIES

58 Fed. Reg. 64123-01 .................................................................................................. 6
58 Fed. Reg. 64124-25 .................................................................................................. 7
58 Fed. Reg. 64128 ..................................................................................................... 11
58 Fed. Reg. 64128-29 .................................................................................................. 6
58 Fed. Reg. 64131 ................................................................................................. 6, 12

## RULES

21 C.F.R. 100.100 .................................................................................................. 9, 18
58 Fed. Reg. 64130 ..................................................................................................... 18
Fed. R. Civ. P. 12(b)(6) .............................................................................................. 15
Fed. R. Civ. P. 8(a)(2) ................................................................................................... 4

## REGULATIONS

15 C.S.R. 60–9.110(3) ................................................................................................. 14
Cal. Bus. & Prof. Code § 12606.2 ................................................................................ 9
Mo. Code Regs. Ann. tit. 15, § 60-8.020 .................................................................... 16
Mo. Code Regs. Ann. tit. 15, § 60-8.090 ............................................................... 16, 17

# I.    INTRODUCTION AND FACTUAL BACKGROUND

The FDA and courts around the country recognize that the size of a non-transparent package conveys a message to consumers about the volume of its contents: "[F]ood shall be deemed to be misbranded . . . . (4) If its container is so made, formed or filled as to be misleading." *See* Compl. ¶ 17 (citing § 196.075, RSMo.). Here, it is indisputable that Defendant could have filled its Hot Tamales and Mike and Ike Products with more candy, but chose not to, deceiving consumers in violation of Missouri law. In fact, Defendant has sold *the exact same containers* that are the subject of this litigation as "promotional" products containing a 10% higher level of fill of the exact same candy. *Id.* ¶ 41. Accordingly, there is no functional safe harbor that would excuse Defendant's conduct. Moreover, contrary to Defendant's contention, the critical question in this litigation is not whether the Products are filled to the brim. Rather, it is whether they are filled less than they should be given the size of the cardboard packaging, and whether the oversized packaging and accompanying empty space is misleading to consumers.

Here, as pled, there is no doubt that Defendant's conduct is misleading. Defendant has packaged its Hot Tamales and Mike and Ike candies in non-transparent, cardboard boxes, which contain approximately 35% and 34% empty space, respectively. Compl. ¶ 3. Throughout his Complaint, Plaintiff alleges that the oversized containers enclosing Defendant's Products misled him to believe he was receiving *more* product than he in fact received. *See, e.g.,* Compl. ¶¶ 3-4, 56-57, 75-77. Furthermore, the amount of slack-fill included in Defendant's Products is well beyond the bounds of what could, even at first blush, be considered "reasonable." In an analogous case pending before the Circuit Court of Phelps County, the defendant packaged its Bit-O-Honey

1

candy in non-transparent, cardboard boxes, which were approximately 80% full. Under the terms of the Final Approval of Class Settlement and Final Judgment and Order of Dismissal with Prejudice, the defendant agreed to develop and put into production a cardboard carton that was approximately 20% smaller than the current carton such that, at the time of fill, the containers would have approximately 10% more product, or be about 90% full. *See Hawkins v. Pearson Candy Co.*, Case No. 16PH-CV01565, Memorandum In Support of Motion for Final Approval of Class Action Settlement and Final Approval Order, attached as Exhibits A and B to the declaration of Stephen Gaunt. By contrast, here, Defendant principally asserts that no reasonable consumer could be deceived by the 65%-66% fill level of its Products. This argument runs afoul of the facts pled, and settled law governing the Missouri Merchandising Practices Act ("MMPA").

To be sure, whether Plaintiff was in fact misled is a factual determination that is not appropriate for a motion to dismiss. Equally clear, however, is that Defendant may not package its Products with unlawful slack-fill, and then attempt to exonerate its conduct by labeling them with accurate net weight or serving size information. Likewise, consumers are not charged with scrutinizing the Product labels, or shaking and squeezing the Products to try to discern the amount of empty space therein. Rather, it is *Defendant* that is required to package its Products in compliance with the law. Similarly, Defendant cannot attempt to inject an overlay into its Motion about what a "reasonable consumer" should or could know about head-space or product packaging based on their purchasing experiences. As pled, consumers make snap judgments leading to purchasing decisions, wherein the size of a package is often the most important factor considered. *See* Compl. ¶ 2. Moreover, it is implausible to charge a consumer with discerning, based for example

on the "familiar rustling sound" or "feel of the candy pieces moving from side to side within the box" (Motion at 7) that the Hot Tamales and Mike and Ike candies are enclosed with approximately 35% or 34% empty space. A consumer could no sooner discern that their brake pads are precisely 60% worn based on the noise emitted when the car brakes are depressed. In both situations, a consumer may know that there is some empty space, or some wear, but the precise amount that is missing is impossible to determine without actual inspection. Here, as alleged, the opaque, rigid packaging prevented Plaintiff and members of the Classes from determining the amount of substantial, non-functional slack-fill in the container prior to purchase. Compl. ¶¶ 22, 25-26. Furthermore, Plaintiff and consumers suffered an ascertainable loss when, after purchasing the Products, they discovered that boxes were filled with far less candy than what was represented by the oversized packaging. *Id.* ¶ 58. It is precisely this consumer deception and injury that the MMPA seeks to prevent.

Defendant could (as in the Bit-O-Honey case) package its Products with substantially more candy than the boxes currently contain. Defendant has already demonstrated this to be true by packaging certain "promotional" Products with 10% more candy. Plaintiff, however, has not yet been able to inspect Defendant's manufacturing facilities or production equipment, or test Defendant's functionality assertions through expert analysis. Accordingly, Defendant's claims about any "functional reasons for the empty space in these Products" (Motion at 2) are wholly inappropriate at this stage of the case, and should be disregarded. As alleged, the significant amount of empty space included in the Products cannot be justified under any functional exception. *See* Compl. ¶¶ 29-55.

3

Defendant's claims about any legal shortcomings in Plaintiff's Complaint are also meritless. Plaintiff does not seek to privately enforce the FDA's regulations; rather, he asserts claims for violation of the MMPA and Missouri common law based on Defendant's misleading and unlawful conduct. In addition, the MMPA confers standing on Plaintiff to seek an injunctive remedy to prospectively deter prohibited conduct in order to protect Missouri citizens. This is true irrespective of whether Plaintiff now has knowledge of the slack-fill contained in Defendant's Products.

## II. EXAMINATION OF DEFENDANT'S LABELING STATEMENTS AND WHETHER A REASONABLE CONSUMER WAS MISLED ARE IN-APPROPRIATE FOR AND UNAVAILING ON A MOTION TO DISMISS

### A. On a Motion to Dismiss, the Facts Alleged Are Accepted as True and Viewed in the Light Most Favorable to the Plaintiff

The liberal pleading standard created by the Federal Rules of Civil Procedure merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (*per curiam*) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[]." *Stodghill v. Wellston School Dist.,* 512 F.3d 472, 476 (8th Cir. 2008). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* In the event a complaint is dismissed for failure to state a claim, leave to amend is "freely given." *See Forman v. Davis,* 371 U.S. 178, 182 (1962).

## B. A Determination of Whether a Reasonable Consumer Would Be Misled Is Not Appropriate for a Motion to Dismiss

Defendant requests that this Court take the extraordinary step of deciding a salient fact question (although it attempts to disingenuously posit the inquiry as a question of law), and determine that no reasonable consumer would be misled by the excessive non-functional slack-fill in the Products' packaging. Defendant makes this request despite the fact that Missouri courts, and others, have consistently rejected the notion that a court can decide this issue on a motion to dismiss. Moreover, this case does not represent a "rare circumstance" that would justify an early determination of whether a reasonable consumer would be deceived. *See Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158 JAR, 2016 WL 4073713, at *3 n.3 (E.D. Mo. Aug. 1, 2016) ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact that cannot be resolved on a motion to dismiss," and noting that the case is not one of the "rare situations" in which a court will find a lack of deception as a matter of law); *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312-13 (Mo. Ct. App. 2016) (declining to decide how a "reasonable consumer" perceives the term "all natural" at an early stage of litigation, and that the question is appropriately addressed on a motion for summary judgment or at trial).[1]

---

[1] *See also Samet v. Procter & Gamble Co.,* No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *9 (N.D. Cal. June 18, 2013) (finding that the amount of slack-fill expected by the reasonable consumer is a "debatable factual question that is inappropriate to resolve at the motion to dismiss stage."); *Thomas v. Costco Wholsale Corp.*, No. 5:12-CV-02908-EJD, 2014 WL 1323192, at *9 (N.D. Cal. Mar. 31, 2014) ("The Court finds that . . . [the] slack-fill claims are properly pled, may deceive a reasonable consumer, and are inappropriate to resolve at the motion to dismiss stage."); *Burton v. Hodgson Mill, Inc.*, No. 16-CV-1081-MJR-RJD, 2017 WL 1282882, at *6 (S.D. Ill. Apr. 6, 2017) ("[A] reasonable person's interpretation of the various labels and representations on a given product . . . is best left for the jury."); *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) ("California courts, however, have recognized that whether a business

### 1.    Labeling Statements Are Irrelevant to Slack-Fill Liability

In addition to being premature, Defendant's assertions about its labeling statements cannot insulate it from slack-fill liability. Whether a product is slack-filled or accurately labeled are *wholly separate inquiries*; a finding that a package is properly labeled has no bearing on whether or not it is also unlawfully slack-filled. *See* 58 Fed. Reg. 64123-01, 64128-29 (The "FDA finds that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading.").[2] This is because "[r]ecognizing that a product's packaging size is a representation, Congress stated . . . that 'Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label.'" *Id.* at 64131.[3] Accordingly, and despite Defendant's assertions to the contrary, label statements do not dispel the

---

practice is deceptive will usually be a question of fact not appropriate for decision on demurrer" and noting that "[t]he facts of this case . . . do not amount to the rare situation in which granting a motion to dismiss is appropriate.").

[2] *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. 1972) ("The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight.").

[3] *See also In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, No. MC 15-1825 (ESH), 2016 WL 6078250, at *6 (D.D.C. Oct. 17, 2016) ("The size of a package signals to the consumer vital information about a product and is as influential in affecting a customer's choices as an explicit message on its surface . . . .'[t]he size of [defendant's] containers is exactly what makes them misleading, because consumers cannot see the amount of their contents.'"); *Hobby Indus. Assn. of Am., Inc.,* 101 Cal. App. 3d at 367, 161 Cal. Rptr. 601, 606-07 (Ct. App. 1980) ("Very often package size suggests the size of the item housed therein: a big package implies big contents" and "[f]or a seller to package goods in containers which unknown to the consumer are appreciably oversized . . . is as much a deceptive practice, and an unfair method of competition, as if the seller was to make an explicit false statement of the quantity or dimension of his goods.") (internal citation omitted); *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 931–32 (N.D. Cal. 2014) ("StarKist's arguments miss the point of the allegations here. Plaintiff has alleged that Starkist's 5–ounce cans of tuna contain less tuna than would be expected, *i.e.,* not an 'adequate amount.' The appearance of the can itself, not its label, is what Plaintiff alleges to be misleading.").

misleading aspect of non-functional slack-fill. *Id*. at 64128-29, 64131. To hold otherwise, "the prohibition against misleading fill in section 403(d) of the act [would be] redundant." *Id.* at 64129. Therefore, manufacturers—like Defendant—are legally required to package their products in a non-misleading way, independent of, and in addition to, their legal obligation to accurately label the products.[4]

### 2. It Is Settled Law that a Package Label Does Not Dispel Confusion

Courts have consistently rejected the argument that a product's labeling can dispel the deception caused by unlawfully slack-filled packaging. In *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010), the product at issue was a partially filled container of nutritional-supplement powder. Despite the package label clearly displaying the product's weight and number of servings, the court found that the container could nonetheless constitute a "misleading representation," and, consequently, denied the defendant's motion to dismiss plaintiff's slack-fill and unjust enrichment claims. *See also Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *6-7 (S.D.N.Y. Oct. 26, 2016) (in a case involving slack-filled candy containers, the court "decline[d] to adopt [defendant's] theory that a manufacturer of a deceptively packaged product is immune from suit so long as the package accurately lists the product's net weight and quantity.").[5]

Missouri federal and state courts have likewise rejected the argument that

---

[4] *See id* at 64124-25 ("Section 403(d) of the act addresses a completely different aspect of how food is presented than the nutrition label does.").

[5] *See also Hobby Indus. Assn. of Am., Inc.,* 101 Cal. App. 3d at 367–68 (holding that "[c]lear disclosures on labels, scale drawings, and other informative matter may not counteract the impression created by the size of the package, and in this sense slack fill can be viewed as inherently deceptive" and "as implicitly imparting inaccurate information."); *In re McCormick & Co.,* 2016 WL 6078250, at *6.

accurate product labeling can eliminate consumer deception caused by packaging misrepresentations. In *Thornton,* 2016 WL 4073713, at *1, the plaintiff alleged that defendant misrepresented that its muffin mix contained "Nothing Artificial" when, in fact, it contained artificial, synthetic substances. Defendant argued that a reasonable consumer would not have been deceived because the product's ingredient list clearly disclosed the disputed ingredients and therefore the packaging was not misleading. *Id.* at 2. The court rejected Defendant's argument, holding that "the mere presence of an ingredient statement on the back of a product does not eliminate the possibility that reasonable consumers may be misled, and that the effect that an ingredient statement may have on a reasonable consumer's understanding of advertising and product labels involves a factual inquiry." *Id.* at 3 (internal citation and quotation marks omitted); *see also Robertson v. Conopco, Inc.*, 2:15-cv-04006-MJW (W.D. Mo. Sept. 26, 2016) (Doc. 36 at 10), attached as Exhibit B ("reasonable consumers could still be deceived or misled by certain products despite their having an ingredient list on the package."); *Murphy*, 503 S.W.3d at 312-13 ("The FDA does not require an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield from liability for that deception. . . . While the presence of an ingredient list may be relevant to [Defendant's] defense at trial, the 'ingredient list' defense cannot, as a matter of law, defeat an MMPA claim.").

Notwithstanding the weight of authority to the contrary, Defendant relies primarily on four non-binding decisions, *three* of which are not slack-fill cases: *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016); *Hawkins v. UGI Corp.*, No. CV1408461DDPJCX, 2016 WL 2595990, at *1 (C.D. Cal. May 4, 2016); *Fermin v.*

*Pfizer Inc.*, 215 F. Supp. 3d 209 (E.D.N.Y. 2016); and *Bush v. Mondelez Int'l, Inc.*, No. 16-CV-02460-RS, 2016 WL 5886886, at *1 (N.D. Cal. Oct. 7, 2016). These cases are easily distinguished. *Fermin* is wholly irrelevant because the products at issue were containers of Advil, a pain-relief medicine, and the slack-fill regulation at issue in this case (21 C.F.R. 100.100) governs "food," not medicine. 215 F. Supp. 3d at 209. Therefore, neither 21 C.F.R. 100.100, nor the FDA's pronouncements concerning that regulation, directed the court's analysis.

Equally inapposite is *Ebner*, in which the plaintiff incorrectly alleged that certain product in a container that was not readily accessible constituted slack-fill. *Ebner*, 838 F.3d at 967-68. Yet "[t]his cannot constitute 'slack fill' because under the plain language of the statute, slack fill means the portion of the container *without* product, *i.e.*, empty space." *Id; see also Arcala v. Golden Grain Company,* No. CGC-16-555084 at 2 (Ca. Super. Ct. Apr. 5, 2017), attached as Exhibit A ("*Ebner v. Fresh, Inc.* . . . is not a slack fill case."). Similar to *Ebner*, the plaintiffs in *Hawkins*—which is also not a slack-fill case—alleged that a certain amount of propane in a reusable cylinder was unlawful because it was not readily accessible. 2016 WL 2595990, at *1. And like *Ebner*, *Hawkins* therefore has no bearing on what constitutes deception in the instant case, where the Plaintiff asserts claims regarding the Products' unlawful slack-fill.

Similarly unavailing is *Bush,* a California case that concerned slack-filled containers of cookies. Unlike its federal counterpart at issue in this case, California's slack-fill regulation (Cal. Bus. & Prof. Code § 12606.2) defines "nonfunctional slack-fill" as "the empty space in a package that is filled to substantially less than its capacity[.]" In contrast, 21 C.F.R. 100.100 defines "nonfunctional slack-fill" as "the empty space in a

9

package that is filled to less than its capacity," and conspicuously omits the requirement that the empty space be "substantial."[6]  Moreover, "*Bush* directly conflicts with the FDA's guidance on whether accurate statements regard[ing] net weight on a package label are sufficient to evade liability under slack-fill laws.  Indeed, the issue was not actually handled in *Bush* because the argument was raised of the first time in opposition, and thus the court deemed the argument waived."  *Arcala,* Exh. A, at 2-3.  Finally, *Bush* involved snack containers with some, undefined amount of "slack-fill at the top."  2016 WL 5886886, at *3.  This is vastly different than here, where Defendant's Products are approximately 34% and 35% empty.

### 3.  Consumers Are Not Charged with Manipulating Defendant's Products to Determine if They Contain Slack-Fill

Defendant erroneously attempts to evade its burden to lawfully package its Products by requiring consumers to manipulate the Products' packaging to divine the amount of slack-fill based on, for example, the "rustling sound" and a "gentle squeezing" of the cardboard box.  Motion at 6-7.  As an initial matter, Plaintiff's Complaint contains no allegations regarding Plaintiff's—or anyone's—auditory or tactile experience with the Products.  Accordingly, Defendant is improperly attempting to introduce, and then argue, its own factual allegations, which is clearly not permitted.[7]

In addition, such manipulation and rank speculation not only fail to relieve Defendant from slack-fill liability, but this very argument was explicitly considered and rejected on a motion to dismiss in *Izquierdo*, 2016 WL 6459832, at *7:

---

[6]Although Plaintiff is not required to show that the slack-fill is substantial, as alleged and depicted, it *is* substantial.  The inclusion of approximately 35% and 34% non-functional empty space in the Products is indefensible under any slack-fill standard.

[7] *See Victorian v. Wells Fargo Home Mortg.,* 4:15-CV-00667-AGF, 2015 WL 5766256, at *2 (E.D. Mo. Sept. 30, 2015) (excluding all references made by the defendant to facts outside of the plaintiff's complaint).

> [Defendant] separately argues that the Candy box is not misleading because the consumer can plainly feel and hear the existence of empty space in the box upon reasonable inspection. Whether a reasonable consumer would think to shake, squeeze, or manipulate the Candy box, and whether that reasonable consumer would actually be able to feel the existence of slack-fill, are questions of fact that are inappropriate for resolution at the motion to dismiss stage.[8]

The FDA also rejected the notion that a consumer is required to manipulate a package to ascertain an accurate visual estimate, finding that requiring a consumer to redistribute and assess a container's contents will not adequately assure that consumers will not be misled. *See* 58 Fed. Reg. 64128. Moreover, no amount of shaking or squeezing of the Products would inform consumers that they are approximately 35% and 34% under-filled. Thus, even assuming that a consumer had knowledge that packages contain some empty space, that knowledge would not dispel the deception created by the amount of substantial, excessive slack-fill that is present in Defendant's Products.

## III.   DEFENDANT'S CONDUCT VIOLATES THE MMPA

### A.    Plaintiff Has Demonstrated that Defendant Violated the MMPA

The MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce[.]" § 407.020.1, RSMo. The MMPA is interpreted broadly to promote its purpose to protect consumers. *Thornton*, 2016 WL 4073713, at *2. As alleged, Plaintiff and similarly situated consumers purchased Defendant's Products and suffered an ascertainable loss because they would

---

[8] *See also Arcala,* Exh. A, at 2 ("Much of defendant's argument rests on facts regarding (i) functionality (ii) product descriptions on the package and (iii) what a consumer would think on picking up a package. But these facts are – of course – not cognizable on a demurrer, where I assume all the allegations of the complaint are true.").

not have purchased the Products, or would have paid less for them, had they known they included substantial non-functional slack-fill. These facts are sufficient to overcome Defendant's Motion to Dismiss.[9]

In fact, Defendant appears to concede the Products' deceptive nature when it surprisingly argues "it is hard to believe that White had never purchased a box of Hot Tamales or Mike & Ike" or that "it was also his first time purchasing any kind of boxed candy," and had Plaintiff done so, he would no longer be deceived by the Products. Motion at 11. Not only must the Court reject Defendant's improper speculation and additional attempt to inject "facts" into Plaintiff's Complaint that run contrary to his claims, but the FDA has specifically rejected Defendant's unavailing argument: "FDA also notes that, although consumers may become used to the presence of nonfunctional slack-fill in a particular product or product line, the recurrence of slack-fill over an extended period of time does not legitimize such slack-fill if it is nonfunctional." 58 Fed. Reg. at 64131. Accordingly, the Court should similarly reject Defendant's "fool me once, shame on you; fool me twice, shame on me" argument.

### 1. Plaintiff Has Properly Pled Ascertainable Loss

"Missouri courts apply the 'benefit of the bargain' rule when determining if a plaintiff has suffered an ascertainable loss under the MMPA." *Thornton,* 2016 WL 4073713, at *3. "Under the benefit of the bargain rule as applied to MMPA claims, Plaintiff need only allege that the actual value of the product as purchased was less than the value of the product as represented to state a claim for an ascertainable loss." *Id.*

---

[9] Defendant's conclusory claim that "White fails to allege any conduct by defendant Just Born that plausibly amounts to one or more of the unlawful acts" (Motion at 10) wholly ignores the dozens of highly specific factual allegations in the Complaint describing Defendant's unlawful conduct.

Here, Plaintiff has alleged that "Plaintiff and members of the Classes suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented." Compl. ¶¶ 58, 77. Specifically, Plaintiff contends that, based on the oversized Product containers—which were 35% and 34% empty—Plaintiff and Class members were misled to "believe[] they were purchasing *more Product* than was actually received." Compl. ¶¶ 57, 73 (emphasis added). Accordingly, the value of the additional product Plaintiff and Class members believed they were receiving is an ascertainable loss under the MMPA.[10]

Defendant's contention that "the Products are labeled with 5 oz. on the packaging and White received 5 oz. of candy" (Motion at 10) entirely misconstrues the Complaint and the ascertainable loss requirement of the MMPA. Indeed, Plaintiff's claims are predicated on the misrepresentations made by Defendant based on the Products' substantially oversized containers, which misled Plaintiff and the Classes to believe they were purchasing *more candy* than they in fact received—irrespective of any labeling statements. That is because, as described in detail herein, labeling statements do not dispel the confusion caused by unlawfully slack-filled packaging. Accordingly, Plaintiff

---

[10] *See, e.g., Kelly v. Cape Cod Potato Chip Co.,* 81 F. Supp. 3d 754, 758 (W.D. Mo. 2015) ("Plaintiff's Petition, alleging that the Chips as purchased were worth less than as represented[,] sufficiently states that she has suffered an ascertainable loss under the MMPA at this stage of the litigation."); *Robertson,* Exh. B at 9, "Plaintiff . . . has pled that, '[b]ecause the Products are not 'natural' as they are represented to be, the Products as sold were worth less than the Products as represented, and Plaintiff and class members paid more for them than they would have had the truth [been] known.' Accepting these allegations as true for purposes of the instant motion to dismiss, Plaintiff has pled a plausible theory of damages.") (internal citation omitted); *Thornton,* 2016 WL 4073713, at *3 ("Here, Plaintiff alleges she paid a premium for the Mix due to the 'Nothing Artificial' labeling and that her damages include the 'difference between the actual value of the product and the value of the product if it had been as represented.' . . . Based on these allegations . . . the Court finds Plaintiff has alleged a plausible theory of damages."); *Plubell v. Merck & Co.,* 289 S.W.3d 707, 715 (Mo. App. W.D. 2009).

13

has satisfied the ascertainable loss requirement of the MMPA.[11]

### 2. Plaintiff Has Properly Pled Omission

As noted *supra*, the MMPA prohibits "omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce[.]" § 407.020.1, RSMo. "The regulations under the MPA further define *omission* of a material fact as 'any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her.' 15 C.S.R. 60–9.110(3).

Defendants' inclusion of non-functional slack-fill in the Products is itself a material omission, something which the Complaint repeatedly alleges: "Defendant incorporates substantial non-functional slack-fill into the Products' non-transparent packaging" and that these "omissions . . . are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers." Compl. ¶¶ 73-74. In addition, Plaintiff alleges that Defendant's "omissions are uniform because the Product containers are identical in size and the Hot Tamales and Mike and Ike Products are packaged in uniformly-sized containers, which have approximately 35% and 34% slack-fill, respectively." *Id.* ¶ 28.

---

[11] Contrary to Defendant's assertions, Plaintiff never alleges he believed the candy box would be "filled to the brim." Motion at 4-5. As alleged and explained herein, the packaging *size* is a representation of the amount of product contained therein. In addition, Plaintiff need not specifically allege precisely "how much candy he thought he was purchasing." Motion at 4-5. *See, e.g., Robertson*, Exh. B, at 10 ("Defendant further argues that Plaintiff has failed to plead how much 'more' she paid for the Products; what the 'actual value' of the Products is; what the value of the Products would have been if they 'had been as advertised; and whether a cheaper comparable product exists. . . . The Court finds that here, Plaintiff has plausibly alleged an ascertainable loss, sufficient to survive a motion to dismiss[.]") (internal citations omitted); *Craft v. Philip Morris Companies, Inc.*, No. 002-00406A, 2003 WL 23139381, at *4-9 (Mo. Cir. Ct. Dec. 31, 2003); *Kelly*, 81 F. Supp. 3d at 759; *Thornton*, 2016 WL 4073713, at *4.

Defendant's argument misses the essential point—the size of its packaging alone makes a representation to consumers about the amount of candy contained in the box. Thus, by enclosing the containers with substantial empty-space, Defendant makes a material omission to consumers. Accordingly, Plaintiff's allegations more than adequately state a claim based on Defendant's omissions under the MMPA. *See Cain v. Arthrocare Corp.*, No. 4:06CV0452 HEA, 2006 WL 1892545, at *2 (E.D. Mo. July 10, 2006) ("Plaintiff's allegation that Defendant's failure to disclose the suture anchor's history constituted concealment and/or omission under the MPA, the omission was material, and that the unfair practice caused a substantial injury to Plaintiff is sufficient under Rule 12(b)(6)"). Furthermore, to the extent that discovery reveals additional omissions made by Defendant, Plaintiff cannot be expected to know or plead them at this stage. *Owen v. Gen. Motors Corp.*, No. 06-4067 CV CNKL, 2006 WL 2808632, at *8 (W.D. Mo. Sept. 28, 2006) ("Requiring the Owens to plead with particularity which agent . . . omitted the material information and precisely where and when the omission occurred would put the[m] in the untenable position of having to plead a negative. Such a draconian reading of Rule 9 would read the words 'concealment, suppression, or omission' right out of the MMPA by making it impossible to take such a claim beyond the pleading stage.").

### 3. Defendant Wholly Ignores Plaintiff's Claim that Defendant Engaged in an Unfair Practice under the MMPA

In contending (erroneously) that no reasonable consumer would have been misled under the MMPA, Defendant ignores Plaintiff's allegations that Defendant engaged in an *unfair practice* under the MMPA. *See* Compl. ¶¶ 13, 72-73. The MMPA prohibits unfair business practices, including, for example, "for any person in connection with the

advertisement or sale of merchandise to engage in any method, use or practice which (A) Violates state or federal law intended to protect the public; and (B) Presents a risk of, or causes substantial injury to consumers."  Mo. Code Regs. Ann. tit. 15, § 60-8.090. Plaintiff has alleged that Defendant's conduct violates both federal and parallel Missouri statutes prohibiting unlawful slack-fill, and that Plaintiff and Class Members have suffered an ascertainable loss as a result of Defendant's conduct.  *See* Compl. ¶¶ 13-17; 58, 77.  As relevant here, "[p]roof of deception, fraud, or misrepresentation is *not required* to prove unfair practices as used in section 407.020.1."  Mo. Code Regs. Ann. tit. 15, § 60-8.020 (emphasis added).  Thus, although Plaintiff has demonstrated that Defendant's conduct deceived reasonable consumers, a showing of deception or misrepresentation is not required to state a claim that Defendant engaged in an unlawful practice in violation of the MMPA.  *Id.*

### B. Plaintiff Seeks Relief Under the MMPA and Missouri Common Law, Not Under Federal and State Slack-Fill Laws

As is demonstrated by the abundant case law cited herein, plaintiffs routinely and properly seek relief under state consumer protection laws based on a defendant's misleading conduct in packaging products with non-functional slack-fill.  Plaintiff does not seek—as Defendant asserts—to enforce the FDA's slack-fill regulations, a fact that is aptly demonstrated by Plaintiff's Complaint, which asserts claims for violation of the MMPA and unjust enrichment.  *See* Compl. ¶¶ 71-84.  Furthermore, there is no prohibition on alleging violations of the MMPA based on a defendant's misleading and unlawful conduct of including non-functional slack-fill in consumer products.  To the contrary, numerous courts have expressly sanctioned claims for violation of state consumer protection laws based on slack-fill violations.  *See, e.g., Izquierdo*, 2016 WL

16

6459832, at *4 ("While Plaintiffs claim that [Defendant] violated federal regulations barring non-functional slack-fill, Plaintiffs do not seek relief under federal law. Rather, they argue that, in failing to comply with federal statutes and regulations, Defendants have violated state laws."); *Samet,* 2013 WL 3124647, at *4, *7 ("Plaintiffs are not suing under the FDCA, but under California state law" and "the FDCA does not prohibit separate state-law actions touching upon this field[.]"); *Arcala,* Exh. A, at 2 ("Nor is it relevant that there are no federal causes of action. A violation of federal law can be a predicate for the state [consumer protection] claims.").[12]

### C. Affirmative Defenses Do Not Absolve Defendant's Conduct

Defendant seeks to rely on the FDA safe-harbors to justify its conduct. *See* Motion at 8-10. Defendant—once again—improperly attempts to introduce alleged facts concerning, for example, the Products' perforated dispenser tab and the machinery and packaging equipment used in connection with the Products—all of which must be disregarded on a motion to dismiss. *Murphy,* 503 S.W.3d at 312 ("The parties should have been allowed to proceed with discovery and allow these fact questions to be resolved by a motion for summary judgment, if appropriate, or by a jury, not by a motion to dismiss.") (internal citation omitted).

Moreover, Defendant—not Plaintiff, as Defendant asserts—bears the burden to prove compliance with the enumerated safe-harbor provisions. *See Kline v. Iovate Health Sciences U.S.A.,* 3:15-cv-02387-L-WVG (S.D. Cal. Mar. 27, 2017) (Doc. 25 at 4-5)

---

[12] Indeed, the Court may look to the slack-fill regulations for guidance concerning Defendant's misleading and unlawful conduct. *See Foremost-McKesson, Inc.,* 488 S.W.2d at 197 ("The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight."). And as explained *supra,* to assert an unfair practice under the MMPA (*see, e.g.,* Mo. Code Regs. Ann. tit. 15, § 60-8.090), Plaintiff must allege the applicable federal and state laws that Defendant violates, which is precisely what Plaintiff has done.

(rejecting Defendant's argument that "Plaintiffs failed to sufficiently allege that the slack-fill contained in the packaging is nonfunctional," and holding that "*Defendant* has not established it is entitled to one or more safe harbors contained in either § C.F.R 100.100 or [California's equivalent slack-fill law]." (emphasis added); *see also* 58 Fed. Reg. 64130 ("*[M]anufacturers* . . . should be prepared to demonstrate that the level of fill is appropriate for the particular product, and that package size cannot be further reduced.") (emphasis added). Otherwise, "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the 'complaint is construed most favorably to the nonmoving party,' and would impose the sort of 'probability requirement' at the pleading stage which *Iqbal* and *Twombly* explicitly reject." *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 597 (8th Cir. 2009) (internal citations omitted).[13]

Furthermore, Plaintiff has more than adequately alleged that Defendant intentionally included non-functional slack-fill in the Products to mislead consumers, and for no other reason that would be subject to a safe-harbor defense. *See, e.g.,* Compl. ¶¶ 29-55. In fact, it is unequivocal that Defendant could have filled its Hot Tamales and Mike and Ike Products with more candy, but chose not to, because Defendant has sold *the exact same containers* that are the subject of this litigation as "promotional" products

---

[13] Defendant's own argument underscores precisely why Defendant, who possesses the relevant information, bears the burden to prove compliance with the enumerated safe-harbor provisions: "A consumer would not know, for example, that the empty space was there because of 'protection of contents,' 'requirements of the machines' that manufacture or box the product, 'product settling' occurring in shipping, or 'inability to increase level of fill or to further reduce the size of the package.'" Motion at 9. Nor does Plaintiff allege, as Defendant incorrectly posits, that Plaintiff would no longer be deceived were Defendant able to establish a safe-harbor. Motion at 9-10. Whether Defendant can establish a safe harbor does not alter the deceptive nature of its conduct.

containing a 10% higher level of fill of the exact same candy. Compl. ¶ 41. *See also* Exhibits A and B to the Gaunt Decl.

### D. Plaintiff's Unjust Enrichment Claim Should Not Be Dismissed

Defendant's only argument as to why Plaintiff's unjust enrichment claim should be dismissed is that it is derivative of Plaintiff's MMPA claim. *See* Motion at 14. Because Plaintiff's MMPA claim survives for all the reasons set forth herein, so too does the unjust enrichment claim. Plaintiff may also pursue alternative theories at the pleading stage, which Plaintiff has properly done. *See Thornton*, 2016 WL 4073713, at *4.

### E. Plaintiff Has Standing to Seek Injunctive Relief

The MMPA expressly permits a plaintiff to seek an injunctive remedy. § 407.025.2, RSMo. ("In any action brought pursuant to this section, the court may in its discretion order, in addition to damages, injunction or other equitable relief . . . ."). In addition, "the MMPA broadly prohibits false, fraudulent or deceptive merchandising practices and affords our trial courts remedial measures (i.e., damages, injunctions, equitable relief, and attorney's fees), designed not only to remedy violations of the MMPA, but also prospectively to deter prohibited conduct and protect Missouri citizens." *Arcese v. Daniel Schmitt & Co.*, 504 S.W.3d 772, 789 (Mo. Ct. App. 2016). Accordingly, the MMPA expressly confers standing on Plaintiff to seek an injunctive remedy, in part to protect other Missouri citizens, and to deter future unlawful conduct by Defendant. This is true irrespective of whether Plaintiff has knowledge of the slack-filled contents of Defendant's Products.[14] *See, e.g., Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("To hold otherwise would denigrate the New York

---

[14] Plaintiff also has alleged that he would "likely purchase the Products in the future if the Products complied with the applicable laws." Compl. ¶ 59.

consumer protection statute, designed as a major support of consumers who claim to have been cheated. . . . An injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf."); *Chester v. TJX Companies, Inc.*, No. 515CV01437ODWDTB, 2016 WL 4414768, at *7–8 (C.D. Cal. Aug. 18, 2016) ("It is inconceivable to think prospective relief in the false advertising context is bound by the rules of 'fool me once, shame on you; fool me twice shame on me.' The Court . . . refuses to find that, once a plaintiff has alleged that she was deceived, she likely will not voluntarily be deceived again . . . ").

In addition, this case was originally filed in state court, where Article III clearly does not apply. Under a Missouri state standing analysis, Plaintiff would have standing to seek injunctive relief.[15] However, were the Court to accept Defendant's interpretation of Article III, then those manufacturers, like Defendant, who cause the most injury to consumers by selling sufficient unlawful product to establish federal court jurisdiction under CAFA, would be shielded from injunctive relief. Yet those manufacturers who injure far fewer consumers than Defendant has, and are thus unable to satisfy CAFA, would be subject to injunctive relief in state court. The United States Constitution could not possibly dictate such an unfair and perverse result.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

---

[15] *See, e.g., Ste. Genevieve Sch. Dist. R II v. Bd. of Aldermen of City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. 2002).

Date: May 11, 2017

Respectfully submitted,

STEELMAN, GAUNT & HORSEFIELD

By: _/s/ David L. Steelman_
David L. Steelman, #27334 MO
Stephen F. Gaunt #33183 MO
901 N. Pine Street, Ste. 110
Rolla, MO 65402
Telephone: 573-341-8336
Fax: 573-341-8548
dsteelman@steelmanandgaunt.com
sgaunt@steelmanandgaunt.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 11, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

_/s/   David L. Steelman_