**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

DARYL WHITE, JR., Individually )
and on behalf of all others similarly )
situated, )
       )
               Plaintiffs, )      Case no.: 2:17-cv-04025-C-NKL
       )
vs. )
       )
JUST BORN, INC., )
       )
               Defendant. )

## ORDER

Defendant Just Born, Inc. moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

Doc. 11. The motion is denied.

## I.     Background[1]

Just Born manufactures Hot Tamales® and Mike and Ike® candies. The products are regularly sold at grocery stores, convenience stores, and other food retail outlets throughout Missouri and the rest of the United States. White bought opaque, cardboard containers of the candies for about $1.00 apiece at a Dollar Store in Missouri, for his personal use. His lawsuit focuses on Just Born's packaging of the candies.

Consumers spend an average of 13 seconds making an in-store purchasing decision. The

---

[1]     For purposes of deciding the motion to dismiss for failure to state a claim, the Court accepts the factual allegations contained in the Complaint as true. *Eckert v. Titan Tire Corp.* 514 F.3d 801, 806 (8th Cir. 2008). The Court may also consider documents attached to, or materials that are necessarily embraced by, the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotations and citations omitted). The Complaint includes allegations about markings on the candy boxes at issue and includes pictures of the front of the boxes. Just Born provided pictures of the front as well as the back of the boxes, in an affidavit attached to its suggestions. Doc. 12-1. The Court will consider Just Born's affidavit inasmuch as the information is necessarily embraced by the pleadings.

decision is heavily dependent on a product's packaging, in particular, the package dimensions. When faced with a large box and a smaller box, both containing the same amount of product, a consumer is more likely to choose the larger one, thinking it is a better value.

The dimensions of a Hot Tamales box are 3.25" x .75″ x 6″. The front of the box includes the description, "FIERCE CINNAMON FLAVORED CHEWY CANDIES". Doc. 1, p. 6. The front of the box also states: "NET WEIGHT 5.0 OZ (141 g)"; "150 CALORIES PER SERVING"; and "3.5 SERVINGS PER PACKAGE". *Id.* On the back of the box, the "Nutrition Facts" panel states: "Serving size 1.5 oz (42 g/about 1/4 cup)". Doc. 12-2, p. 3. Each box has about 35% slack-filled, or empty, space.

The dimensions of a Mike and Ike box are 3.25" x .75″ x 6″. The front of the box includes the description, "ORIGINAL FRUITS[,] CHEWY ASSORTED FRUIT FLAVORED CANDIES". Doc. 1, p. 8. The front of the box also states: "NET WEIGHT 5.0 OZ (141 g)"; "150 CALORIES PER SERVING"; and "3.5 SERVINGS PER PACKAGE". *Id.* On the back of the box, the "Nutrition Facts" panel states: "Serving size 1.5 oz (42 g/about 1/4 cup)". Doc. 12-2, p. 4. Each box has about 34% slack-filled, or empty, space.

White alleges that he "attached importance" to the "size" of the candy boxes, and was misled to believe that he was "purchasing more Product than was actually received." Doc. 1, p. 14, ¶ 57. He alleges that boxes are "uniformly under-filled" or "'slack-filled,'" *id.*, p. 2, ¶ 3; the slack-filled space serves no purpose; and had he known the boxes were "substantially slack-filled," he would not have purchased the products or would have purchased them on different terms, *id.,* p. 14, ¶ 57. He alleges that he "suffered an ascertainable loss as a result of [Just Born's] unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented." *Id.*, p. 14, ¶ 58. White alleges that he "would…likely

2

purchase the Products in the future if the Products complied with applicable laws." *Id.*, p. 14, ¶ 59.

White filed this lawsuit in state court as a putative class action. In Count I, he claims a violation of the Missouri Merchandising Practices Act (MMPA) for a Missouri Consumer Subclass, and he requests injunctive relief and damages under the statute. Count II is a claim for unjust enrichment brought on behalf of All Classes (class members in all states who purchased the products), in which White requests restitution or disgorgement of Just Born's economic enrichment. Just Born removed the action to Federal court.

## II.    Discussion

Just Born moves to dismiss Count I for four reasons: (1) a reasonable consumer would not be deceived by the packaging; (2) slack-fill is not by itself impermissible under federal or state law, violation of food-labeling regulations does not support a finding of liability under the MMPA, and White does not sufficiently allege that the slack-fill is non-functional or deceptive; (3) White lacks standing to pursue injunctive relief; and (4) White fails to state an ascertainable injury under the MMPA. Doc. 11, pp. 1-2. In addition, Just Born argues that Count II for unjust enrichment should be dismissed because Count I fails to state a claim. *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint is plausible if its "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal,* 556 U.S. at 678). A court must "'draw on its judicial experience and common sense,'" and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group,* 592 F.3d 893, 896 n. 4

3

(8th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

## A. Count I—The MMPA claim

The elements of a claim under the MMPA are: (1) the purchase of goods or services, (2) primarily for personal or household purposes; and (3) an ascertainable loss of money or property, (4) as a result of, or caused by, the use or employment by another person of a method, act, or practice declared unlawful under the MMPA. §§ 407.020 and 407.025.1. *See also Murphy v. Stonewall Kitchen, LLC,* 503 S.W.3d 308, 311 (Mo. App. 2016); and Mo. APPROVED INSTRUCTIONS (CIVIL) 39.01 (7th ed.).

### 1. Allegation of an unlawful practice

The Missouri Supreme Court has characterized the MMPA as "'paternalistic legislation designed to protect those that could not otherwise protect themselves.'" *High Life Sales Co. v. Brown-Forman, Corp.,* 823 S.W.2d 493, 498 (Mo. 1992) (*quoting Electrical and Magneto Service Co. v. AMBAC Intern'l Corp.,* 941 F.2d 660, 663 (8th Cir. 1991)). *See also Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 725 (Mo. 2009) (en banc) (noting that the legislature enacted the MMPA to "regulate the marketplace to the advantage of those who may fall victim to unfair business practices"). As such, the law is very broadly written. Section 407.020(1) declares and describes unlawful practices as follows:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce … in or from the State of Missouri, is declared to be an unlawful practice.

*See also* 34 Mo. PRACTICE PERSONAL INJURY AND TORTS HANDBOOK § 29:2, "Elements of the action" (2016 ed.) ("The prohibitions of V.A.M.S. § 407.020 are construed broadly to reach any deception or unfair practice[.]") (and citations therein).

4

The focus of the statutory scheme is on the defendant's conduct. "A consumer's reliance on an unlawful practice is not required under the MMPA." *Murphy*, 503 S.W.3d at 311 (citing *Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758, 774 (Mo. 2007) (en banc)). Ultimately, the MMPA requires courts to make case-by-case determinations of whether a defendant's conduct violates principles of fair dealing. *Huch v. Charter Commc'ns, Inc.,* 290 S.W.3d 721, 724 (Mo. 2009) (*en banc*).

"[I]n order to prevent evasion by overly meticulous definitions," the statutory scheme does not provide definitions of any particular unlawful practices. *Clement v. St. Charles Nissan, Inc.,* 103 S.W.3d 898, 900 (Mo. App. 2003) (citing *State ex rel. Webster v. Areaco Inv. Co.,* 756 S.W.2d 633, 635 (Mo. App. 1988)). The Missouri Supreme Court explained in *Ports Petroleum Co. of Ohio v. Nixon* that absent statutory definitions, it would "consider[] the plain and ordinary meaning of the words themselves,…which," in the case of "unfair practice" were "unrestricted, all-encompassing and exceedingly broad." 37 S.W.3d 237, 240 (Mo. 2001). Accordingly, "[f]or better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree." *Id.*

The MMPA does grant the Missouri Attorney General authority to promulgate rules, and the rules that have been promulgated under the MMPA are instructive here. *See United Pharmacal Co. of Mo. v. Mo. Bd. of Pharmacy,* 159 S.W.3d 361, 365 (Mo. 2005) (en banc) (properly promulgated rules have the force and effect of law). For example, under 15 C.S.R. § 60-9.020(1), "deception" is defined as "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." Under 15 C.S.R. § 60-9.030(1), "Deceptive Format," "[i]t is deception for any person in an advertisement or sales presentation to use any format which because of its overall

5

appearance has the tendency or capacity to mislead consumers." Another rule, 15 C.S.R. § 60-9.070(1), defines "misrepresentation" as "an assertion not in accord with the facts[.]" The rules further provide that reliance and intent are not elements that must be proven to establish deception or misrepresentation for purposes of § 407.020(1). § 60-9.020(2) and § 60-9.070(2). The regulation concerning "unfair practice[s]" provides that proof of deception, fraud, or misrepresentation is not required. 15 C.S.R. § 60-8.020(2).

At the motion to dismiss stage, the Court's focus is on what is alleged in a plaintiff's complaint. White alleges that:

> [Just Born's] conduct as described [in the Complaint] constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that Defendant incorporates substantial non-functional slack-fill into the Products' non-transparent packaging. Among other things, Plaintiff and members of the Classes were misled because they believed that they were purchasing more Product than was actually received. As such, the Products' containers are made, formed, or filled as to be misleading.

Doc. 1, p. 19, para. 73. He alleges that consumers spend an average of 13 seconds making an in-store purchasing decision. The decision is heavily dependent on a product's packaging, in particular, the package dimensions. "Reasonable consumers attached importance to the [boxes'] size as a basis for their purchasing decision." *Id.,* p. 9, para. 27. When given a choice, consumers are more likely to choose larger boxes, thinking they are a better value. Just Born makes its candy boxes from opaque, non-pliable cardboard. Just Born fills the boxes such that 35% of a Hot Tamales box and 34% of a Mike and Ike box is empty. The empty, or slack-filled, space in the boxes serves no purpose, such as protection of the contents. The slack-filled space is not attributable to settling of the contents. Nothing prevents Just Born from placing more candy in

6

the boxes, or reducing the size of the boxes. *Id.*, pp. 10-13. "The Products' packaging is misleading to reasonable consumers[.]" *Id.*, p. 14, para. 56.

Just Born argues that a reasonable consumer would not be deceived by the packaging. However, and as discussed above, consumer protection is paramount under the MMPA and its prohibitions are construed broadly. The Missouri Supreme Court has explained that an "unfair practice" under the MMPA covers every unfair practice imaginable and every unfairness, to whatever degree. Practices made unlawful by the act are also broadly defined by regulation, such as deception, which is any practice having the tendency or capacity to mislead, deceive, cheat, or create a false impression; or misrepresentation, which is an assertion not in accord with the facts. A plaintiff need not even allege or prove reliance on an unlawful practice to state a claim under the act. Just Born's candy boxes are opaque and non-pliable, and a reasonable consumer could conclude that the size of a box suggests the amount of candy in it. Larger packages are attractive to consumers, and consumers tend to make their purchasing decision in 13 seconds. Yet there is 35% non-functional, slack-filled space in a Hot Tamales box and 34% in a Mike and Ike box. White has plausibly alleged, at minimum, that the packaging unfairly suggests the boxes contain more product than they actually do, or tends to or has the capacity to mislead consumers or to create a false impression, which is sufficient for purposes of alleging an unlawful practice under the MMPA. The Court cannot conclude as a matter of law and at this stage of the litigation that the packaging is not misleading. *See, e.g., Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312-13 (Mo. App. 2016) (declining to decide how a "reasonable consumer" would perceive the term "all natural" at an early stage of litigation, and holding that the question is appropriately addressed on a motion for summary judgment or trial); and *Thornton v. Pinnacle Foods Grp. LLC*, 2016 WL 4073713, at *3 n.3 (E.D. Mo. Aug. 1, 2016) ("Whether a reasonable consumer

7

would be deceived by a product label is generally a question of fact that cannot be resolved on a motion to dismiss.").[2]

Just Born further argues that the "clear" labeling and "express disclosures" on the packages—net weight, serving size, and number of servings per box—are fatal to White's claim because they tell a consumer how much candy is in the box. Doc. 12, pp. 7 and 10 of 18. The Missouri Court of Appeals recently rejected an analogous argument in *Murphy*. That case involved a consumer's claim under the MMPA against the manufacturer of a muffin mix that was labelled "all natural." 503 S.W.3d at 312-313. The package's ingredient label, placed there pursuant to federal law, disclosed that the product contained sodium acid pyrophosphate. The manufacturer argued that the label's ingredient disclosure entitled it to dismissal. But the court "expressly reject[ed] the notion that the 'ingredient list' defense asserted by [the defendant] defeat[ed] [the plaintiff's] claim as a matter of law." *Id.* at 312. The court explained that an ingredient list is not required to be placed on packaging "so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield from liability for that deception." *Id.* at 313 (citation omitted). The court further held that a reasonable consumer would expect that the ingredient list comported with the representations on the packaging, and that in any event, the manufacturer was in the superior position to know and understand the ingredients in the product, and whether they comported with the packaging.

---

[2]          *See also In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 2016 WL 6078250, at *6 (D.D.C. 2016) ("The size of a package signals to the consumer vital information about a product and is as influential in affecting a customer's choices as an explicit message on its surface. Moreover, in this case, the size of McCormick's [pepper] containers is exactly what makes them misleading, because consumers cannot see the amount of their contents.") (internal quotation omitted); and *Hobby Indus. Assn. of Am., Inc. v. Younger*, 101 Cal. App. 3d 358, 367–68 (Ct. App. 1980) ("Clear disclosures on labels, scale drawings, and other informative matter may not counteract the impression created by the size of the package, and in this sense slack fill can be viewed as inherently deceptive.")

*Id.* The court held that the allegations were sufficient to survive a motion to dismiss.

The "all natural" package labelling in *Murphy* is analogous to the information suggested to consumers by the dimensions of Just Born's opaque, non-pliable cardboard boxes. As discussed above, the dimensions of the boxes can suggest to reasonable consumers how much candy is in them, and consumers tend to choose larger packages, thinking they are a better value. Consumers also tend to make their purchasing decision in about 13 seconds. Following the *Murphy* rationale, a reasonable consumer would expect the candy boxes' labeling information to comport with the dimensions of the box and it is Just Born that is in the superior position to know whether the dimensions do. In other words, similar to the *Murphy* scenario, the question of whether a consumer would figure out, from the labeling information and in the 13 seconds spent making a purchasing decision, that the boxes contain 35% and 34% slack-filled space rather than the amount suggested by the dimensions of the box goes to reasonableness, which is a question of fact.

Moreover, Just Born's narrow focus and emphasis on the net weight, number of pieces of candy per serving, and servings per box, as printed on the boxes, overlooks that the Court must consider the plausibility of the complaint as a whole, not the plausibility of each individual allegation. *Zoltek,* 592 F.3d at 896 n.4. Just Born also overlooks that the MMPA is both written and construed broadly to serve its purpose of consumer protection. *High Life Sales,* 823 S.W.3d at 498, and 34 Mo. Practice Personal Injury and Torts Handbook § 29:2. Narrowly focusing on an aspect of the labeling does not serve the purpose of the MMPA.[3]

---

[3] *See also Fed. Trade Comm'n v. Standard Educ. Soc.*, 302 U.S. 112, 116 (1937) (Holding, in an action to enforce an order of the Federal Trade Commission to cease and desist from certain unfair methods of competition: "The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the

Just Born's authorities do not change the analysis. Doc. 12, pp. 7-8 and 14 of 18 (citing *Kelly v. Cape Cod Potato Chip Co.,* 81 F.Supp.3d 754 (W.D. Mo. 2015); *Stoltz v. Fage Dairy Processing Indus., S.A.,* 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015); *Workman v. Plum Inc.*, 141 F.Supp.3d 1032 (N.D. Cal. 2015); *Hawkins v. UGI Corp.,* 2016 WL 2595990 (C.D. Cal. May 4, 2016); and *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liab. Litig.,* 2011 WL 6740338 (W.D. Mo. Dec. 22, 2011)). In *Kelly*, the court dismissed an MMPA challenge to a "natural" claim on the front label of a bag of potato chips. The federally-mandated ingredient list on the back of the package disclosed several preservatives and artificial ingredients. The *Kelly* court held that considering the package as a whole, the "natural" statement on the front of the bag could not have deceived a reasonable purchaser. 81 F.Supp.3d at 762. However, *Kelly* was decided before *Murphy*, in which the Missouri Court of Appeals expressly rejected the ingredient-label defense at the motion to dismiss stage. In view of the *Murphy* decision, *Kelly* is wrong to the extent that it holds, as a matter of law, that consumers are responsible for evaluating whether some information on a package label is inconsistent with other information on the label. Therefore, *Kelly* does not change this Court's analysis. *See also Thornton,* 2016 WL 4073713 (decided after *Kelly* and *Murphy*, and holding that a "nothing artificial" label on a muffin mix package might be misleading under the MMPA, notwithstanding the disclosure of two artificial substances on the ingredient label; whether a reasonable consumer might be deceived involved a factual inquiry and the manufacturer's motion to dismiss must therefore be denied).

The *Stoltz* case that Just Born cites is in accord with the *Murphy* and *Thornton* analyses, and better supports White. In *Stoltz,* the district court examined consumer protection claims concerning Greek yogurt products labeled "Total 0%". The plaintiffs alleged that a reasonable

_____

honesty of those with whom he transacts business. Laws are made to protect the trusting as well as the suspicious….")

consumer was likely to believe the products contained no fat, sugar, sodium, cholesterol, calories, or any other item required to be disclosed on the products' packaging. The defendant argued that the nutrition facts panel was accurate and plainly disclosed such information, so in the entire context of the packaging, the "Total 0%" label was not misleading, as a matter of law. The *Stoltz* court disagreed. The court held that it was necessary to consider both the allegedly misleading statement and the entire surrounding context, but the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements. 2015 WL 5579872, at \*16 (and citations therein). After examining various cases in which courts had considered similar arguments, the *Stoltz* court held that the allegations did "not present the type of patently implausible claim that warrants dismissal as a matter of law based on the reasonable consumer prong." *Id.* at \*20.

Just Born also cites *Workman* and *Hawkins,* which do not apply here. The court in *Workman*, a case involving fruit products that were packaged in such a way as to suggest that certain ingredients were the main ones when in fact they were not, concluded that the ingredient label defense was persuasive and supported dismissal. 141 F. Supp.3d at 1035. *Workman* is inconsistent with Missouri law, as discussed in connection with *Murphy*, above. *Hawkins* involved the allegation that consumers could not visually observe how much propane was left in a refillable tank before they exchanged it for a filled one, so they were misled to turn in tanks that still had product in them. The court dismissed the claim, holding that regardless of whether consumers could visually observe the amount of propane left, the tanks were accurately labeled with the net weight, and consumers could slosh a used tank around to determine how much propane was left, or weigh it on a standard bathroom scale and subtract the tare weight. 2016 WL 2595990, at \*3. *Hawkins* dismissed a narrow claim about a product that consumers had in fact

used and themselves depleted for some period of time before attempting to exchange it.  The

Court concludes that the *Hawkins* facts are too far afield from those at issue in the case before it,

and that the Missouri and other cases discussed herein provide more applicable analyses than

*Hawkins.*[4]

Just Born further argues that to make out a claim under the MMPA, White cannot rest on

the violation of slack-fill regulations.  Doc. 12, pp. 11-13 of 18 (and citations therein).[5]

Regardless of whether White may prove his MMPA claim by pointing to such a violation,

however, the existence of a regulatory prohibition against slack-fill supports the reasonableness

of a consumer's belief that the packages of candy he purchases will not have 35% or 34% non-

functional slack-fill.[6]

---

[4] Just Born also cites *In re Bisphenol-A* for the definition of material fact under the MMPA.  2011 WL 6740338, at *6.  But the case does not address Just Born's labeling argument.  After defining material fact, the court concluded that the relevant material fact at issue there could not be proven with class-wide evidence.  *Id.*

[5] In the Complaint, White cites 21 C.F.R. § 100.100, a Federal regulation which provides: "A container that does not allow a consumer to fully view its contents shall be considered to be filled so as to be misleading [in violation of 21 U.S.C. § 403(d) of the Federal Food, Drug and Cosmetics Act] if it contains nonfunctional slack-fill.  Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. §100.100(a).

The regulation then provides six exceptions to the prohibition against slack-fill: (1) protection of the package's contents; (2) the requirements of the machinery used to enclose the contents in the package; (3) unavoidable product settling during shipping and handling; (4) the need for the package to perform a specific function, such as playing a role in preparation of a food, where clearly communicated to consumers; (5) the package is a reusable container which has a part in the preparation of the food, and has a significant and independent value; or (6) the inability to increase the level of fill or reduce the packaging, such as to accommodate required food labeling or to accommodate tamper-resistant devices.

As noted above, White alleges that the six exceptions do not apply to Just Born's packaging.

[6] Just Born also states that the Federal regulations permit *functional* slack fill, Doc. 12, p. 12 of 18, and suggests some reasons why its boxes might have been filled as they are.  At the motion to dismiss stage, and in view of White's allegations that Just Born's packaging does not meet an exception, the issue of whether there is functional slack-fill under the Federal regulations is not before the Court.

Notwithstanding its argument that the regulations do not apply, Just Born states that empty space in the boxes serves the purpose of conveniently dispensing the candies through the opening made by pressing on the perforated dispenser tab, or is related to the automated manufacturing process, *i.e.*, the slack-fill is permissible pursuant to a regulatory exception. Doc. 12, p. 12 of 18. Just Born also states that reasonable consumers would not expect the candy boxes to be filled to the brim and would expect some empty space, would hear the contents rustle, and would feel that there is empty space by pressing on the sides. *Id.,* pp. 8-10 of 18. No such allegations are in White's complaint, which is the pleading that controls for purposes of Just Born's motion to dismiss.

Moreover, Just Born's argument that consumers would expect empty space or realize that the boxes are not filled to the brim does not go to what White has alleged. White has alleged that the boxes have "substantial, non-functional slack-fill" that "cannot be justified"; industry-standard machines are capable of filling and enclosing the boxes "with far less slack-fill"; similar candies are packaged and sold in similar boxes containing "substantially less slack-fill" than Just Born's Hot Tamales and Mike and Ike boxes; and "the level of fill…can certainly be increased[,]" as demonstrated by promotional sales of the Hot Tamales and Mike and Ike candies in the same kinds of boxes "with increased fill levels[.]" Doc. 1, pp. 2, 8, 10, 11, and 13 of 22. White does not allege that the boxes should be filled to the brim, let alone that the packaging is misleading because the contents do not rustle. In the context of what White has alleged, whether a reasonable consumer would notice some empty space or rustling in the 13-second course of making the purchasing decision and what a consumer would make of it, let alone instantly conclude the boxes are as much as much as 35% or 34% slack-filled, are questions of fact.

Both parties cite a number of decisions, rendered by courts nationwide and involving

other states' laws, in support of their respective arguments about the slack-fill. Extended discussion of the various cases cited by the parties would not be useful to the analysis, largely because it is Missouri law that controls in this case. The Missouri Supreme Court has also explained that courts must make case-by-case determinations of whether a defendant's conduct violates Missouri's consumer protection law. *Huch,* 290 S.W.3d at 724.

In any event, the slack-fill cases from other jurisdictions to which Just Born points were dismissed based on the labels' net weight and quantity disclosures. *See* Doc. 12, pp. 8-10 of 18 (citing *Ebner v. Fresh, Inc.,* 2013 WL 9760035, *7-9 (C.D. Cal. Sept. 11, 2013); *Fermin v. Pfizer, Inc.,* 2016 WL 6208291, *2 (E.D.N.Y. Oct. 18, 2016); and *Bush v. Mondelez International, Inc.,* 2016 324990, *2 (N.D. Cal. Dec. 16, 2016)), and Doc. 55, pp. 11-13 (same citations). However, the *Murphy* case discussed above is a recent, analogous case decided under the MMPA by the Missouri Court of Appeals, which rejected the "ingredient label defense" and held that the question of a how a "reasonable consumer" would perceive certain packaging information was a question appropriately addressed on a motion for summary judgment or trial, not a motion to dismiss. The issues in this case are controlled by Missouri law, which is at odds with the slack-fill cases Just Born cites.

Moreover, courts that have allowed slack-fill, consumer protection cases to proceed beyond the motion to dismiss stage tend to do so because reasonableness was at issue and could not be resolved short of summary judgment or trial. *See, e.g., Izquierdo v. Mondelez International, Inc.,* 2016 WL 6459832, *6-7 (S.D.N.Y. Oct. 26, 2016) (denying motion to dismiss a claim concerning slack-filled candy boxes; a reasonable consumer could be misled even if the candy box displayed the net weight and listed the number of pieces inside); *Thomas v. Costco Wholesale Corp.*, 2014 WL 1323192, at *9 (N.D. Cal. Mar. 31, 2014) (holding that where the

plaintiff claimed that products she purchased were unjustifiably slack-filled and that she was misled, the plaintiff had adequately pled that a reasonable consumer could be deceived, and the claim could not be resolved at the motion to dismiss stage); and *Samet v. Procter & Gamble Co.*, 2013 WL 3124647, at \*9 (N.D. Cal. June 18, 2013) (denying motion to dismiss where the plaintiffs alleged facts showing that they were deceived by the slack-filled potato chip and fruit snack packaging, and thought they were receiving more of the product than they actually did; even if a consumer would expect extra air in a bag of such snacks, "the amount of slack-fill expected by the reasonable consumer is a debatable factual question that is inappropriate to resolve at the motion to dismiss stage").[7]

Finally, Just Born argues that to the extent White alleges "omission of material fact" as one of the violations of the MMPA, White has alleged "nothing more than … the term 'omission'", notwithstanding that omission under the MMPA includes scienter.  Doc. 12, p. 15 of 18.  A plaintiff claiming omission of material fact under the MMPA must show the defendant failed to disclose material facts that were "*known to him/her,* or upon reasonable inquiry *would [have been] known to him/her.*"  *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009) (citations omitted) (emphasis in original).  *See also* 15 C.S.R. 60-9.110(3) (omission

---

[7]        *See also Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (whether the labeling on the defendant's Fruit Juice Snacks product "could likely deceive a reasonable consumer" was not a question that could be resolved on a motion to dismiss; the lower court's dismissal was reversed); *Burton v. Hodgson Mill, Inc.*, 2017 WL 1282882, at \*6 (S.D. Ill. Apr. 6, 2017) ("This Court finds that the crux of this issue is a reasonable person's interpretation of the various labels and representations on a given product—thus, this question is best left for the jury."); *Atik v. Welch Foods, Inc.*, 2016 WL 5678474, at \*10 (E.D.N.Y. Sept. 30, 2016) (denying a motion to dismiss where "a reasonable consumer could expect a fruit snack to contain a significant amount of fruit, especially where, as here, the packaging and labeling emphasize the presence of fruit in the Products"); and *Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Co.,* 2015 WL 3645262, at \*7-9 (E.D. Mo. June 10, 2015) (holding that "the effect that an ingredient statement may have on a reasonable consumer's understanding of advertising and product labels involves a factual inquiry").

15

of material fact for purposes of the MMPA is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her").

For purposes of withstanding dismissal, White has adequately alleged the scienter related to omission under the MMPA. In the Complaint, White alleged that Just Born "manufactures, markets, promotes, labels, advertises and sells" the Hot Tamales and Mike and Ike candies, Doc. 1, p. 6, para. 18, and alleged what the boxes are made of and what they look like, and how much slack-fill they contain. White alleged that Just Born has sold the candies in soft, malleable bags that offer little protection to the products, demonstrating the candies' "inherent durability, as well as [Just Born's] implicit recognition of it"; industry-standard machines are capable of filling the cardboard candy boxes with far less slack-fill than they currently contain; similar candy products in "very similar cardboard containers" have substantially less slack-fill than Hot Tamales and Mike and Ike boxes; and Just Born has packaged and sold the same size boxes of Hot Tamales and Mike and Ike candies, for promotional purposes, with less slack-fill. *Id.,* p. 11, paras. 35 and 39-40; p. 12, para. 41; and p. 13, paras. 51-52. Under Count I, White alleged that Just Born "omi[tted] material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that [Just Born] incorporates substantial non-functional slack-fill into the Product's non-transparent packaging." *Id.*, p. 19, para. 73. The "omissions as set forth in the Complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers[.]" *Id.*, para. 74. White further alleged that "[i]n violation of the MMPA, [Just Born] employed … the knowing concealment, suppression, or omission of material facts in its sale and advertisement of the Products." Doc. 1, p. 19, Count I, para. 75. White has sufficiently alleged that Just Born failed to disclose material facts about the amount of candy in the boxes—either material facts

16

known to it, or that upon reasonable inquiry would have been known to it.

In its reply suggestions, Just Born also argues that White alleged no omission at all. Doc. 33, p. 13 of 15. The Court rarely relies on new arguments in reply briefs because the non-movant did not have an opportunity to respond. *See United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2013) ("When courts have exercised their authority to decline consideration of issues raised in reply briefs, they have typically done so out of concern that the opposing party would be prejudiced by an advocate arguing an issue without an opportunity for the opponent to respond."). Nonetheless, the preceding discussion about adequacy of the scienter allegation also demonstrates that White alleged the omission of a material fact.

As discussed more fully above, the Court concludes that the analysis consistent with Missouri law leads to the conclusion that White has plausibly alleged a claim under the MMPA and that reasonableness is an issue of fact, which cannot be resolved on a motion to dismiss. White has also sufficiently alleged scienter for purposes of the allegation that Just Born omitted material facts.

### 2. Allegation of an ascertainable loss

Just Born argues that the White failed to allege ascertainable loss under the MMPA. Doc. 12, p. 13 of 18. This element is straightforward. Ascertainable loss involves "the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Murphy*, 503 S.W.3d at 313 (citing *Schoenlein v. Routt Homes, Inc*., 260 S.W.3d 852, 854 (Mo. App. 2008)). The loss must be a result of the alleged unlawful practice. *Id.* (citing *Plubell v. Merck & Co.,* 289 S.W.3d 707, 714 (Mo. App. 2009)).

*Murphy* was a challenge under the MMPA to the labelling of a muffin mix as "all

17

natural," notwithstanding that the mix had synthetic ingredients. The plaintiff alleged that the mix was worth less than the product as represented. The Missouri Court of Appeals held that the plaintiff stated an ascertainable loss under the benefit of the bargain rule. The court further concluded that the plaintiff had adequately alleged the loss was the result of the allegedly deceptive labeling when he pled that consumers were interested in purchasing healthy food products without potentially harmful synthetic ingredients, and that the defendant had taken advantage of that desire by using the "all natural" label to entice consumers to pay a premium for the product. *See also Plubell*, 289 S.W.3d at 715 (the plaintiff alleged that a drug manufacturer violated the MMPA by failing to disclose and concealing the drug's serious safety risks; the court held that the plaintiff's allegation that the drug was worth less than as represented stated an ascertainable loss under the benefit-of-the-bargain rule).

White's allegations of ascertainable loss are analogous to those held sufficient in *Murphy*. White alleged that the boxes were opaque and that the size of the boxes led him to believe there was more candy in them than they actually contained. He alleged that the value of the products he purchased was less than the value of the products as represented by size of the boxes. He alleged that product purchasing decisions are heavily dependent on the packaging, and the package dimensions in particular, and that consumers tend to choose a larger package over a smaller one, thinking it is a better value. White has sufficiently alleged ascertainable loss for purposes of withstanding the motion to dismiss and that the alleged loss was the result of the packaging.

Just Born's authority does not change the analysis. *See* Doc. 33, p. 12 of 15 (citing *Thompson v. Allergan USA, Inc.,* 993 F.Supp.2d 1007 (E.D. Mo. 2014)). *Thompson* involved allegations that the defendant drug manufacturer overfilled single-dose medication bottles, so that

18

consumers purchased more medication than they needed. The plaintiff did not allege that the defendant misrepresented the amount of product that the bottles contained. The Eastern District held that the consumers received what they bargained for, and therefore failed to allege ascertainable loss under the MMPA. In contrast here, and as discussed above, White sufficiently alleges that the packaging was misleading and that he did not obtain what he bargained for.

White has plausibly alleged an ascertainable loss under the MMPA.

### 3. Standing to pursue injunctive relief under Count I

The MMPA expressly provides for injunctive relief, as well as damages and attorney fees, § 407.025.2, "not only to remedy violations…, but also to prospectively deter prohibited conduct and protect Missouri citizens," *Berry v. Volkswagen Grp. of Am., Inc.,* 397 S.W.3d 425, 433 (Mo. 2013) (en banc). Just Born argues that White's request for injunctive relief must be dismissed for lack of Article III standing. According to Just Born, now that White is aware of the slack-filled space in the boxes, he cannot plausibly claim that he will be subject to continuing injury, so injunctive relief would not affect him.

Article III of the United States Constitution grants federal courts limited jurisdiction to decide "cases and controversies." To satisfy this jurisdictional standing requirement, a plaintiff must establish (1) an injury in fact, which is (2) fairly traceable to the defendant's conduct, and which (3) will likely be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-181 (2000). To establish "injury in fact" for purposes of injunctive relief, a plaintiff must show that he "faces a threat of ongoing or future harm." *Park v. U.S. Forest Serv.,* 205 F.3d 1034, 1037 (8th Cir. 2000). Under the redressability prong, the plaintiff must demonstrate that he "personally would benefit in a tangible way from the court's intervention." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 104 n. 5 (1998).

White has pled a threat of ongoing or future harm, which is fairly traceable to Just Born's conduct. Specifically, he alleges that the he was misled by the packaging to believe the boxes contained more product than they actually did, and suffered an ascertainable loss, and that had he known the boxes contained substantial slack-filled space he would not have purchased them or would have purchased them on different terms. He alleges that Just Born continues to sell slack-filled candy boxes, *i.e.,* the unlawful practice is ongoing.

White has also pled that he would personally benefit in a tangible way from injunctive relief, by alleging that if Just Born changes its practices, he is likely to buy the products in the future, and that he seeks to be relieved from Just Born's unlawful practice by the issuance of injunctive relief.

Just Born places emphasis on White's discovery of the slack-fill in the Hot Tamales and Mike and Ike boxes. But the fact that White discovered Just Born's allegedly unlawful practice does not make the packaging less misleading, nor mean that the practice is not ongoing. White need plead nothing more to survive a motion to dismiss a request for injunctive relief for lack of Article III standing. *See Whitmore v. Arkansas,* 495 U.S. 149, 158-59 (1990) (discussing *United States v. SCRAP,* 412 U.S. 669 (1973)) (acknowledging that even attenuated injuries or "thin" allegations are sufficient to confer Article III standing at the motion to dismiss stage); and *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, 2016 WL 128098, at *1 (N.D. Ill. Jan. 12, 2016) (cautioning that standing to pursue injunctive relief and entitlement to such relief are two separate concepts). *See also Chester v. TJX Companies, Inc.*, 2016 WL 4414768, at *8 (C.D. Cal. Aug. 18, 2016) ("It is inconceivable to think prospective relief in the false advertising context is bound by the rules of 'fool me once, shame on you; fool me twice shame on me.' The Court...refuses to find that, once a plaintiff has alleged that she was deceived, she likely will not

voluntarily be deceived again—and thus no court can enjoin deceptive practices without ignoring Article III's standing requirements."); and *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (where the defendants' allegedly deceptive advertising and labeling practices were ongoing, and the plaintiffs sought to be relieved from such practices in the future, the fact that the plaintiffs discovered the alleged deception years earlier did not mean the plaintiffs lacked Article III standing) (and collecting cases).

The authorities that Just Born cites in its reply suggestions, in which courts struck or dismissed requests for injunctive relief, do not lead to a contrary conclusion. *See* Doc. 33, p. 14 of 15 (citing *Owen v. GMC*, 2006 WL 2808632 (W.D. Mo. Sept. 28, 2006), and *Blake v. Career Educ. Corp.,* 2009 WL 140742 (E.D. Mo. Jan. 20, 2009)). Under the circumstances presented in those cases, the plaintiffs were not threatened with future harm. *Owen*, 2006 WL 2808632, at *3 (the plaintiff's allegedly defective windshield wiper blade had already been replaced); and *Blake.,* 2009 WL 140742, at *4 (the plaintiff had already graduated from the defendant college that allegedly used deceptive and unfair business practices in promoting its criminal justice degree to students). As discussed above, White has, at this stage of the litigation, adequately alleged entitlement to injunctive relief.

Just Born's motion to dismiss the request for injunctive relief is denied.

### B.      Count II—Unjust enrichment

Just Born states, "Because the Complaint fails to state a claim under the MMPA, the unjust enrichment cause of action is moot." Doc. 12, p. 17 (Conclusion section).

As discussed above, the Court has concluded that White states a claim under the MMPA. It is generally permissible to pursue alternative theories at the pleading stage, and courts generally permit unjust enrichment claims to proceed alongside a properly-pled MMPA claim. *See, e.g.,*

*Murphy,* 503 S.W.3d at 314 (because the trial court's dismissal of an MMPA claim was reversed, the dismissal of the unjust enrichment claim, which was based on the same conduct, was also reversed); *Thornton,* 2016 WL 40373713, at *4 (denying motion to dismiss unjust enrichment claim, after concluding that the plaintiff had plausibly stated a claim under the MMPA). Therefore, Count II will not be dismissed for mootness.

## III.    Conclusion

Defendant Just Born's motion to dismiss, Doc. 11, is denied.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  July 21, 2017
Jefferson City, Missouri