**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| DARYL WHITE, JR., individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:17-cv-04025-NKL |
| v. | ) ) | The Hon. Nanette K. Laughrey |
| JUST BORN, INC., | ) ) | |
| Defendant. | ) ) ) | |

**SUGGESTIONS IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND
<u>APPOINTMENT OF CLASS COUNSEL</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION AND FACTUAL SUMMARY ............................................................. 1

II.     THIS CASE SATISFIES EACH REQUIREMENT FOR CLASS
        CERTIFICATION ........................................................................................................ 7

        A.      This Case Satisfies the Objective of Class Action Procedure ................................ 7

        B.      The Classes Are Sufficiently Numerous and Joinder Would Be
                Impracticable ......................................................................................................... 9

        C.      Commonality Is Satisfied: There Are Numerous Questions of Law
                or Fact that Are Common to the Classes. ............................................................. 10

        D.      Typicality Is Satisfied. ........................................................................................ 11

        E.      Plaintiff and His Counsel Will Adequately Represent the Classes ....................... 14

III.    THE PROPOSED CLASSES SATISFY RULE 23(B) ................................................... 14

        A.      Common Questions of Law or Fact Predominate. ............................................... 15

        B.      Common Issues Predominate: Plaintiff Will Use Common Proof to
                Demonstrate that Defendant Violated the MMPA. ............................................... 16

                1.      Common Issues Predominate Because the Objective
                        "Reasonable Consumer Standard" Is Applicable. ..................................... 17

                2.      Common Issues Predominate Because Plaintiff Will Use
                        Common Evidence to Show Defendant Engaged in an Unfair
                        Practice in Violation of the MMPA. .......................................................... 19

                3.      Common Issues Predominate Because Plaintiff Will Prove a
                        Loss of the Benefit of the Bargain on a Class-Wide Basis for
                        the Missouri Consumer Subclass. .............................................................. 20

        C.      Common Issues Predominate: Plaintiff Will Use Common Proof to
                Establish Unjust Enrichment ................................................................................ 20

                1.      The Unjust Enrichment "Restatement" Multi-State Class ........................... 21

                2.      The Unjust Enrichment "Appreciation" Multi-State Class ......................... 21

        D.      Class Litigation Is Superior to Other Methods of Adjudication. .......................... 22

IV.     THE CLASSES ALSO SHOULD BE CERTIFIED UNDER RULE
        23(B)(2) ..................................................................................................................... 24

V.      RULE 23(G) IS SATISFIED ....................................................................................... 24

VI.     CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ........................................................................................................................ 18

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) .................................................. 12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 7, 14, 15, 23

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) ........................................................................................................................ 15

*Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 14 C 5602, 2017 WL 4339788 (N.D. Ill. Sept. 29, 2017) .............................................................................. 11

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) .............................................................. 13

*Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-04321-NKL, 2013 WL 3872181 ........... 8, 23

<u>*Bond v. Liberty Ins. Corporation*</u>, No. 2:15-CV-04236-NKL, 2017 WL 1628956 (W.D. Mo. May 1, 2017) .......................................................................................................................... 24

*Bradford v. AGCO Corp.*, 187 F.R.D. 600 (W.D. Mo. 1999) ..................................................... 12

*Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. banc 2014) .............................................. 19

*Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543 (W.D. Mo. 2014) ..................................... 10

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ............................................... 11, 24

*Gentry v. C&D Oil Co.*, 102 F.R.D. 490 (W.D. Ark. 1984) ......................................................... 9

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374 (S.D.N.Y. 2016) ........................................................................................................................ 18

*Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2013 WL 3353857 (C.D. Cal. July 1, 2013) ........................................................................................................................ 18

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) ............................................................................... 9

*Hendricks v. StarKist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) .................................................................................................................... 10, 11

*Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68 (Mo. Ct. App. 2011) ............................................. 17

*In re Abbott Labs. Norvir Anti-Trust Litig.*, 2007 WL 1689899 (N.D. Cal. June 11, 2007) ........ 22

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) ..................................................... 12

*In re Terazosin Hydrochloride*, 220 F.R.D. 672 (S.D. Fla. 2004) .............................................. 20

*Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012) ............................................................. 12

*Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330 (N.D. Cal. 2010) ....................................... 22

Case 2:17-cv-04025-NKL   Document 69   Filed 04/03/18   Page 3 of 31

*Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015) ................................. 20

*Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016) ....................................................................................................................................... 18

*Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142, 2017 WL 1155398 (E.D.N.Y. Mar. 27, 2017) ............................................................................................................................................. 18

*Langan v. Johnson & Johnson Consumer Companies, Inc.*, No. 3:13-CV-1470 (JAM), 2017 WL 985640 (D. Conn. Mar. 13, 2017)......................................................................... 13, 18

*Lilly v. Jamba Juice Co.*, 308 F.R.D. 231 (N.D. Cal. 2014) ......................................................... 18

*Martin v. Monsanto Co.*, No. EDCV162168JFWSPX, 2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ....................................................................................................................................... 12

*Morgan v. United Parcel Serv. Of Am., Inc.*, 169 F.R.D. 349 (E.D. Mo. 1996) ........................... 9

*Murphy v. Stonewall Kitchen*, LLC, 503 S.W.3d 308 (Mo. Ct. App. 2016) ................... 17, 18, 20

*Overka v. American Airlines, Inc.*, 265 F.R.D. 14 (D. Mass. 2010)............................................. 22

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .......................................................................... 10

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982)..................................................... 9, 14

*Plubell v. Merck & Co.*, 289 S.W.3d 707 (Mo. Ct. App. 2009) ....................................... 16, 17, 20

*Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640 (8th Cir. 2012) ........... 9

*Rawa v. Monsanto Co.*, No. 4:17CV01252 AFG, 2017 WL 3392090 (E.D. Mo. Aug. 7, 2017) . 17

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)............................................... 10, 18

*Tussey v. ABB, Inc.*, No. 06-04305-CV-NKL, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ..... 10

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016)........................... 15

*Walker v. Bankers Life and Cas. Co.*, No. 06CV6906, 2007 WL 2903180 (N.D. Ill. Oct. 1, 2007) ............................................................................................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................ 8, 10

## **STATUTES**

RSMo. § 196.075 ........................................................................................................................ 4, 19

RSMo. § 407.020.1 ............................................................................................................ 4, 16, 19

RSMo. § 407.025 .......................................................................................................................... 20

## **RULES**

Fed. R. Civ. P. 23 .......................................................................................................................... 7, 8

Fed. R. Civ. P. 23(a) .............................................................................................................. passim

Fed. R. Civ. P. 23(a)(2).............................................................................................................. 10, 18

Fed. R. Civ. P. 23(a)(3).................................................................................................................. 11

iv

Fed. R. Civ. P. 23(a)(4) ............................................................................ 14

Fed. R. Civ. P. 23(b)(2) ................................................................... 7, 9, 24

Fed. R. Civ. P. 23(b)(3) ................................................................... passim

Fed. R. Civ. P. 23(b)(3)(A) ...................................................................... 23

Fed. R. Civ. P. 23(g) ........................................................................... 7, 25

Fed. R. Civ. P. 23(g)(4) ........................................................................... 25

## **REGULATIONS**

15 U.S.C. § 1454(c) .................................................................................. 1

21 C.F.R. § 100.100 .......................................................................... 4, 19

21 U.S.C. § 343(d) .................................................................................. 19

58 Fed. Reg. 64123-01 ............................................................................. 1

58 Fed. Reg. 64131 .................................................................................. 1

Fed. R. Civ. P. 23(g)(1)(A) ...................................................................... 24

Mo. Code Regs. Ann. tit. 15, § 60-8.090 .................................................. 19

## **SECONDARY SOURCES**

7A  Charles Alan Wright & Arthur R. Miller,  *Federal Practice and Procedure,*  § 1775  (1986)
................................................................................................... 8, 24

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* §3.05 (4th ed. 2002)................. 9

v

## I. INTRODUCTION AND FACTUAL SUMMARY

For over fifty years, Congress has recognized that packaging has the capacity to deceive consumers or complicate value comparisons for consumer commodities. *See* 15 U.S.C. § 1454(c). Packages with nonfunctional slack-fill—that is, with empty space that serves no functional purpose—"create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label." *See* 58 Fed. Reg. 64123-01, 64131 (internal citation and quotation marks omitted).

[redacted]

[redacted]

[redacted]

Defendant has also unequivocally demonstrated that the Products are nonfunctionally—and therefore unlawfully—slack-filled. Defendant sells a 5.5-ounce Mike and Ike "Bonus Box"

[1] [redacted] Plaintiff intends to ask Defendant's corporate representatives about this and other documents during deposition. Due to a scheduling conflict of counsel in the pending California *Escobar* action, and the agreement of counsel in this case and *Escobar* that they would take the depositions jointly, Plaintiff has not yet deposed Defendant's corporate witnesses. *See* Moon Decl. ¶ 21. Plaintiff will, however, depose the 30(b)(6) witnesses prior to submitting his Reply in support of class certification, and Defendant has consented to Plaintiff including the 30(b)(6) testimony in Plaintiff's Reply. *Id.*

Product and a 5.5-ounce Hot Tamales "Bonus Box" Product that contain 10% more candy than the standard 5-ounce Products at issue. *See* Plaintiff's Class Action Complaint and Jury Demand, Dkt. No. 1 ("Complaint") ¶ 41; *see also* Moon Decl., Ex. R ¶ 6. Yet Defendant packages the Products containing 10% more candy in the *exact same size* container as the standard 5-ounce Products (3.25" x .75" x 6"), notwithstanding the increased fill. Complaint ¶ 41; *Id*., Ex. R ¶ 6. ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████

　　　████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

Defendant's longstanding practice of including non-functional slack-fill in its Products violates the Food and Drug Administration ("FDA") prohibitions and Missouri law.[5] In addition, Defendant's uniform, unlawful conduct during the class period renders this case well-suited for class certification.[6] Specifically, Defendant included a uniform amount of slack-fill in each of the identical cardboard containers enclosing its Hot Tamales and Mike and Ike Products. *See* Complaint, ¶ 22, 25. Further, Plaintiff and each class member purchased the same sized cardboard container, with the same amount of candy and empty space therein. *Id.* at 3 (during the class period, the Hot Tamales box was only approximately 65% filled with candy and was approximately 35% empty and the Mike and Ike box was only approximately 66% filled with candy and was approximately 34% empty); ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████.

Moreover, for purposes of class certification, Defendant has agreed to the following:

---

[5] As charged by Congress, the FDA prohibits nonfunctional slack-fill in food products, and describes such packages as inherently misleading to consumers. *See* 21 C.F.R. § 100.100. Specifically, the FDA states that "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein." *Id.* Missouri law mirrors the federal regulations and states: "[F]ood shall be deemed to be misbranded: . . . . (4) If its container is so made, formed or filled as to be misleading." § 196.075, RSMo. In addition, the Missouri Merchandising Practices Act ("MMPA") prohibits the act, use or employment of any deception, misrepresentation or unfair practice in connection with the sale or advertisement of any merchandise in trade or commerce. § 407.020.1, RSMo.

[6] Plaintiff has sought leave to file a First Amended Complaint to add two additional class representatives. *See* Motion for Leave to Amend, Dkt. No. 65. If that Motion is granted, all plaintiffs intend to seek certification. As described herein, Defendant's conduct was uniform during the class period; accordingly, the claims and defenses at issue are the same for Plaintiff and the proposed additional representatives.

4

The fill and net weight of the Products (as defined in Plaintiff's Complaint) were consistent from one unit of Product to the next during the Class Period within expected ranges inherently determined by the physical characteristics of the candies and the nature of the filling process; The manner in which the Products were made, formed, and filled was materially the same from one unit of Product to the next during the Class Period; The boxes enclosing the candy, including the box dimensions, were materially the same from one unit of Product to the next during the Class Period; The amount of slack-fill contained in the Products was consistent from one unit of Product to the next during the Class Period within expected ranges inherently determined by the physical characteristics of the candies and the nature of the filling process. *Id.*, Ex. R ¶¶ 1-4.

Accordingly, for purposes of this Motion, Defendant does not contest that Plaintiff and every member of the Classes who purchased the respective Products during the class period received materially (i) the same size box, (ii) bearing the same net weight, (iii) with a consistent amount of candy and empty space inside. Because Defendant's conduct with respect to the manufacturing of the Products, and the Products themselves, was consistent for the entire class period, the claims and defenses at issue in this case—and the facts and evidence that will be used to prove them—are uniform for Plaintiff and all members of the Classes. Moreover, if Plaintiff proves (as he intends to) that the boxes contained nonfunctional slack-fill, Plaintiff will be able to show that every box sold by Defendant was underfilled by the same amount, rendering liability and damages uniform across the Classes. Using this common evidence, Plaintiff seeks to certify a class of purchasers in the state of Missouri based on Defendant's violation of the MMPA (the "Missouri Consumer Subclass") and two unjust enrichment classes (the "Restatement Multi-State Class" and "Appreciation Multi-State Class") (collectively, the "Classes").

Based on the common claims, facts and evidence, this case satisfies each of the factors set forth in Federal Rules of Civil Procedure 23(a) and (b):

***Numerosity (Rule 23(a)(1))***: Defendant has stipulated that the proposed Classes are "so numerous that joinder of all members is impracticable," in satisfaction of Federal Rule of Civil Procedure 23(a)(1). Moon Decl., Ex. R ¶ 7. ████████████████████████████

5

**[REDACTED]**

**_Commonality (Rule 23(a)(2))_**:  During the class period, Defendant manufactured and packaged the Products in uniformly sized boxes with identical dimensions, which contained a uniform net weight, amount of fill and empty space inside.  Accordingly, the representation made to each consumer based on the size of the box and the amount of slack-fill contained therein was the same, giving rise to questions that are common to Plaintiff and all members of the Classes and include (but are not limited to) whether:  Defendant packaged the Products in the same size boxes; the cardboard containers enclosing the Products were opaque and non-pliable; the boxes enclosing the Products contained materially the same net weight; the boxes enclosing the Products contained materially the same amount of candy; the boxes enclosing the Products contained materially the same amount of empty space; the slack-fill included in the boxes was nonfunctional; Defendant's conduct violated the MMPA; Defendant's conduct caused injury to Plaintiff and Class members; Plaintiff and the Classes were denied the benefit of the bargain; and Defendant was unjustly enriched by the underfilling of the Products.

**_Typicality (Rule 23(a)(3))_**:  Typicality is satisfied because Plaintiff's claims mirror the claims of the Classes that he seeks to represent.  Plaintiff and the Class members' claims are based on the same uniform, unlawful conduct by Defendant in the packaging of its Products.

**_Adequacy (Rule 23(a)(4))_**:  Plaintiff's interests are aligned with those of the Classes. Plaintiff will vigorously prosecute the interests of the Classes through highly qualified counsel.

In addition to satisfying the elements of Rule 23(a), this case is appropriate for certification under Rule 23(b)(3) because common questions of law or fact predominate based on Defendant's uniform unlawful conduct during the class period. Furthermore, class treatment is essential in this case, where the members of the Classes would otherwise likely be precluded from bringing individual actions, and where their interests are congruent with Plaintiff's claims. Class certification is also appropriate under Rule 23(b)(2) because Defendant continues to include nonfunctional slack-fill in the Products and, absent an injunctive remedy, consumers will continue to be injured.

Accordingly, Plaintiff respectfully requests that the Court grant his motion for class certification, appoint him as the class representative pursuant to Federal Rules of Civil Procedure 23(a) and 23(b), and appoint his counsel as counsel for the Classes pursuant to Rule 23(g).

## II.     THIS CASE SATISFIES EACH REQUIREMENT FOR CLASS CERTIFICATION

### A.     This Case Satisfies the Objective of Class Action Procedure.

Class actions are an essential tool for adjudicating cases involving many small claims that are not economically feasible to prosecute individually. In crafting Federal Rule of Civil Procedure 23, the United States Supreme Court explained that "the Advisory Committee had in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Indeed, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* (internal citations and quotation marks omitted). In recognition of this objective, this Court previously explained that "class actions are superior vehicles for addressing wrongs when

7

the members' damages are too small to make individual litigation worthwhile." *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at *14-16 (W.D. Mo. July 25, 2013) (Laughrey, J.), *aff'd sub nom. Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795 (8th Cir. 2017); *see also,* 7A Wright, Miller & Kane, Federal Practice and Procedure § 1779, at 557 (1986) ("For example, a group of consumers or small investors typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure."). This case satisfies the class action objective because the individual recoveries sought are small, making this action a superior vehicle for Plaintiff to pursue claims on behalf of the absent Class members.

To obtain certification, Plaintiff must satisfy the four requirements of Rule 23(a). Specifically, Plaintiff must demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-346 (2011).[7]

In addition to these requirements, Plaintiff must satisfy one of the conditions of Rule 23(b). *See* Fed. R. Civ. P. 23. As relevant here, Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and

---

[7] In the Eighth Circuit, there is no stand-alone requirement that Plaintiff prove ascertainability: "whether the proposed class is clearly ascertainable is a question that must be answered as part of the rigorous analysis performed under Rule 23. However, the Eighth Circuit has not 'outlined a requirement of ascertainability' or treated ascertainability 'as a preliminary requirement.'" *Lafollette v. Liberty Mut. Fire Ins. Co*., No. 2:14-CV-04147-NKL, 2016 WL 4083478, at *5 (W.D. Mo. Aug. 1, 2016) (Laughrey, J.) (internal citations omitted).

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court's decision to grant class certification lies within its sound discretion. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *see also Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012) ("[A] district court is accorded broad discretion to decide whether certification is appropriate[.]") (internal citation omitted). Furthermore, as described below, this action satisfies the requirements of Rule 23(b)(2).

### B. The Classes Are Sufficiently Numerous and Joinder Would Be Impracticable.

The Court must determine that the proposed class is so numerous that "joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982). The term "impracticable" does not mean that joinder must be impossible, but it does require a showing that it "would be extremely difficult or inconvenient to join all members of the class." *Morgan v. United Parcel Serv. Of Am., Inc.,* 169 F.R.D. 349, 355 (E.D. Mo. 1996). It has consistently been held that joinder is impracticable where the class is composed of more than 40 persons. *See* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* §3.05 (4th ed. 2002).

Here, the Classes are sufficiently numerous to satisfy Rule 23(a)(1). Defendant has stipulated that "[t]he proposed Classes are 'so numerous that joinder of all members is impracticable,' in satisfaction of Federal Rule of Civil Procedure 23(a)(1)." Moon Decl., Ex. R ¶ 7. In addition, the Class members are dispersed throughout the State of Missouri and the United States, making joinder impracticable. *See Gentry v. C&D Oil Co*., 102 F.R.D. 490, 493 (W.D. Ark. 1984) (finding the proposed class impracticable to join because the Class members were located throughout a number of counties in Arkansas and Missouri); *Walker v. Bankers Life and Cas. Co.*, No. 06CV6906, 2007 WL 2903180, at *4 (N.D. Ill. Oct. 1, 2007) (finding the proposed

9

class impracticable to join because the members were dispersed throughout California). Accordingly, the numerosity requirement is satisfied.

### C. Commonality Is Satisfied: There Are Numerous Questions of Law or Fact that Are Common to the Classes.

The element of commonality is readily satisfied because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiff's "claims must depend upon a common contention . . . that is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 54 U.S. at 349-350. "Even a single common question will do." *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 552 (W.D. Mo. 2014) (Laughrey, J.); *Lafollette*, 2016 WL 4083478, at *6 ("Rule 23(a)(2) requires only one common issue of law or fact among class members[.]"). For this reason, "[c]ommonality is easily satisfied in most cases." *Id.*

Courts evaluating class certification factors—including this Court—have frequently found that commonality is satisfied where the defendant's conduct is uniform. *See, e.g., Tussey v. ABB, Inc.*, No. 06-04305-CV-NKL, 2007 WL 4289694, at *4 (W.D. Mo. Dec. 3, 2007) (Laughrey, J.) ("In determining commonality, 'the appropriate focus is [on] the conduct of the defendant[s], not the plaintiffs.'") (internal citation omitted); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("The critical point is 'the need for *conduct* common to members of the class.'") (internal citations omitted). Therefore, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal citation and quotation marks omitted). In the context of underfilling products, the court in *Hendricks v. StarKist Co.* found that "the proposed class satisfies the commonality requirement because, at a minimum, the issue of Defendant's alleged under-filling of tuna cans and its defenses apply to the

Case 2:17-cv-04025-NKL   Document 69   Filed 04/03/18   Page 15 of 31

class as a whole." *Hendricks v. StarKist Co*., No. 13-CV-00729-HSG, 2015 WL 4498083, at *3 (N.D. Cal. July 23, 2015).

In light of these requirements, that there be at least one question of law or fact that is common to the class, commonality is readily satisfied particularly where—as here—it is based on a defendant's conduct directed uniformly toward all class members. There can be no dispute that Defendant engaged in a uniform course of conduct with respect to the manufacturing, packaging and filling of the Products during the class period, giving rise to numerous common questions across the class, which include whether, during the class period: Defendant packaged the Products in the same size boxes; the boxes enclosing the Products were opaque and non-pliable; the boxes enclosing the Products contained materially the same net weight; the boxes enclosing the Products contained materially the same amount of candy; the boxes enclosing the Products contained materially the same amount of empty space; the slack-fill included in the boxes was nonfunctional; Defendant's conduct violated the MMPA; Defendant's conduct caused injury to Plaintiff and Class members; Plaintiff and the Classes were denied the benefit of the bargain; and Defendant was unjustly enriched by the underfilling of the Products.

### D. Typicality Is Satisfied.

The typicality requirement is met when the claims or defenses of the representative party are typical of those of the class. Fed. R. Civ. P. 23(a)(3). The requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995). "Typicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions[.]" *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 14 C 5602, 2017 WL 4339788, at *4 (N.D. Ill. Sept. 29, 2017) (internal citations and quotation marks omitted). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct

11

as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). *See also Bradford v. AGCO Corp.*, 187 F.R.D. 600, 605 (W.D. Mo. 1999) ("As the Eighth Circuit has stated, typicality is 'fairly easily met so long as other class members have claims similar to the named plaintiff'. . . . Minor variations among the representative plaintiffs should not be used to defeat certification when the alternative is numerous trials by Western District of Missouri federal judges.").

Typicality is satisfied here. Plaintiff's and Class members' claims are based on Defendant's uniform misrepresentations and unlawful conduct in packaging the Hot Tamales and Mike and Ike candy in uniform boxes containing nonfunctional slack-fill. Complaint ¶¶ 3, 20-25, 36-55. Accordingly, Plaintiff and the Class members assert the same claims, and will use the same evidence to prove those claims and establish harm, satisfying the typicality requirement:

> Here, the lead plaintiffs' and absent class members' claims arise from the same course of events, and each class member will make similar legal arguments to prove defendants' liability. Plaintiffs contend EZ Seed was worthless, or, in the alternative, the 50% thicker claim was false and misleading. Each container of EZ Seed contained the same product (with basic "flavor" variations), and each container of EZ Seed bore the 50% thicker claim. Thus, all plaintiffs will marshal the same evidence and arguments in support of their claims.

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 406 (S.D.N.Y. 2015); *Martin v. Monsanto Co.*, No. EDCV162168JFWSPX, 2017 WL 1115167, at *4 (C.D. Cal. Mar. 24, 2017) ("The Court concludes that Plaintiff's claims are sufficiently typical of the class claims. In this case, Plaintiff alleges that she and all class members were exposed to the same statement, i.e., "Makes Up to __ Gallons", and that they were all injured in the same manner, i.e., the Roundup Concentrates provided less spray solution than promised when diluted in accordance with the instructions on the back label."); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("Plaintiffs and class members thus were all exposed to the same alleged misrepresentations on the packages and

advertisements. The Court therefore finds that Plaintiffs have satisfied both the typicality and adequacy requirements.").

Plaintiff's claims are typical of the claims of the Classes. Plaintiff purchased both the Hot Tamales and Mike and Ike Products, which contained slack-fill that is "typical of the slack-fill contained in the Products purchased by members of the Classes." *See* Complaint ¶ 6. In addition, Plaintiff's claims are based on Defendant's unlawful and misleading conduct in including nonfunctional slack-fill in the Products, resulting in damage. *Id.* ¶ 57-58, 77-78. The Class members purchased Products that were the same as those purchased by Plaintiff, and were similarly damaged.

Furthermore, Plaintiff's subjective state of mind at the time he purchased the Products is irrelevant to establishing the element of typicality. Consistent with the requirements of the MMPA, Plaintiff need only show that Defendant made a misrepresentation or engaged in an unfair practice that was typical across the class, and that Plaintiff and the Class members were injured. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013) ("Defendant argues that the differences in Plaintiffs' perceptions and knowledge about Kashi products, as well as differences in their preferences and reasons for purchasing Kashi products, render them atypical of the proposed classes. 'In determining whether typicality is met, the focus should be 'on the defendants' conduct and the plaintiffs' legal theory,' not the injury caused to the plaintiff.'") (internal citation omitted); *Langan v. Johnson & Johnson Consumer Companies, Inc.*, No. 3:13-CV-1470 (JAM), 2017 WL 985640, at *12-14 (D. Conn. Mar. 13, 2017) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.") (internal citation and quotation marks omitted).

### E. Plaintiff and His Counsel Will Adequately Represent the Classes.

The fourth and final element of Rule 23(a), adequacy, is also satisfied. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982). "Representatives must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem,* 521 U.S. at 594-95.

Here, Plaintiff is a member of the Classes he seeks to represent. There is no conflict of any kind between Plaintiff's interests and the interests of the Classes. Plaintiff purchased the same Products as the members of the Classes, and suffered the same injury. Complaint ¶¶ 6, 57-58, 77-78. Like members of the proposed Classes, Plaintiff has an interest in (1) preventing Defendant from continuing to include nonfunctional slack-fill in the Products; and (2) recovering damages for loss of the benefit of the bargain, as well as the amount by which Defendant was unjustly enriched. Moreover, Plaintiff has demonstrated his commitment to pursuing the claims on behalf of absent Class members, including by agreeing to serve as a class representative, responding to written discovery requests, and agreeing to sit for deposition. Finally, as described in detail in Section V. below, Plaintiff's counsel is well-qualified to serve as class counsel.

### III. THE PROPOSED CLASSES SATISFY RULE 23(B)

In addition to satisfying the requirements of Rule 23(a), Plaintiff must also satisfy any one of the requirements of Rule 23(b). Fed. R. Civ. P. 23(b). As described below, Plaintiff has satisfied the requirement of Rule 23(b)(2). In addition, Plaintiff has satisfied Rule 23(b)(3), which authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior

14

to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both criteria are met here.

### A.     Common Questions of Law or Fact Predominate.

Rule 23(b)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623-24. "In other words, it goes to the efficiency of a class action as an alternative to individual suits." *Lafollette*, 2016 WL 4083478, at *9 (internal citation and quotation marks omitted). In addition, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459, 133 S. Ct. 1184, 1191, 185 L. Ed. 2d 308 (2013) (emphasis in original). In the same regard, the Supreme Court recently explained that "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (internal citations and quotation marks omitted); *see also Barfield,* 2013 WL 3872181, at *11 ("Furthermore, 'predominance' does not require that no individual issues exist . . . . [And] [i]t does not mean that every question presented in the litigation must be capable of resolution in one fell swoop.").[8]

---

[8] *See also Plubell v. Merck & Co.*, 289 S.W.3d 707, 713 (Mo. Ct. App. 2009) ("In the present case, the trial court found that the central issue in plaintiffs' suit is whether [Defendant] violated the MMPA by failing to disclose and concealing Vioxx's safety risks. Because that issue—the legality of [Defendant's] conduct—is common to all the Missouri class members, and because that issue is at the core of the case, the court did not abuse its discretion in finding the predominance requirement satisfied."); *Id.* ("Additionally, [a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions. Consequently, predominance does not require that a single body of evidence satisfy the *prima*

Common questions predominate in this litigation. As described in detail herein, the underlying claims and damages in this case are subject to common proof concerning Defendant's manufacturing practices, and whether the slack-fill included in the Products is nonfunctional. And those common issues predominate over any conceivable individual issues that may arise.

**B.    Common Issues Predominate: Plaintiff Will Use Common Proof to Demonstrate that Defendant Violated the MMPA.**

Plaintiff will use common evidence of Defendant's policies and manufacturing and packaging process to demonstrate that Defendant included nonfunctional slack-fill in the Products, which practice is misleading, thereby violating the MMPA. Plaintiff will prove that Defendant violated the MMPA in one of two ways, or both—by making a misrepresentation and/or engaging in an unfair practice: "[It is a violation of the MMPA to] act, use or employ . . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." § 407.020.1, RSMo.

Critically, it is Defendant's conduct, and not its intent or knowledge, that determines liability under the MMPA.[9]  *See Plubell*, 289 S.W.3d at 713-14 ("The MMPA 'supplements the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance. . . .' 'It is the defendant's conduct, not his intent, which determines whether a violation has occurred.' Because an unlawful practice under the MMPA may be demonstrated by the defendant's conduct—irrespective of mental state—Merck's knowledge of Vioxx's risks at the

---

*facie* elements of an MMPA claim on behalf of every putative class member. Rather, it requires at least one significant fact question or issue, dispositive or not, that is common within the class's claim.") (internal citations and quotation marks omitted).

███████████████████████████████████████████
███████████████████████████████████

time of each class member's purchase is not an issue on which Plaintiffs will have to present individualized proof."); *see also Murphy v. Stonewall Kitchen*, LLC, 503 S.W.3d 308, 311 (Mo. Ct. App. 2016) ("It is the defendant's conduct, not his intent, which determines whether a violation has occurred. Moreover, '[a] consumer's reliance on an unlawful practice is not required under the MMPA.'") (internal citations omitted); *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 84 (Mo. Ct. App. 2011) ("The central allegation of the non-scienter claims is whether Nissan 'falsely represented' to the Plaintiffs that the FX Vehicles were 'luxury vehicles' and whether such alleged false representation resulted in a violation of the benefit-of-the-bargain rule because each FX Vehicle was worth less than the product as represented. As alleged, the claim here, like the one in *Plubell,* does not rely on individualized determinations, as only Nissan's conduct, not its knowledge, matters to determine violation of these provisions of the MMPA."). Because the proper focus is on Defendant's uniform conduct directed to all consumers, rather than Plaintiff's or any individual Class member's conduct, common issues will necessarily predominate.

### 1. Common Issues Predominate Because the Objective "Reasonable Consumer Standard" Is Applicable.

Plaintiff will use common evidence of an objective reasonable consumer to show that Defendant violated the MMPA. *See* Order denying Defendant's Motion to Dismiss, Dkt. No. 42, at 7 ("A plaintiff need not even allege or prove reliance on an unlawful practice to state a claim under the [MMPA]. Just Born's candy boxes are opaque and non-pliable, and a reasonable consumer could conclude that the size of a box suggests the amount of candy in it.").

The objective reasonable consumer standard eliminates any conceivable individual issue, and instead properly focuses the inquiry on common proof related to Defendant's misrepresentations. *See Rawa v. Monsanto Co.*, No. 4:17CV01252 AFG, 2017 WL 3392090, at *4 (E.D. Mo. Aug. 7, 2017) (applying the objective reasonable consumer standard where a

17

product's labeling misrepresented the amount of product in violation of the MMPA); *Murphy*, 503 S.W.3d at 310; *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016) ("The product specific labeling and packaging claims, however, do not require proof as to individual understandings and can be judged based on the objective standard provided. . . . [G]eneralized proof as to what message the packaging set conveys will satisfy the inquiry."); *Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2013 WL 3353857, at *12 (C.D. Cal. July 1, 2013) ("Therefore, contrary to [Defendant's] suggestions, resolution of the class claims does not require an individualized inquiry to determine whether each member of the class was subjectively deceived by Serum's packaging, nor are individualized inquiries needed to determine how the packaging affected each class member. . . . [T]hese questions . . . [may] be resolved on a classwide basis by applying an objectively reasonable average consumer standard to common proof that focuses on the nature of the advertising and its deceptive character.").[10] As relevant here, ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Accordingly, because the applicable

---

[10] *See also Suchanek*, 764 F.3d at 758 ("The question whether the GSC packaging was likely to mislead a reasonable consumer is common to the claims of every class member. (Note that this is an objective question, not one that depends on each purchaser's subjective understanding of the package.) The district court abused its discretion in failing to recognize that this question satisfied the commonality requirement of Rule 23(a)(2)."); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 242 (N.D. Cal. 2014) ("Proving whether the challenged representations qualify under [the reasonable consumer standard] . . . will not require delving into issues specific to each consumer."). *Accord Langan*, 2017 WL 985640, at *12; *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142, 2017 WL 1155398, at *36 (E.D.N.Y. Mar. 27, 2017) (internal citations and quotation marks omitted) (appeal filed); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *10 (E.D.N.Y. July 18, 2013); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *4 (N.D. Cal. July 15, 2016).

18

reasonable consumer standard is objective, there are no individualized issues concerning Class members' understanding of the Products that would predominate over common issues.

**2. Common Issues Predominate Because Plaintiff Will Use Common Evidence to Show Defendant Engaged in an Unfair Practice in Violation of the MMPA.**

The act, use or employment of any unfair practice is a violation of the MMPA. § 407.020.1, RSMo. The MMPA prohibits unfair business practices, including, for example, "for any person in connection with the advertisement or sale of merchandise to engage in any method, use or practice which (A) Violates state or federal law intended to protect the public; and (B) Presents a risk of, or causes substantial injury to consumers." Mo. Code Regs. Ann. tit. 15, § 60-8.090. An unfair practice has been defined broadly under Missouri law. *See Conway v. CitiMortgage, Inc.,* 438 S.W.3d 410 (Mo. banc 2014) ("[T]he literal words cover every practice imaginable and every unfairness to whatever degree.") (internal citation and quotation marks omitted). Plaintiff has alleged that Defendant's conduct violates both federal and parallel Missouri statutes prohibiting unlawful slack-fill, and that Plaintiff and Class members have suffered an ascertainable loss as a result of Defendant's conduct. *See* Complaint ¶¶ 58, 77.

Plaintiff will use common evidence of Defendant's manufacturing and packaging of the Products to show that it engaged in an unfair practice. If, for example, Defendant included nonfunctional slack-fill in the Products, then it engaged in an unfair practice by violating the statutory provisions set forth in the Federal Food, Drug and Cosmetic Act ("FDCA"), the Code of Federal Regulations ("CFR"), and Missouri state law governing slack-fill and the misbranding of food. *See, e.g.,* 21 C.F.R. § 100.100 (stating that a container is presumptively misleading if it does not allow the consumer to fully view its contents and if it contains nonfunctional slack-fill); 21 U.S.C. § 343(d) ("[F]ood shall be deemed to be misbranded: . . . . (4) If its container is so made, formed or filled as to be misleading."); § 196.075, RSMo. (same). Thus, common questions

19

concerning Defendant's conduct in manufacturing and packaging the Products to include unlawful slack-fill clearly predominate.

> ### 3. Common Issues Predominate Because Plaintiff Will Prove a Loss of the Benefit of the Bargain on a Class-Wide Basis for the Missouri Consumer Subclass.

The MMPA is clear: ascertainable loss is the difference between the value of the product represented, and the value of the product received. *See Murphy*, 503 S.W.3d at 313; *see also Kelly v. Cape Cod Potato Chip Co*., 81 F. Supp. 3d 754, 758-759 (W.D. Mo. 2015). In showing ascertainable loss based on an unlawful practice, Missouri law requires that the loss result from the unlawful practice, but does not require that the unlawful practice cause the purchase:

> The MMPA does not require that an unlawful practice cause a 'purchase.' A civil suit may be brought by '[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and *thereby suffers an ascertainable loss* of money or property, real or personal, *as a result of* [an unlawful practice].' § 407.025. '[A]s a result of' modifies 'ascertainable loss'; it does not modify 'purchases or leases.' Thus, a plaintiff's *loss* should be a result of the defendant's unlawful practice, but the statute does not require that the *purchase* be caused by the unlawful practice. Therefore, the class members are not individually required to show what they would or would not have done had the product not been misrepresented and the risks known.

*Plubell*, 289 S.W.3d at 714.

Here, Defendant packaged its Products in identical boxes with a uniform amount of underfill. Accordingly, Class members suffered the same harm, which is readily calculated based on the amount of nonfunctional slack-fill included in the Products. *See* Declaration of Michael David Pakter at ¶¶ 17-18 ("Pakter Decl.") attached as Exhibit M to the Moon Decl.

### C. Common Issues Predominate: Plaintiff Will Use Common Proof to Establish Unjust Enrichment.

Notwithstanding the fact that certain "Courts have recognized that state claims of unjust enrichment are . . . materially the same throughout the United States" (*In re Terazosin Hydrochloride*, 220 F.R.D. 672, 697 n. 40 (S.D. Fla. 2004))*,* Plaintiff seeks to certify the more

20

limited Multi-State Subclasses to account for potential variations among certain states' unjust enrichment laws. By grouping the states as described below, common issues predominate regarding whether Defendant was unjustly enriched based on its unlawful conduct.

### 1. The Unjust Enrichment "Restatement" Multi-State Class

Plaintiff seeks to certify a class of ten states that follow the Restatement (First) of Restitution's definition of unjust enrichment as to their elements of a cause of action for unjust enrichment (Arkansas, Colorado, Connecticut, District of Columbia, Hawaii, Illinois, Iowa, New York, Oklahoma, and West Virginia). The jurisdictions within the Unjust Enrichment "Restatement" Multi-State Class all call for proof that the (1) plaintiff conferred a benefit on the defendant, (2) defendant retained the benefit and (3) defendant's retention of the benefit would be unjust. *See generally* Unjust Enrichment (Restatement) Chart, Exhibit N to the Moon Decl.

### 2. The Unjust Enrichment "Appreciation" Multi-State Class

Plaintiff also seeks to certify a class of eighteen states that follow the Restatement's definition of unjust enrichment, but have an added element that the defendant "appreciate," realize, or know about the conferral of a benefit by Plaintiff as part of the elements for the cause of action (Alaska, Kansas, Kentucky, Maine, Maryland, Massachusetts, Missouri, Nevada, New Mexico, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, and Wisconsin). Thus, the states within the Unjust Enrichment "Appreciation" Multi-State Class will call for proof that the (1) plaintiff conferred a benefit on the defendant, (2) defendant retained the benefit, (3) defendant's retention of the benefit would be unjust, *and* (4) defendant's appreciation or knowledge of the benefit. *See generally* Unjust Enrichment (Appreciation) Chart, Exhibit O to the Moon Decl.

The unjust enrichment classes Plaintiff seeks to certify have been culled to exclude potential states that: (1) require privity between a purchaser and a defendant, and (2) require a

21

showing of misconduct, *i.e.*, wrongdoing or fraud, on the part of the defendant in order to recover for unjust enrichment. Accordingly, common questions predominate, and class resolution of Plaintiff's unjust enrichment claim is superior to other available methods of adjudication. *See, e.g., Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 19 (D. Mass. 2010) ("Courts have noted that unjust enrichment claims in different states are substantially similar. . . . In the present case, having analyzed the laws of thirty-four jurisdictions, the Court rules that they are substantially common and the differences between them manageable."); *Keilholtz v. Lennox Hearth Prods.,* 268 F.R.D. 330, 341-42 (N.D. Cal. 2010) (noting that while "[l]aws concerning unjust enrichment do vary from state to state," "the variations among some states' unjust enrichment laws are not material because they do not significantly alter the central issue or the manner of proof in this case . . . . In looking at claims for unjust enrichment, we must keep in mind that the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs.") (internal citations and quotation marks omitted); *In re Abbott Labs. Norvir Anti-Trust Litig.*, 2007 WL 1689899, at *10 (N.D. Cal. June 11, 2007) (the "failure to certify the unjust enrichment claims could result in class members having to file thousands of individual suits in which the discovery and factual issues would be nearly identical," and adding that "sub-classes can be identified to group residents of various States with identical common law requirements [such that these] problems are manageable and, therefore, a class action is the superior method of resolving the unjust enrichment claims").

Plaintiff will use common evidence as to all members of the Classes to prove that Defendant was unjustly enriched, further demonstrating that common issues predominate over individual damage calculations. *See* Pakter Decl., ¶¶ 19-23.

### D. Class Litigation Is Superior to Other Methods of Adjudication.

Finally, a class action is the superior method of adjudication. Rule 23(b)(3) delineates four

factors for the Court's consideration:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of the class action.

Fed R. Civ. P. 23(b)(3). All four of these factors compel class treatment here.

Rule 23(b)(3)(A) weighs in favor of certifying a class because it would cost Class members exponentially more to litigate an individual case than they could recover in damages. A Rule 23(b)(3) class is designed, in part, to ensure the vindication of the rights of people who would be without the individual strength to bring their opponents into court. *Amchem*, 521 U.S. at 612; *Barfield,* 2013 WL 3872181 at *14-16 ("Where, absent class certification, 'there would be thousands of individual actions each relying on identical conduct by [the defendant] and each asserting small claims,' a class action is a superior method for litigation.").

In addition, other than the action pending in California, Plaintiff is not aware of any pending action seeking to resolve any of the issues before this Court.[11] Thus, it is extremely desirable to concentrate the litigation of these common issues in this Court. Resolving the class-wide issues promotes judicial efficiency, economies of scale, and comprehensive supervision by a single court. As described in detail herein, the specific circumstances of this case demonstrate that it is well-suited for class certification, and should not present any management difficulties. Because Defendant engaged in uniform conduct during the class period, the claims and defenses

---

[11] As described in detail in Plaintiff's Suggestions in Opposition to Defendant's Motion to Transfer Venue, to the extent there is overlap between the two cases, counsel for California class has agreed to limit the scope of that case to California and to amend the case to only seek certification of a California class. Dkt. Nos. 29, and Ex. A thereto. In addition, Plaintiff does not seek to include any California citizens in a certified class.

at issue are common across the Classes, rendering a class action the most efficient means for pursuing this case.

## IV. THE CLASSES ALSO SHOULD BE CERTIFIED UNDER RULE 23(B)(2)

A class action may be maintained under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Eighth Circuit has stated that "[i]f the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." *DeBoer,* 64 F.3d at 1175 (quoting 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1775 (1986)). "Although a Rule 23(b)(2) class is not required to satisfy the additional predominance and superiority requirements of Rule 23(b)(3), the class claims must be cohesive." *Bond v. Liberty Ins. Corporation*, No. 2:15-CV-04236-NKL, 2017 WL 1628956, at *11 (W.D. Mo. May 1, 2017) (internal citations and quotation marks omitted) (Laughrey, J.) (appeal filed).

The requirements of Rule 23(b)(2) are easily met in this case. Plaintiff and every Class member purchased Defendant's uniformly sized and uniformly underfilled Products. Accordingly, Defendant has "acted" in a manner that "appl[ies] generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). For these same reasons, "the class claims . . . [are] cohesive." *Bond,* 2017 WL 1628956, at *11. Moreover, Defendant continues to sell the unlawful Products. Therefore, an injunction requiring Defendant to lawfully package its Products is necessary.

## V. RULE 23(G) IS SATISFIED

"Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1)(A). In evaluating the adequacy of counsel, the Court examines

24

factors such as (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources counsel will commit to represent the class[.]" *Id.*

Plaintiff's counsel will continue to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Plaintiff's counsel has performed substantial work to date litigating claims against Defendant. Plaintiff's counsel has invested hundreds of hours prosecuting claims on behalf of Plaintiff and the Classes, defeating Defendant's motion to dismiss, and pursuing class discovery. Moreover, Plaintiff's counsel possesses extensive experience in prosecuting complex class actions, including in consumer class actions like this case. *See* Firm Profile of Steelman, Gaunt & Horsefield and Firm Resume of KamberLaw, attached as Exhibits P and Q to the Moon Decl. And, as evidenced by the fact that counsel has already devoted substantial time and effort to the prosecution of this proceeding, there can be no doubt that Plaintiff's counsel will continue to devote the resources necessary to representing the Classes following appointment as Class Counsel. Since Plaintiff's counsel will continue to fairly and adequately represent the interests of the Class members throughout the remainder of the litigation, Plaintiff requests that the Court appoint David L. Steelman of Steelman, Gaunt & Horsefield, Scott A. Kamber of KamberLaw LLC, and Christopher D. Moon of KamberLaw LLP as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

## VI.  CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Class Certification, appoint him as the representative of the Classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b), and appoint his counsel as counsel for the Classes pursuant to Rule 23(g).

Dated:  April 3, 2018                    Respectfully submitted,

By:  */s/*  David L. Steelman
     David L. Steelman, MO #27734
     Stephen F. Gaunt, MO #33183
     STEELMAN, GAUNT & HORSEFIELD
     901 Pine Street, Suite 110
     Rolla, Missouri 65401
     Telephone:  573-458-5231
     Facsimile:  573-341-8548
     dsteelman@steelmanandgaunt.com
     sgaunt@steelmanandgaunt.com

     Christopher D. Moon *(pro hac vice)*
     KAMBERLAW LLP
     9404 Genesee Avenue, Suite 340
     La Jolla, California 92037
     Telephone:  310-400-1051
     Facsimile:  858-800-4277
     cmoon@kamberlaw.com

     Scott A. Kamber *(pro hac vice)*
     KAMBERLAW LLC
     142 57th Street, 11th Floor
     New York, New York 10019
     Telephone:  646-964-9600
     Facsimile:  212-202-6364
     skamber@kamberlaw.com

     *Attorneys for Plaintiff Daryl White, Jr.*
      *and the putative Class*

## CERTIFICATE OF SERVICE

    The undersigned certifies that on this April 3, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

     */s/*  David L. Steelman

26