**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF MISSOURI**

DARYL WHITE, JR., Individually and on behalf of all others similarly situated,

                    Plaintiff,

v.

JUST BORN, INC.,

                    Defendant.

Case No. 2:17-cv-04025-NKL

The Hon. Nanette K. Laughrey

**DECLARATION OF CHRISTOPHER D. MOON IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS
REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL**

I, Christopher D. Moon, declare as follow:

1.      I am an attorney licensed to practice before all courts in the State of California, and am admitted *pro hac vice* in this case and before this Court.

2.      I am a co-counsel for Plaintiff, Daryl White, Jr. in *Daryl White, Jr., individually and on behalf of all others similarly situated v. Just Born, Inc.,* Case No. 2:17-cv-04025-NKL, pending in the United States District Court, Western District of Missouri, and submit this declaration in support of Plaintiff's Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel.

3.      Attached hereto as Exhibit A is a true and correct copy of a document labeled with bates numbers JB00016765-JB00017125, which Defendant produced in discovery in response to Plaintiff's First Set of Requests for Production of Documents and Things.[1]

---

[1] The parties have stipulated as follows: "Documents produced to Plaintiff by Just Born and that are prepared by Just Born may be used in Plaintiff's class certification briefing without

1

4. Attached hereto as Exhibit B is a true and correct copy of a document labeled with bates number JB00034861, which Defendant produced in discovery in response to Plaintiff's First Set of Requests for Production of Documents and Things.

5. Attached hereto as Exhibit C is a true and correct copy of a document labeled with bates numbers JB00003659-JB00003725, which Defendant produced in discovery in response to Plaintiff's First Set of Requests for Production of Documents and Things.

6. Attached hereto as Exhibit D is a true and correct copy of a document labeled with bates number JB00024765, which Defendant produced in discovery in response to Plaintiff's First Set of Requests for Production of Documents and Things.

7. Attached hereto as Exhibit E is a true and correct copy of a document labeled with bates numbers JB00023423-JB00023425, which Defendant produced in discovery in response to Plaintiff's First Set of Requests for Production of Documents and Things.

8. Attached hereto as Exhibit F is a true and correct copy of a document labeled with bates number JB00041804, which Defendant produced in discovery in response to Plaintiff's First Set of Requests for Production of Documents and Things.

9. Attached hereto as Exhibit G is a true and correct copy of Defendant Just Born, Inc.'s Responses to Plaintiff's First Set of Interrogatories.

10. Attached hereto as Exhibit H is a true and correct copy of a document labeled with bates number JB00016701-JB00016702, which Defendant produced in discovery in response to Plaintiff's First Set of Requests for Production of Documents and Things.

11. Attached hereto as Exhibit I is a true and correct copy of a document labeled with

---

authentication by deposition, and Just Born will not dispute the admissibility of those documents for purposes of class certification." Moon Decl., Ex. R ¶ 9. As relevant here, such documents include those attached hereto as Exhibits A-F and H-L.

2

bates number JB00033702, which Defendant produced in discovery in response to Plaintiff's First Set of Requests for Production of Documents and Things.

12. Attached hereto as Exhibit J is a true and correct copy of a document labeled with bates number JB00003453, which Defendant produced in discovery in response to Plaintiff's First Set of Requests for Production of Documents and Things.

13. Attached hereto as Exhibit K is a true and correct copy of a document labeled with bates number JB00024959, which Defendant produced in discovery in response to Plaintiff's First Set of Requests for Production of Documents and Things.

14. Attached hereto as Exhibit L is a true and correct copy of a document labeled with bates number JB00003081- JB00003138, which Defendant produced in discovery in response to Plaintiff's First Set of Requests for Production of Documents and Things.

15. Attached hereto as Exhibit M is a true and correct copy of the Declaration of Michael David Pakter in Support of Plaintiff's Motion for Class Certification.

16. Attached hereto as Exhibit N is a Survey of State Law for the Unjust Enrichment (Restatement) Multi-State Class.

17. Attached hereto as Exhibit O is a Survey of State Law for the Unjust Enrichment (Appreciation) Multi-State Class.

18. Attached hereto as Exhibit P is a true and correct copy of the Firm Profile of Steelman, Gaunt & Horsefield.

19. Attached hereto as Exhibit Q is a true and correct copy of the KamberLaw Firm Resume.

20. Attached hereto as Exhibit R is a true and correct copy of a Stipulation for Purposes of Plaintiff's Motion for Class Certification.

21.     Plaintiffs' Counsel in this case and the *Escobar* action pending in California (*Escobar v. Just Born, Inc.*, 2:17-cv-01826-BRO-PJW) have agreed to jointly depose Defendant's 30(b)(6) witnesses.  However, due to a scheduling conflict of Counsel in the *Escobar* action, Plaintiff in the instant case has not yet deposed Defendant's 30(b)(6) witnesses.  Plaintiff will, however, depose the 30(b)(6) witnesses prior to submitting his Reply in Support of Class Certification, and Defendant has consented to Plaintiff including the 30(b)(6) testimony in Plaintiff's Reply.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 1, 2018                    */s/*  Christopher D. Moon
                                                              CHRISTOPHER D. MOON

## CERTIFICATE OF SERVICE

The undersigned certifies that on this April 3, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

                                    /s/  David L. Steelman
                                    David L. Steelman

# EXHIBITS A – L

## [UNDER SEAL]

# EXHIBIT M

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| DARYL WHITE, JR., ) | |
| Individually and on behalf of all ) | |
| others similarly situated, ) | |
| ) | Civil Action No.: 2:17-cv-04025-NKL |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JUST BORN, INC. ) | |
| ) | |
| Defendant. ) | |

### <u>DECLARATION OF MICHAEL DAVID PAKTER</u>
### <u>IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

## QUALIFICATIONS

1. As described in additional detail in this Declaration and my accompanying professional profile, I have 40 years of experience in accounting, forensic accounting, financial analysis, financial forensics, business economics, fraud examinations and investigations, including 20 years of experience in economic damages and business valuations.

2. I am a Certified Public Accountant ("CPA"), registered and licensed in the State of Illinois. The American Institute of Certified Public Accountants ("AICPA") has recognized me as additionally Certified in Financial Forensics ("CFF") and Management Accounting ("CGMA").

3. I earned the National Association of Certified Valuators and Analysts ("NACVA") Certified Valuation Analyst ("CVA") designation having completed its business valuation specialty program and its Master Analyst in Financial Forensics ("MAFF") designation having completed its business and intellectual property damages specialty program.

4. The Association of Insolvency and Restructuring Advisors ("AIRA") has awarded me its Certified Insolvency and Restructuring Advisor ("CIRA") certificate, recognizing knowledge and proficiency related to situations involving distressed and/or insolvent entities, and its Certification in Distressed Business Valuation ("CDBV"), a certification uniquely and specifically formulated for the performance of services encompassing valuation of underperforming assets, including distressed and/or bankrupt companies.

5. I am a Certified Fraud Examiner ("CFE"), which credentials denote proven expertise in fraud prevention, detection and deterrence. I earned a Chartered

2

Accountant ("CA") credential and my undergraduate academic education was in accounting, auditing, commerce and business economics.

6. I have participated in public hearings and alternative dispute resolutions, submitted expert reports in several jurisdictions and testified in arbitrations, regulatory proceedings and State, Federal and Bankruptcy Courts. Courts and arbitral bodies have recognized me as an expert in accounting, financial analysis, financial forensics, economic damages, business valuations and business economics.

7. I am a Managing Member of Gould & Pakter Associates, LLC ("G&P"), a certified public accounting firm, located at 205 West Wacker Drive, Suite 918, Chicago, IL. 60606. G&P's Managing Members are members of the Forensic and Valuation Services Section of the American Institute of Certified Public Accountants ("AICPA").

8. A copy of my current professional profile is attached as Exhibit 1.

## SCOPE OF ENGAGEMENT AND SUMMARY OF CONCLUSIONS

9. Gould & Pakter Associates, LLC ("G&P") and I were engaged by KamberLaw, LLC ("Counsel") in its capacity as counsel on behalf of Plaintiff Daryl White, Jr., in the matter of Daryl White Jr., individually and on behalf of all others similarly situated v. Just Born, Inc. ("Just Born").

10. Counsel engaged me to ascertain whether or not damages could be calculated on a class-wide basis using common evidence and, if so, to determine the assumptions and methodology for calculating class-wide damages.

3

11. Based on the assumptions described below, I concluded that (i) damages in this case could be determinable on a class-wide basis using common evidence; and (ii) I could build a database that would be available for calculating damages and payment of claims.

**BACKGROUND AND ASSUMPTIONS REGARDING DAMAGE ANALYSIS**

12. Counsel provided me with Plaintiff's Original Complaint – Class Action, which I reviewed and relied on in preparing this Declaration.

13. I had access to Counsel who provided information that I required to perform my analysis. Where I relied upon information provided by Counsel, I specifically reference that fact.

14. I understand Plaintiff's theory of the case centers on damages suffered by Plaintiff and members of the Classes. I do not offer any opinion on the legality of Defendant's conduct but assumes Plaintiff's contentions are true as stated in the Plaintiff's Original Complaint.

15. My methodology and analyses are and will be presented from an accounting, financial forensics, financial analyses and/or damages calculation point of view. I am not (and will not be) reaching legal conclusions and I am not (and will not be) rendering legal opinions.

16. Based on my review of the Complaint and/or representations from Counsel, it is my understanding and I have assumed that Plaintiff alleges that:

　　a. Just Born manufactures, markets, promotes, labels, advertises and sells a variety of confectionary products, including Hot Tamales and Mike and Ike candy.

4

b. On or around December 28, 2016, Plaintiff purchased a Hot Tamales Product and a Mike and Ike Product for approximately $1.00 each.

c. Plaintiff initiated a lawsuit based on Just Born's misleading, deceptive and unlawful conduct in packaging its Hot Tamales candy and Mike and Ike candy in opaque cardboard containers. The products contain a uniform amount of empty space in excess of that which is permitted by law. This empty space was referred to in the Complaint and may be referred to herein as "slack-fill" or "non-functional slack-fill."

d. The Hot Tamales Products are uniformly packaged in opaque cardboard containers with approximately 35% slack-fill. Because the boxes are opaque, consumers could not see the contents of the container at the time of purchase, including the substantial, non-functional slack-fill.

e. The Mike and Ike Products are uniformly packaged in non-transparent, cardboard containers with approximately 34% slack-fill. Because the boxes are non-transparent, consumers could not see the contents of the container at the time of purchase, including the substantial, non-functional slack-fill.

f. In purchasing the Products, consumers were denied the benefit of the bargain between what was represented and what was received.

g. Plaintiff is seeking monetary damages and injunctive relief.

h. Plaintiff's claims are typical of all members of the Classes.

5

i. Plaintiff brings a class action on behalf of himself and all others similarly situated.

j. Plaintiff seeks to represent Multi-State Classes and a Missouri Consumer Subclass (together referred to as "Classes").

k. Just Born's deceptive and misleading conduct, as described herein, violates the Federal Food, Drug and Cosmetic Act ("FDCA") Section 403 (21 U.S.C. 343), Section 403(d) (21 U.S.C. 343(d)) and the Code of Federal Regulations Title 21 part 100, et seq., as well as parallel Missouri statutes.

l. Plaintiff is seeking damages pursuant to violations of Missouri's Merchandising Practices Act ("MMPA"), which prohibits deceptive, fraudulent, misleading and unfair conduct in connection with the sale or advertisement of any merchandise in trade or commerce.

m. Plaintiff also is seeking damages based on Defendant's unjust enrichment.

n. Sales tax is not to be included in the damage calculation.

17. Consumer fraud damages can be calculated on a class-wide basis if one assumes that those damages are the percentage of non-functional slack-fill as a percentage of the legally required fill level – multiplied by the cost of the Product – and one assumes that that percentage is uniform. Unjust enrichment disgorgement can be calculated on a class-wide basis if one assumes that such disgorgement is equal to the manufacturing cost savings to Just Born resulting from not filling the boxes to the legally required fill level. I have no opinion as to whether these are legally proper measures of damages.

6

## DAMAGES UNDER THE MMPA

18. To compute the consumer fraud damages set forth above, I would perform the following procedures:

    a.   Obtain the following information and/or documentation:

        i.   Quantities of Hot Tamales Products and Mike and Ike Products sold to distributors (number of boxes of each) during the applicable class period.

        ii.   Actual or estimated apportionments of the above sales quantities sold (a) to distributors for retail stores (as used herein, retail stores include grocery stores, convenience stores, gas stations, big-box stores, etc.) and (b) to distributors for movie theaters.

        iii.   Average retail selling price (excluding sales tax) of Hot Tamales and Mike and Ike Products to customers at retail stores during the applicable class period.

        iv.   Average retail selling price of Hot Tamales and Mike and Ike Products to customers at movie theaters during the applicable class period.

        v.   The amount of non-functional slack-fill contained in the Hot Tamales Product boxes and the Mike and Ike Product boxes.

    b.   Calculate damages based on the amount of overcharge to Plaintiff due to the value of the non-functional slack-fill included in the Products. The overcharge damage resulting from the purchase of a Product containing

7

non-functional slack-fill is assumed equal to the difference between the value of lawfully filled Products (i.e., ones that do not contain non-functional slack-fill) versus the value of the Products actually received. For example, if the Hot Tamales Products were legally required to have been 80% filled and they were only 65% filled, the value of the damages would be 18.75% (calculated as 80% - 65% = 15% divided by 80%) times the retail sales price of each Product sold.

## DAMAGES FOR UNJUST ENRICHMENT

19. For unjust enrichment, I am advised by Counsel that damages may come from a benefit bestowed by Plaintiff upon the Defendant. This would be a measure that is analogous to the calculation set forth above for the benefit of the bargain but measured from the point of view of the amount of money received by Defendant rather than the amount paid by Plaintiff in exchange for a particular benefit. For unjust enrichment, it is my experience that damages also may come from the disgorgement of the cost savings to Defendant that came about by the unlawful conduct, in this case the unlawful fill level that I described below as the manufacturing discount. Because the approaches measure damages in a distinct way, it may be appropriate to combine these measures in order to ascertain total damages for unjust enrichment.

20. I do not have an opinion as to whether the law permits combining the above-described measures of damages. From an accounting point of view, the computation of damages by the aggregation of the above-described measures

8

of damages provides an accurate and not redundant calculation of damages for unjust enrichment.

21. To compute the portion of unjust enrichment damages that arises from the benefit bestowed by the consumer upon Defendant, I would perform the following procedures:

    a. Obtain the following information and/or documentation:

        i. Quantities of Hot Tamales and Mike and Ike Products sold to distributors (number of boxes of each) during the applicable class period.

        ii. Actual or estimated apportionments of the above sales quantities sold (a) to distributors for retail stores and (b) to distributors for movie theaters.

        iii. Average sales price of Hot Tamales Products and Mike and Ike Products received by Just Born (excluding sales tax) from sales to customers at retail stores during the applicable class period.

        iv. Average sales price of Hot Tamales Products and Mike and Ike Products received by Just Born (excluding sales tax) from sales to customers at movie theaters during the applicable class period.

        v. The amount of non-functional slack-fill contained in the Hot Tamales Products' boxes and the Mike and Ike Products' boxes.

        vi. Calculate damages based on the amount of overcharge to Plaintiff

9

due to the value of the non-functional slack-fill included in the Products. The overcharge damage resulting from the purchase of a Product containing non-functional slack-fill is assumed equal to the difference between the value of lawfully filled Products (i.e., ones that do not contain non-functional slack-fill) versus the value of the Products actually received. For example, if the Hot Tamales Products were legally required to have been 80% filled and they were only 65% filled, the value of the damages would be 18.75% (80% - 65% = 15 divided by 80%) times the sales price received by Just Born (excluding sales tax) of each Product sold.

22. To calculate the manufacturing discount portion of unjust enrichment disgorgement, I would perform the following procedures in addition to obtaining the information and/or documentation detailed above:

   a. Obtain an understanding of Just Born's cost accounting systems in place over its production of the Hot Tamales Products and the Mike and Ike Products manufactured during the applicable class period.

   b. Obtain and review analyses of Just Born's costs of production of the Hot Tamales Products and the Mike and Ike Products manufactured during the applicable class period.

   c. Calculate the cost savings to Just Born resulting from the non-functional slack-fill of the Hot Tamales Products and the Mike and Ike Products manufactured during the applicable class period.

   d. Calculate Just Born's enrichment based on the cost savings to Just Born by unlawfully underfilling the Hot Tamales Products and

10

Mike and Ike manufactured during the applicable class periods. Specifically, the unjust enrichment resulting from the purchase of a Product containing non-functional slack-fill is assumed equal to the cost savings to Just Born of including non-functional slack-fill in the Products. For example, if the cost of a Hot Tamales Product would have been $.50 if lawfully filled and it only cost $.40 as actually filled, the value of the damages would be ($.50 - $.40 = $.10) times the number of each Product manufactured and sold to Class members during the applicable class periods.

23. The underlying rationale for unjust enrichment damages is that Defendant underfilled each box of candy during the class period, and in so doing realized a cost saving in the manufacturing of each box. Defendant's retention of this benefit would unjustly enrich Defendant by it saving money because of its unlawful conduct. The measure of unjust enrichment damages provides a basis for returning this unlawful benefit to the members of the Classes. It is a distinct measure of damages and does not result in a double recovery.

**TOTAL DAMAGES FOR CLASS CALCULATED IN DATABASE**

24. For each Class, I would build a database disclosing my methodologies, assumptions, calculations and conclusions in a format to be made available to the Court.

11

25. The database would be contained in a Microsoft© Excel© spreadsheet that would calculate the damage to each Class member whether benefit of the bargain under the MMPA or for unjust enrichment. Depending on the instruction from the Court, I could include either aspect of the unjust enrichment calculation set forth above in the section detailing the calculation of unjust enrichment damages.

26. I would fully disclose the methodologies, assumptions and workings included in those calculations. It would be the final deliverable to the Court that would be used to calculate the payment due each Class member.

## GENERALLY APPLICABLE CONCLUSIONS AND REFERENCES

27. Based on the assumptions and methodology set forth above, I concluded that damages could be calculated on a class-wide basis using common evidence.

28. Counsel provided me copies of certain documents produced in discovery by Just Born (listed in Exhibit 2). Those documents include data on Just Born's sales and cost of sales, by distribution channel, including for the class period. These are representative of the types documents and data that I would rely on in building a database that would be used to calculate the damage to each Class member.

29. References to information and/or documentation in certain sections of this Declaration serve only as a frame of reference and/or as examples of support for the statements that I made.

30. Absent indications to the contrary, I believe the information and/or documentation to be gathered to support the underlying damages calculation

12

are of the type reasonably relied on by experts in the field of damages. Unless and until shown to the contrary, I intend to accepted the representations, information and/or documentation provided to me without independent verification thereof and will assume it correctly reflects information and/or documentation that will be accepted as evidence by the Court.

31. I relied on certain representations made to me, as disclosed in this Declaration. To the extent any representations, information, documentation and/or understanding of such is inaccurate and/or incomplete, if requested and if permitted by the Court, I reserve the right to update and/or supplement my financial analysis and/or conclusions upon receipt of additional representations, information, documentation and/or understanding.

## **COMPENSATION**

32. G&P's fees for professional services are based on actual time expended on the engagement at agreed-upon hourly billing rates. G&P's compensation in this matter is not contingent on the outcome of this matter and/or any judicial findings. G&P may be reimbursed for certain out-of-pocket expenses not waived. Agreed-upon hourly billing rates for this matter are Managing Members $400, Senior Associates $300, Associates $200 and Paraprofessionals $100. At the date I signed this declaration, G&P has not billed Counsel.

13

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Michael D. Pakter, CPA
205 West Wacker Drive,
Suite 918
Chicago, Illinois 60606-1243
March 30, 2018

14

# Exhibit 1



# CERTIFICATIONS

**Chartered Global Management Accountant (CGMA)**, *(2012)*
**Certified Valuation Analyst (CVA)**, *(2011)*
**Master Analyst in Financial Forensics (MAFF)**, *(2009)*
**Certified in Financial Forensics (CFF)**, *(2008)*
**Certification in Distressed Business Valuation (CDBV)**, *(2006)*
**Certified Insolvency and Restructuring Advisor (CIRA)**, *(2002)*
**Certified Fraud Examiner (CFE)**, *(1994)*
**Certified Public Accountant (CPA)**, *(1988)*
**Chartered Accountant (CA)**, *(1980) (Non Dues Paying)*

# EDUCATION

**Bachelor of Commerce, Witwatersrand University,** *South Africa (1974-1976)*
**Bachelor of Accountancy, Witwatersrand University,** *South Africa (1977-1979)*
**Bankruptcy Mediation Certificate Program,** *DePaul University (2000)*
**Construction Management Certificate Program,** *DePaul University (2007)*
**Continuing Education,** *including AICPA, ICPAS, ACFE, AIRA, NACVA (1986 - present)*

# RANGE OF EXPERIENCE

Mr. Pakter focuses his professional practice on forensic accounting, economic damages, financial analyses, distressed businesses, fraud/financial investigations, business valuation, business economics and litigation support services. He has provided expert services in matters involving accounting, lost profits/earnings, business interruption, breach of contract, audit failure, analysis of financial transactions/balances, alter ego, bankruptcy, fraud, accounting books and records and the reconstruction of incomplete, misstated and/or falsified financial information.

Mr. Pakter provides consulting and dispute avoidance/resolution services to trial lawyers, trustees, examiners, receivers, business owners and managers and units of federal, state and local government. Many engagements combine complex financial analysis, economic damages, valuation and distressed business issues, often involving applying many professional disciplines to assist in resolving complex commercial litigation and business disputes.

Mr. Pakter has 40 years of experience in accounting and forensic accounting, business economics and investigations in numerous industries and diverse engagements, including more than 20 years of experience in economic damages and business valuations. State, Federal and Bankruptcy Courts, as well as arbitrators, have recognized him as an expert in accounting, forensic accounting, economic damages, financial analysis, business valuation and business economics. He has served as a Rule 213(f)3 expert witness, a Rule 30(b)(6) witness and a Rule 1006 witness.

# PROFESSIONAL ORGANIZATIONS

**National Association of Certified Valuators and Analysts (NACVA)** *Practitioner Member; Assistant Editor (National Litigation Consultants' Review); Member of Editorial Board (QuickRead); Litigation Forensics Board (2012-2014, 2017-2020); Foundations of Financial Forensics Instructor; Instructor of Exceptional Distinction (2012); Outstanding Member Award (2015), MAFF (Bankruptcy, Insolvency and Restructuring Track) Program Developer/Team Leader/Instructor; Pro Bono Program*
**Illinois CPA Society (ICPAS)** *Member; Past President (North Shore Chapter); Member, Ethics Committee (1991-1995); Chair, Fraud Conference (2005-2009); Member, Accounting Principles Committee (2010-2012); and Chair, Forensic Accounting Conference/Workshop (2010-2013); Healthcare Compliance & Fraud Conference (2016-2017)*
**American Institute of Certified Public Accountants (AICPA)** *Member, Forensic and Valuation Services & Private Companies Practice Sections*
**Association of Certified Fraud Examiners (ACFE)** *Member and Past President (Chicago Chapter)*
**Association of Insolvency and Restructuring Advisors (AIRA)** *Member*
**Chicago International Dispute Resolution Association (CIDRA)** *Treasurer*

*MICHAEL D. PAKTER*



# PROFESSIONAL AND BUSINESS HISTORY

**Gould & Pakter Associates, LLC**
*Managing Member (2004 - present)*
**Russell Novak & Company, LLP**
*Partner (2000 - 2004): Principal (1998 - 1999)*
**Rome Associates LLP**
*Principal (1996 - 1998)*
**Altschuler, Melvoin and Glasser**
*Manager/Senior Manager, Litigation (1991 - 1996): Supervisor/Manager, Review and Technical Guidance (1986 - 1991)*
**Sussman & Goddard**
*Manager, Accounting and Auditing: Manager, Technical and Training (1985 - 1986)*
**Macsteel Group of Companies**
*Corporate Treasurer/Corporate Secretary, (1982 to 1985)*
**SADF Directorate of Internal Auditing**
*Accounting, Auditing, Financial Analysis and Fraud Detection, (1980 to 1982)*
**Schwartz Fine & Company/Arthur Andersen Worldwide**
*Accounting, Auditing and Financial Analysis, (1977 to 1980)*

# REPRESENTATIVE ENGAGEMENTS

Courts and arbitral bodies have recognized Mr. Pakter as an expert in economic damages, accounting, financial forensics, financial analysis and business economics.  For illustrative purposes only, his expertise is additionally described in the areas listed below and the representative engagements that follow:

- **Economic Damages** | Lost profits/earnings | business interruption | compensatory and other economic damages

- **Commercial Litigation Support** | Discovery assistance | evidence/deposition/trial binders | testimony | litigation support

- **Forensic Accounting** | Financial forensics | analysis of transactions/balances | reconstructing accounting books/records

- **Bankruptcy/Distressed Businesses** | Fraudulent conveyances | solvency | preferences | plan feasibility

- **Investigations** | Internal corporate investigations | fraud detection | financial reporting irregularities | employee misconduct

- **Valuation Analysis** | Contractual disputes | claims | distressed businesses | turnarounds | bankruptcy core proceedings

- **Accounting Analysis** | Accounting books and records | internal controls | business processes | business performance

- **Intellectual Property/Franchise** | Copyright/trademark infringement | use of likeness | royalty audits | projections

- **Real Estate/Construction** | Landlord/tenant disputes | costs of construction | common area expenses | real estate developers

- **Wholesale/Retail** | Benchmarks | "earn outs" | inventory | forecasts | financial condition/performance

- **Manufacturing/Distribution/Transportation** | Cost accounting | charge backs | expense categorization/reduction

- **Federal/State/Local Government** | Vendor audits | program revenues/costs | false claims

2



ECONOMIC DAMAGES

*Determine economic damages, primarily compensatory damages based on consequences of breach of contract/fiduciary duties, business interruption, personal injury and wrongful death. Focus on lost profits/earnings using financial analysis to project the "but for world."*

- Determine economic damages alleged by both supplier and distributor in cross-claims, each alleging the liability of the other for breaching an exclusive distribution agreement with fixed purchase commitments. Submitted affidavits, expert reports and rebuttal reports and testified at arbitration regarding lost profits, fixed and variable costs, effective selling prices and future sales projections.

- Compute economic damages claimed by a printing company due to alleged malfunction of company's sole printing press. Investigate the impact on profits from economic, industry, customer and other intervening factors other than the alleged malfunction and evaluated economic damages determined by opposing expert.

- Determine lifetime lost earnings of employee based on injuries sustained as a result of a shooting by a police officer. Determine lifetime lost earnings and present and future medical costs of independent owner operator based on injuries sustained while loading equipment. Determine lost earnings of a police officer as a result of being wrongfully denied promotions.

- Investigate property damage and business interruption claims arising from a roof collapse at a nursing home; an electrical fire at a car wash; a burglary at a convenience store; an explosion at an arms manufacturer; storm damage at an automobile vehicle dealership; and defective drums on an assembly line. Assist attorneys and clients with claims resolution involving insurance claims adjusters, umpires and mediators.

- Calculate damages claimed by a "B2C" e-commerce retailer as a result of the alleged wrongful acts of a computer software provider. Integrate into the damages all functional elements to have been included in multiple high-volume websites and determine the "but for" lost profits from lost sales, higher cost of sales and additional fixed costs over several years and products.

- Engaged by Department of Justice to determine lost earnings capacity of individuals as a result of their wrongful death, based on Mandatory Victims Restitution Act and case law. Incorporate minimum or last known wages, taxes, work life expectations, employment cost indices and lost pensions.

- Compute economic damages suffered as a result of actions of a key supplier. Evaluate reasonableness of lost revenue estimates and analyzed incremental "but for" costs incurred with special emphasis on long-run and short-run cost behaviors for fixed and variable costs with multiple cost drivers.

- Calculate property damages in local plant producing raw materials and business interruption losses in a foreign plant producing finished goods as a result of an acid spill. Reconcile property damages and lost profits with financial analysis of insurance company claim report and witness depositions.

- Determine Senior VP's compensation improved after termination and opposing expert report improperly concluded to the contrary because of unsupported assumptions. Testify that even if wrongfully terminated, the Senior VP suffered no financial damages because of his employer's conduct. Factor in alternative facts regarding expected work life, compensation, work-related economic benefits, taxes and prejudgment interest.

- Prepare Court ordered accounting of earnings lost from trading activities of a team of brokers before and after leaving a clearing firm. Reconstruct missing transactions and estimate unallocated overhead and other costs before and after effects of team leaving.

3



## COMMERCIAL LITIGATION SUPPORT

*Provide trial lawyers and their clients with financial analysis in all phases of the commercial litigation process to assist with discovery and preparation for deposition and trial. Focus on assembling deposition and trial binders concerning financial analysis, evaluating material financial transactions and the conduct of directors, offices, employees and professional advisors.*

- Establish a company had excessive levels of debt, insufficient operating cash flows to service debts and negative net worth before the alleged improper termination of a key agreement; that its financial condition was worse than comparable companies and industry benchmarks; that it had a high risk of business failure; and that its eventual self-liquidation was not the result of the agreement termination.

- Engaged by public company's legal counsel to evaluate merits of contemplated litigation against its Big Four CPA firm for alleged audit failures resulting in restatement of financial statements and decline in its share price. Conducted detailed analyses of GAAP and GAAS relating to significant misstatements in the company's financial condition and results of operations and deficiencies in its internal controls.

- Determine that Corporate Defendants existed as separate entities with distinct business purposes, followed proper procedures regarding separate accounting records, properly disclosed distributions and segregated revenues, expenses, assets and liabilities. Establish that funds were not commingled, debts were paid as they fell due until business activities ceased and assets were used to pay liabilities.

- Perform financial analysis regarding the nature, form and substance of a merger and related transactions for a dispute focused on the entity's assets, conditions precedent in the merger agreement and funds no longer available in the entity's treasury after the merger. Render opinions as to the form and substance of the merger and that the transaction resulted in a wrongful dividend.

- Assist counsel for a large diversified public company to evaluate the merits of claims against prior auditors, directors and officers under Private Securities Litigation Reform Act of 1995, Investment Company Act of 1940, PCAOB Standards, GAAP and GAAS. Perform detailed analyses of specific financial transactions and balances and evaluated whether the prior auditors performed their work with the requisite standard of due care.

- Evaluate company documents, SEC reports, accountant's work product and analysts' files in a Section 10(b) 5 securities litigation. Provide counsel with financial analysis and discovery concerning the directors' and officers' knowledge of material misrepresentations to the market during the class period.

- Assist a national accountants' malpractice insurance carrier, and its counsel and claims specialists, to assess the merits of claims brought against accountants. Evaluate and report on work product of over 50 public accounting firms and assisted the insurance carrier to reduce liability risks through educational programming.

- Estimate lost revenues that would be sustained to comply with the Americans with Disabilities Act. Performed financial analysis with market surveys to determine financial impact on the service provider.

- Determine and testify that auditors failed to follow due professional care in the course of its engagement. Review all discovery in the litigation, including auditors' deposition transcripts and working papers to identify specific GAAS failures.

- Determine and testify that auditors exercised the requisite skill and ordinary care and properly complied with GAAS. Investigate, conclude and testify that audited company's financial statements were not misstated and that all disclosures were adequate and proper.

4


## FORENSIC ACCOUNTING

*Provide trial lawyers and their clients with forensic accounting services and testimony to enable financial analysis and court-ordered accountings in litigation. Focus on complex multiple-entity business disputes, financial reporting and evaluating the effect of financial transactions.*

- Design and conduct forensic accounting procedures, on behalf of counsel for passive minority investors, on the operations and transactions of underperforming privately held businesses with significant cash transactions. Examine the accounting books and records of businesses operated by owner-managers and used financial and benchmark analyses to find questionable transactions and the range of estimated cash shortfalls.

- Engaged by counsel for family-held businesses to perform a financial analysis of related corporate defendants to determine whether financial/business considerations dictated that personal defendants should be liable for the corporations' debts by plaintiffs' attempt to "pierce the corporate veil."

- Determine nature and extent of a manufacturer's post-closing purchase-price adjustments after acquisition by a public company. Recompute the GAAP versus accelerated tax-basis accounting for Plant and Equipment.

- Investigate, on behalf of SEC Division of Enforcement, the propriety of the accounting and financial reporting of related-party transactions between hotel operating subsidiaries and parent. Issues included proper accounting for acquisitions generating significant revenues at year-end date.

- Assist counsel in their representation of investors in failed limited partnerships with significant damage claims, analyzed material financial transactions, developed financial analysis and investigated accounting malpractice.

- Investigate and report to the Receiver significant, unusual changes in the methods and patterns of cash disbursements prior to and following the sudden disappearance of the company's owner-manager/physician.

- Analyze one company's domination and control of another, the disregard of corporate formalities and the financial effects of assets distributions. Issues included cash management systems, intercompany financial reporting, "division stripping" and the impact of the treatment of existential liabilities.

- Perform specific forensic accounting procedures on behalf of industrial property company in support of substantive lease restructuring discussions. The company had built and leased a state-of-the-art corporate headquarters and national distribution warehouse. The tenant entered into a series of ill-fated acquisitions culminating in financial difficulties likely to result in a potential bankruptcy filing. The analyses of the tenant's financial condition were an integral part of the property owner's strategic responses.

- Trace and segregate cash flows, profits and resulting net assets between legal and illegal activities to enable the Court to determine the extent of illegal activities. Engaged on behalf of Defendant seeking to reduce sentence under Federal Sentencing Guidelines.

- Perform accounting procedures to analyze and support an expert opinion in marital dissolution proceedings regarding the marital or non-marital character of assets. Trace currently owned assets back to assets acquired before marriage or acquired during the marriage by gift, inheritance or descent.

- Analyze and determine additional losses suffered as a result of alleged carelessness and negligence in demolishing certain buildings and related facilities located on specific property earmarked for construction of an ethanol plant. Research and evaluate industry conditions, state of capital markets, management assumptions and the discounted cash flow modeling of accounting and industry experts.

5



## BANKRUPTCY/DISTRESSED BUSINESSES

*Provide trustees and trial lawyers and the debtors or creditors they represent with bankruptcy and reorganization services, primarily in core proceedings. Focus on performing financial analysis of material transactions, fraudulent conveyances, solvency and preference analyses, the forensic reconstruction of accounting books and records and plan feasibility.*

- Demonstrate that the Debtor's Cash Flow Projections were a well-prepared forecast of future operations, based on reasonable assumptions that took into consideration the changes expected as a result of the Plan Confirmation that would enable the Debtor to fund the Plan's cash flow requirements.

- Complete solvency, preference and liquidation analyses to support counsel's actions against lenders, management and professional advisors resulting from diversified corporation's default on its bank loans. Develop support for the Debtor's request for the Court's denial of post-petition financing.

- Investigate and analyze a Debtor's pending claims and adversary proceedings against shareholders, lenders and professional advisors concerning a LBO transaction involving fraudulent conveyances. Analyze the impact of various business combinations on the Debtor's financial condition after restructuring, performed a solvency analysis and reviewed material transactions contributing to the Debtor's deepening insolvency.

- Demonstrate a company's business started to decline before a specific transaction and its business continued to decline while related companies prospered. Issues included a pattern of transactions transferring assets and revenues to related companies, the liquidity of assets and the value of the use of related company assets.

- Provide litigation services in an action filed on behalf of unsecured creditors seeking recovery of pre-petition fraudulent conveyances. Perform a financial analysis of significant pre-petition transactions.

- Analyze and testify as to the Debtors' financial condition after assuming certain liabilities and as to the value of the Debtor's net assets. Prove that Debtors did not receive quantifiable benefits from assuming liabilities and issued checks to each other that did not result in checks to third parties.

- Review Debtor's Amended Disclosure Statement and Plan of Recognition; compare projections to pre- and post-petition actual results; evaluate key assumptions included in the Debtor's projections of sales revenues and royalty income; and reconstruct previously incomplete financial records.

- Perform a preference analysis relating to vendors and insiders of a privately held business. Prove the foundation for preference actions and secured original checks, invoices and wire transfers as evidence. Complete debtors' amended income tax returns for the Plan Trustee.

- Assist manufacturing company with post-bankruptcy reorganization and restoration of operations. Issues included transfer and resumption of business, preserving contracts, ensuring ongoing economic viability, restructuring real estate entities and administrative aspects of accounting records and income tax compliance.

- Employed by a Chapter 7 Trustee to investigate allegedly unsubstantiated and/or fraudulent financial reporting by a consolidated health care provider. Provide the Trustee and legal counsel with forensic accounting and litigation accounting support, including reconstruction of incomplete and/or falsified financial records.

- Perform financial analysis and specific agreed upon procedures for a large, privately held holding-entity that operated a manufacturing division and managed a corporate office. Determine and attest to the sufficiency of assets to meet liabilities, including additional worker's compensation judgment liability and issue an independent report detailing work performed and findings reached.

6



## INVESTIGATIONS

*Conduct internal investigations on employee/officer misconduct, financial reporting irregularities and fraudulent financial transactions. Focus on financial analysis, examining documents, interviewing personnel, gathering evidence and performing whistleblower-directed or risk-based procedures to determine findings as to the nature, timing and extent of fraud perpetrated.*

- Conduct an investigation of the accounting for receivables, loans, advances, suspense accounts and related transactions. Interview directors, officers and senior personnel, including a whistle-blower, and examine over 1,000 accounting entries in the general ledgers, account analyses and handwritten "second set of books." Perform financial analyses, forensic accounting and investigative analyses and gather, review and control more than 3,000 documents for trial. Conclude the former CFO created, directed and controlled a financial reporting system to systematically and fraudulently manipulate and conceal true financial condition from the directors, officers, shareholders, auditors, lenders and revenue authorities for more than ten years.

- Conduct an internal corporate investigation for new management to determine the nature, timing and extent of fraud perpetrated by the former general manager and controller. Conduct forensic procedures to detect fraud and quantify the extent of fraudulent financial reporting and misconduct.

- Engaged by the Office of the United States Attorney to assist in qui tam originated investigation of approximately $10 million charged to NIH and VA Federal Grants. Apply risk assessment, forensic accounting and investigative techniques to electronic data provided by grantee organization's legal counsel to complete financial analysis leading to preliminary findings of which amounts charged under the grants were allowable, allocable, reasonable, consistent and conforming.

- Report to a public company's Audit Committee on the sufficiency of the nature, timing and extent of the investigative and/or internal audit procedures performed on improper transactions authorized by the Senior Vice President for Marketing. Assist management to reestablish internal controls over the safeguarding of corporate assets against unauthorized use and achieve proper financial reporting.

- Conduct an investigation of the falsified expense reports of a foreign national senior director of a large steel company. Prove the director submitted expenses for reimbursement for travel to cities that he had not been in on dates presented. Discover the pattern of alleged fraud and the officer's motives through an analysis of telephone bills submitted for reimbursement.

- Determine that a leading U.S. and international news and information company failed to design, operate and/or implement adequate internal controls to prevent theft of its assets by a controller. Demonstrate how the controller defrauded the public company because of significant deficiencies and/or material weaknesses in the design, operation and/or implementation of its internal controls and how it missed several opportunities at specific dates to reduce the amount stolen.

- Support SEC Division of Enforcement in administrative proceedings under SEC Rules of Practice to determine violations of Federal securities laws. Investigate and analyze conduct of directors, officers and auditors regarding improper revenue recognition of material "bill and hold" transactions.

- Investigate the propriety of the design and structure of financial transactions related to specific life insurance policies issued by an insurance carrier that were originated by a specific independent insurance producer. Review and analyze the use of irrevocable life insurance trusts, premium finance agreements and sale of beneficial interests to reveal the true nature and use of the financial transactions.

7



## VALUATION ANALYSIS

*Provide trial lawyers and their clients with financial analysis regarding valuations, especially related to applying formulae in contracts, distressed businesses and/or turnaround and bankruptcy proceedings. Focus on definitions of value in contracts, fair values of assets and liabilities, reasonably equivalent value, future economic benefit streams, financial condition and contingent assets and liabilities.*

- Reconstruct and analyze a Debtor's restructurings, determine that its successor assumed more of its liabilities, at fair value, than the assets it acquired, to demonstrate the Debtor received more than reasonably equivalent value in exchange for assets transferred and liabilities assumed. Reconstruct the financial condition and results of operations of companies managed by the Debtor, benchmarking their performance to industry standards and comparable companies, to determine the fair values of accounts receivable, trademarks and other assets transferred by the Debtor to its successor.

- Determine, using a discounted cash flow analysis, the total present value of the net assets of a joint venture LLC established to raise, invest and manage funds on behalf of foreign investors in real estate projects. Reconcile my calculation to the business valuation performed on behalf of other joint venture partners and rebut the methodology, assumptions and information relied upon by the business appraiser.

- Determine and testify at arbitration as to the fair value of a minority shareholder's ownership interest in a distressed corporation as of a date ordered by the Arbitral Panel. Determine and compare book value, going concern value, liquidation value, replacement value and fair market value of corporation.

- Determine the value of a public company's investment in a foreign enterprise using international accounting principles, financial data, financial condition, management interviews and supporting documentation. Compare value of investment in the foreign enterprise using "net investment value," "book value" and other valuation bases under the insurers' Expropriation and Forced Abandonment Insurance Coverage of Foreign Projects.

- Determine fair (market) value of a distributor before and after termination of a distributor agreement, prove other expert wrongly concluded as to value because of failure to obtain sufficient relevant data to afford a reasonable basis for opinions, use of improper valuation methods, applying valuation methods improperly, failing to consider all methods and improperly reconciling disparate conclusions.

- Determine and testify as to the Fair Market Value of Equipment based on definitions and formulae in the Landlord's Purchase Option Agreement, the Master Lease Agreement and other agreements. Perform valuation analyses and incorporate the opinions and assumptions of other experts.

- Calculate, for the board of directors' decision-making and performance evaluation processes, the internal rates of return and payback periods for investments in acquired companies, based on their expected, actual and "normalized" future benefit streams as compared to initial costs of acquisition.

- Investigate, on behalf of U.S. governmental insurer, claims filed by an energy company for losses incurred by foreign gas pipeline operators. Verify valuation of investor's interests, unravel complex corporate structures and analyze extent to which investment was impaired by foreign government's currency devaluation and expropriation.

- Determine, on behalf of the Liquidating Trustee, the fair market value of the invested capital of a company marketing a unique line of nutrition related products and energy drinks before and after the date of certain transactions. Analyze, compare and contrast the discounted cash flows based on projections prepared before and after the date of those transactions.

8



# ACCOUNTING ANALYSIS

*Provide owners and managers of businesses, their legal counsel and insurers, with financial and accounting analysis to address specific business needs. Focus on analyses of contractual terms, establishing benchmarks, examining divisional revenues and expenses and measuring cash flows and business performance.*

- Evaluate the reasonableness of management's assumptions included in an architect's forecasted and projected financial statements. Issues included analysis of direct and indirect costs, operating expenses and profits in contemplation of significant increases in interest rates.

- Investigate and trace, on behalf of attorney general and bankruptcy trustee, the nature, timing and extent of participants' contributions and distributions in a "Ponzi" scheme and assist with "claw back" proceedings. Evaluate potential recoveries under "Rising Tide" and "Net Investment" approaches.

- Analyze multi-year, multi-million dollar construction program to modernize a city's physical school facilities. Investigate and perform financial analysis of capital improvement program on behalf of inspector general. Develop benchmarks for fixed cost bids and change orders by school, contractor and project type and selected contracts with significant variances for additional review and checking.

- Develop a comparative financial analysis of a privately held company's current and prior five years' financial performance, including trends in key financial ratios, comparisons to peer company benchmarks and "normalizing" adjustments.

- Develop and implement, in close cooperation with owners and senior management, monthly executive committee meetings to address the primary business needs of a specialty distributor. Develop action plans and implement corrective action and business solutions, including provide advice on corporate restructuring and restoring several divisions to profitability.

- Investigate thefts of unclaimed cash wages and other elements of payroll fraud. Design and implement internal accounting controls to prevent the reoccurrence of such fraud. Present findings during an investigation by a governmental accounting oversight review board.

- Perform financial analysis of all program revenues and expenditures for a large city services department. Establish internal control systems and financial reporting systems to provide program managers with early warning of significant over/under utilization of program revenues. Attest to examinations of program revenues and costs, including financial compliance with federal programs.

- Review functions, duties and responsibilities of president and senior management of a multi-division food processing company. Analyze nature of acquisitions and divestitures. Identify and implement organizational changes, establish working committees of middle management and implement recommendations of organizational psychologists.

- Prepare an internal control study to document current procedures and internal controls relating to specific activities and locations to determine if any control objectives were not being adequately met to reduce internal control risk to acceptable levels.

- Review calculations of expected present values of actual and/or contingent asbestos and other contingent liabilities, with comparisons to anticipated insurance recoveries under various probability assumptions.



## INTELLECTUAL PROPERTY/FRANCHISE

*Provide trial lawyers, their clients and franchisees and franchisors with consulting and expert services related to intellectual property issues and franchise related disputes. Focus on startup businesses, economic damages related to copyright infringement and franchise cash flow modeling.*

- Determine economic damages suffered by designer, manufacturer and seller of original fine furniture as a result of copyright, trademark and trade dress infringements by multiple unlawful manufacturers and sellers. Determine the unjust enrichment of the infringing companies and lost profits on infringed and companion sales.

- Engaged by legal counsel to investigate and report on the nature, timing and extent of multiple fraud schemes involving counterfeit and "buy-down" products. Describe how, in order to increase customer and revenue base, Defendants created, directed and engaged in multiple schemes that caused the Plaintiff to pay rebates that it otherwise would not, and should not, have paid.

- Review, analyze and render opinions relating to direct and indirect economic damages from alleged infringement of a copyrighted song whose lyrics were included as an element of a radio imaging piece with the creativity and production of others and aired on commercial radio station. Focus on an analysis in the event the trier of fact finds infringement of copyright claims of statutory damages and actual damages considering Plaintiff's and Defendant's Profits.

- Calculate damages suffered by franchisees as a result of franchisors' breach of franchise agreement. Analyze lost profits during the "but for" period and support for assumptions in the damages model.

- Evaluate economic damages suffered by manufacturer as a result of a distributor's breach of an exclusive private-label food production contract. Identify flaws in opposing expert's methodology and calculations creating specific significant and quantifiable overstatements of damages.

- Review transactions acquiring and managing skilled nursing facilities and related franchised businesses and calculate management fees, "earn out" calculations and profits earned on charges exceeding the fair market value of goods and services.

- Reconstruct and determine the actual losses sustained by several car wash purchasers/licenses due to the alleged fraudulent misrepresentations made by the seller/licensor regarding the financial performance, licensee involvement and maintenance required to own and operate the car washes.

- Rebut expert report on present value of lost profits associated with alleged failure to renew franchise agreements, proving the damages claim was unsubstantiated and unsupported, the claim was speculative and that there were no damages.

- Determine that the franchisee's payments of rents and royalties under a Master Franchise Agreement were proper, accurate and complete. Investigate whether the franchisee had correctly accounted for all adjustments necessary after acquiring certain regional franchise and non-franchise businesses.

- Determine the completeness of revenues due by a manufacturer and distributor of electronic equipment under a royalty and licensing agreement. Investigate and reconstruct the manner in which the royalty revenues were calculated and perform a royalty audit.

- Analyze the completeness and/or proper reporting of royalty payments due an individual for use of their likeness by a distributor of specialized products through multiple distribution channels. Investigate and recreate the quantities and pricing of reportable products sold over a ten-year period.

10



## REAL ESTATE/CONSTRUCTION

*Provide developers, owners and tenants of property/equipment with financial analysis and services to resolve disputes. Focus on real estate development, landlord/tenant issues, environmental remediation and working with architects, engineers and counsel to analyze and determine costs and economic damages.*

- Perform a financial analysis of a lump sum engineering, procurement and construction contract for a high-tech steel production plant to determine amounts owed to vendors. Categorize, trace and verify internal and third party charges, pass-through costs and change orders to support drawdowns on letters of credit.

- Perform court-ordered accounting of six years of profits and losses of ten real estate developments in different stages of construction with varying partnership interests. Report to the Court the extent of partners' compliance with partnership agreements and prepared amended financial statements and tax returns.

- Investigate complex international real estate transactions in a matrimonial dispute and integrate the work of U.S. and international experts. Prepare pre-trial summary and analysis of marital assets and assisted counsel to gain an understanding of complex transactions by demonstrating the true substance of the transactions.

- Review documentation and interview contractors regarding rehabilitation of homeless shelters to develop strategic responses to unresolved issues. Perform analysis of contractor and subcontractor invoices, working with architects and engineers to establish scope of work for binding arbitration.

- Analyze Landlord's calculation of Additional Rent defined in the Building Lease and rendered expert opinion that Landlord failed to provide Tenant with sufficiently complete and supportable information and documentation to verify expenses included in the calculation. Compute, to the extent Landlord's limited information and documentation was reliable, the annual aggregate overcharges of Additional Rent.

- Determine lost profits, sunk costs and other damages in a dispute between a real estate developer and its client over air rights. Economic damages included analyses of real estate development costs incurred, direct and indirect overhead of land parcels and replacement value.

- Prepare financial analysis of asbestos abatement expenditures in accordance with regulatory requirements, verified expenditures and reimbursement requests, reconciled costs to contracts and change orders, responded to adverse EPA findings and segregated costs between original scope of work and unforeseen site conditions.

- Assist CEO of a major law firm in recovering significant revenue in a case involving operating expenses on a lease. Discover and develop a proof of the lessor's pattern of overcharging on common area expenses.

- Analyze key processes in a city's ongoing capital improvement program, especially construction management policies and procedures. Conduct construction document reviews of a sample of new construction and major renovation projects with emphasis on the nature, extent and pattern of change orders.

- Reconstruct all annual financial statements and financial accounting books and records of rental property, including all cash received from and/or disbursed to partners, and prepare report as to the net amount due from one partner in the real estate venture to the other.

- Investigate a landlord/tenant dispute as to the amount of rent and common area maintenance costs charged to the tenant and other issues alleged in the Complaint. Trace all available invoices, summaries of costs, general ledgers, trial balances and check registers. Compute the annual allocations of common area maintenance costs by reference to the original lease, subsequent lease amendments, a reclamation agreement and correspondence between the parties.

11



## WHOLESALE/RETAIL

*Provide wholesalers and retailers and their legal counsel with financial analysis regarding expected revenues and costs of revenues. Focus on economic damages, "earn outs" and evaluating the reasonableness of management's forecasts, projections and assumptions.*

- Determine accuracy and validity of "earn out" calculations of multiple wholesale business units pursuant to a Sale and Purchase Agreement, taking into account inconsistencies between GAAP and the Sellers' prior practices. Investigate allegations that after-acquired businesses were comingled, revenues were diverted, expenses were shifted and underlying supporting documentation was destroyed.

- Determine an authorized dealer for a large retailer of tools, garden products, home electronics and appliances suffered no lost profits and had no damages as a result of the retailer's actions. Find that its damages analysis was speculative, unsubstantiated and/or unsupported, that the authorized retailers financial performance and profitability began to decline before the retailer opened a competing store.

- Identify, on behalf of counsel for minority shareholders, selected classes of transactions for in-depth investigation to ensure properly accounted for in a manufacturing and distribution company's financial books and records to establish the business' true financial condition for settlement negotiations and business valuation purposes.

- Compare valuation of year-end retail inventory performed by public company's officers and auditors. Issues included concealment of internal control deficiencies, inappropriate "roll-forward" procedures, accounting for rebates, cost accounting and sampling errors and fraudulent physical counting problems.

- Develop corporate performance measurement systems, internal controls, financial reporting, accounting policies, procedures and processes for a large structural steel wholesaler and retailer. Analyze profitability, liquidity and return on investment by customer, by warehouse and by product segment.

- Assist counsel with discovery, financial analysis and document requests relating to termination of a merger agreement in reliance on a material adverse change clause. Analyze acquired company's GAAP earnings, revenue recognition, "earn out" calculations and causes of business failure.

- Perform a Court-ordered accounting of the amount that may be owed by a large, diversified retailer to its overseas supplier in the event monies were still owed at all. Verify, including by non-statistical sampling, the accounting of all invoices, payments and other debits and credits for a three-year period.

- Evaluate contracts to outsource operations to outside vendors, review bid results and assess the performance of vendors under contracts, including inspections to determine vendors' compliance with contract elements. Determine damages and identify operational efficiencies.

- Investigate and identify suspicious cash and credit card disbursements of a senior executive director using specific investigative criteria and integrate findings into spreadsheets, calendars and other demonstrative presentations. Support special counsel's investigation into executive director's activities and its interviews of senior management and others and implement additional internal control procedures.

- Enable large coffee wholesaler to reduce several of its costs of doing business using an expense reduction approach that integrated non-payroll overhead audits, payroll reviews, information technology teams, reengineering of operational procedures and establishing and monitoring budgets.



## MANUFACTURING/DISTRIBUTION/TRANSPORTATION

*Provide manufacturing and distribution companies with financial analysis regarding costs of manufacturing, distribution and transportation. Focus on issues related to financial reporting and other disclosures, adequacy of documentation, cost charge-backs, costing systems, economic damages, special purpose examinations and purpose of business expenditures.*

- Assist counsel for truck drivers' association to determine excessive charge-backs and other damages, suffered by a class of independent owner-operators as a result of actions by a regulated motor carrier. Damage analysis necessitated reconstructing an accounting of all fuel purchases and sales and other charge-backs during the class period.

- Investigate and reconstruct the job-cost accounting system and internal control structure of a manufacturer of tooling molds to the automotive industry. Apply cost accounting principles to recompute manufacturing labor and overhead rates, verify in-house and outsourced material component costs and reallocate job-costs of a capital nature, in conformity with customer's manufacturing guidelines

- Perform, on behalf of Inspector General, an in-depth investigation, evaluation and management study of a school transportation program. Evaluate program manager's performance and vendors' contract compliance. Perform unannounced inspections of school buses for driver and bus safety compliance. Provide numerous efficiency initiatives and management recommendations.

- Determine damages sustained by an Illinois distributor as a result of the alleged breach of contract and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act by national developer and marketer of educational materials.

- Conduct an investigation of the activities of the chief financial officer of a distribution company through interviews of the target, senior management and employees. Supervise forensic examinations of computers using predetermined search criteria. Integrate reviews of company documentation with online public records database searches. Determine the entity's losses by type of fraud scheme and present the fraudulent activities to senior management and legal counsel.

- Engaged by insurance company to investigate contractor's claim for increased transportation and material handling costs of performance of environmental remediation during conversion of a military base to residential redevelopment. Prepare analysis of construction claims and liens.

- Investigate diversion of assets by principal stockholders and senior management from a transportation carrier using related party leases and other financial schemes. Evaluate the audits performed by a national CPA firm prior to discovery of the wrongdoing and the investigative work performed after the fraud was uncovered.

- Engaged by legal counsel to investigate and evaluate vendors' claims for amounts owed in construction of a rail transit project. Review architects' and engineers' reports, contracts, change orders, financial/accounting records and deposition transcripts to determine vendors' increased costs of performance.

- Enable large coffee wholesaler to reduce several of its costs of doing business using an expense reduction approach that integrated non-payroll overhead audits, payroll reviews, information technology teams, reengineering of operational procedures and establishing and monitoring budgets.

- Reconstruct the accounting books and records of a joint venture formed by distributors of printing presses from date new entity formed through date of dissolution. Account for the parties' contributions, distributions, profits and losses as provided for by the terms of the joint venture's operating agreement.

13



## FEDERAL/STATE/LOCAL GOVERNMENT

*Provide managers of state and local governmental units with financial analysis and consulting to create efficient and effective operations and accountability. Focus on program revenues and costs, false claims and investigating and analyzing billings by and payments to government contractors to establish allowability, allocability and reasonableness.*

- Examine a city hall's renovation programs to determine construction and other costs incurred by the city since inception. Evaluate allocations of project costs for reasonableness in accordance with accounting, allocation and cost principles/criteria.

- Engaged by United States Attorney for Northern District of Illinois to review financial records of defendants violating Clean Water Act to determine ability to pay damages under Consent Decree. Identify material inconsistencies in defendants' financial documents and representations to U.S. Department of Justice.

- Conduct fraud investigation on behalf of chief operating officer of city government into financial activities of delegate agency. Find delegate agency filed false and misleading financial reports, breached federal, state and city mandates and was insolvent. Provide inspector general with support for termination of agency.

- Analyze a real estate developer's financing and other carrying costs associated with acquiring, holding and developing property awaiting annexation by a village. Determine these costs arose primarily due to the way in which the property was originally acquired and transactions were originally structured. Conclude that the costs were not primarily related to alleged delays in the village's processes and that claims for damages were speculative, insufficiently detailed and overreaching.

- Analyze and evaluate the contractors' labor, overhead and capital expenditures for allowability, allocability and reasonableness in accordance with a city's multi-million contract to upgrade its emergency communications system and assemble evidential matter supporting the city's legal counsel claims for recovery of overcharges.

- Perform investigation to determine if a board of commissioners properly expended funds in the best interests of taxpayers in accordance with prescribed requirements. Evaluate internal controls to ensure adequate safeguarding of funds and perform additional specific procedures to report findings covering a four-year period.

- Perform utility rate structure audits on behalf of a city's energy department to analyze and review propriety of charges levied by utility vendors. Verify the use of the contractual tariff structure, summarize and examine invoices for potential billing inaccuracies and cost savings, quantify annual billings under alternative tariff rates and negotiate credits with vendors under a revised tariff structure.

- Perform agreed upon procedures, on behalf of Special Counsel to the Board of Commissioners of a large, developing Illinois county, to assist the elected officials to analyze the financial condition of the provider of a Guaranty relative to the current and future financial performance obligations of the provider's corporations developing and operating a waste disposal facility located in the county.

- Perform special-purpose vendor compliance examinations on behalf of city government and audit vendor charges to ensure billings in accordance with contract and prevailing tariffs. Determine vendor overcharges and contractual violations and assist in recovering significant refunds due to the city.



## PUBLICATIONS AND PRESENTATIONS

**Implementing New Firm-wide Audit Methodologies for Generally Accepted Auditing Standards**
*Altschuler, Melvoin & Glasser ("AM&G")*
Various dates 1986 – 1991

**Financial Statements[1]**
*Chicago Bar Association ("CBA"), Continuing Legal Education ("CLE") Forum*
Various dates 1996 – 2012

**Consideration of the Internal Control Structure in a Financial Statement Audit**
*Illinois CPA Society ("ICPAS") News Journal*
July 1989

**Communications of Internal Control Structure Related Matters Noted in an Audit: SAS No. 60 Audit Procedures**
*ICPAS News Journal*
August 1989

**Effective Audits and the Detection of Fraud**
*AM&G Ledger*
September 1989

**Preparing Your CPA Firm For Quality Review**
*Chicagoland Public Accounting Firm*
January 17, 1990

**Audit Strategy and the New Expectation Gap Standards**
*Chicagoland Public Accounting Firm*
December 12, 1990

**Accounting & Auditing: The Effect of Incorporating SAS no. 55 on Audit Strategy**
*ICPAS Insight*
February/March 1991

**Avoid Being Sued! Your Pockets Aren't Deep Enough**
*ICPAS Insight*
February/March 1991

**Closing the Gap: Beyond SAS No. 55**
*ICPAS Insight*
April 1991

**Effects of Expectation Gap Standards on Quality Control**
*ICPAS Insight*
May 1991

**New Audit Standards on Internal Control: Should Lenders Care?**
*Commercial Loan Monitor*
Spring 1991

**Litigation Relating to the Accountants of Automobile Dealerships**
*Crum & Forster Managers Corporation (IL)*
April 8, 1992

---

1 Various annual presentations on the theme of financial statements (understanding them and/or financial statement misstatements) with or without incorporating the "Confree Manufacturing" or "Composite Manufacturing" case study including: "Financial Statements - What They Can and Can't Tell You"; "Understanding Financial Statements"; "A Financial (Mis)Statements Case Study"; "Understanding Financial Statements, Uses and Application, Principles and Practices and Terminology and Fundamentals"; and "Using and Misusing Financial Statements - Can You Trust the Financial Information you are Given?"

15



**You Can't Be Sued for Providing Consulting Services … Can You?**
*ICPAS Insight*
April 19, 1992

**White Collar Crime: Could it Happen to You?**
*AM&G Ledger, later reprinted in the Isle of Man Financial and Business Review*
Summer 1992

**Does the Balance Sheet Reflect Net Worth?**
*Law Firm, Chicago, Illinois*
February 6, 1995

**Does the Balance Sheet Reflect Net Worth?**
*Law Firm, Chicago, Illinois*
February 15, 1996

**Four Phases of a Fraud Audit**
*ICPAS Midwest Accounting and Business Management Show*
August 27, 1996

**Fraud Auditing and Forensic Accounting**
*Philippine Certified Public Accountants of Greater Chicago Chapter*
Other 1996

**Determining Vendor Compliance and Detecting Procurement Fraud**
*ICPAS Government Conference*
April 23, 1997

**Management Financial Statements – Can You Trust the Financial Information You Are Given?**
*Law Firm, Chicago, Illinois*
May 1, 1997

**Four Phases of a Fraud Audit**
*ICPAS Management of an Accounting Practice Division*
May 28, 1997

**Expense Reduction Services**
*Law Firm, Chicago, Illinois*
July 1997
*Rome 'n Times*
August 1997

**Intermediate Financial Analysis**
*CNA Insurance Systems and Financial Training Forum*
August 26-27, 1997

**Achieving Efficiency: A Study in Cost Reduction,**
*ICPAS Business & Technology Solutions Show*
August 28, 1997

**Introduction to Financial Analysis**
*CNA Insurance Systems and Financial Training Forum*
September 17-18, 1997

**A Look at SAS No. 82, Considering Fraud in a Financial Statement Audit**
*Chicago Chapter of Association of Certified Fraud Examiners*
September 19, 1997

**GAAP Update**
*Rome Associates LLP, Accounting and Audit Department Training*
October 27, 1997

16



**Internal Control and COSO; Framework, Evaluation and Reporting**
*ICPAS*
November 17, 1997

**GAAS Update With Focus on Audit Risk Alerts**
*Rome Associates LLP, Audit Department Training*
December 8, 1997

**Accounting and Auditing, GAAP and GAAS Update**
*ICPAS, North Shore Chapter*
December 16, 1997

**How Expense Reduction Services Can Bring Value to Your Clients**
*National Council of Philippine American Canadian Accountants Annual Convention*
Other 1997

**Four Phases of a Fraud Audit**
*National Council of Philippine American Canadian Accountants Annual Convention*
Other 1997

**Non-Traditional Services - Consulting, Litigation and Assurance Services**
*Rome Associates LLP, Audit Department Training*
Other 1997

**SSARS Update**
*Rome Associates LLP, Accounting and Audit Department Training*
January 23, 1998

**Dollar Value Auditing**
*The Institute of Internal Auditors, Chicago Chapter*
March 16, 1998

**Review of Expert Reports in Labor Litigation**
*Law Firm, Chicago, Illinois*
May 7, 1998

**How Do You Really Comply with Fraud Detection Standards**
*ICPAS*
November 4, 1998

**Financial Statements – What They Can and Can't Tell You!!!**
*The Chicago Bar Association*
November 9, 1998

**Accounting and Auditing (GAAP & GAAS) Update**
*Rome Associates LLP Accounting and Auditing Department*
October 30, 1998

**Review of Expert Reports of Lost Profits in Commercial Litigation**
*Law Firm, Chicago, Illinois*
Other 1998

**Fraud and the Audit Process**
*Rome Associates LLP Audit Department*
Other 1998

**Expense Reduction Services Case Study**
*Rome Associates LLP*
Other 1998

17



**The Financial Shenanigans of Confree Manufacturing**
*LaSalle Bank N.A.*
Other 1998

**Introduction to Financial Analysis**
*CNA Insurance Systems and Financial Training Forum*
Other 1998

**A Financial (Mis)Statements Case Study**
*Business Law Center, School of Law, Loyola University, Chicago, Illinois*
October 31, 2000

**Financial Statements: What They Can and Cannot Tell You About Your Vendors**
*Chicago Public Schools Office of the Inspector General*
Other 2000

**Financial Statements: What They Can and Cannot Tell You About Your Vendors**
*Chicago Bar Association*
May 11, 2001

**A Forensic Examination of Financial Statements**
*Illinois Chapter of the Association of Inspectors General*
September 14, 2001

**Understanding Financial Statements**
*Business Law Center, School of Law, Loyola University, Chicago, Illinois*
March 12, 2002

**Four Topics CPE**
*Russell Novak & Company, LLP*
October 21, 2002

**Composite Manufacturing – A Financial (Mis)Statements Case Study**
*Business Law Center, School of Law, Loyola University, Chicago, Illinois*
February 25, 2003

**Composite Manufacturing – A Financial (Mis)Statements Case Study**
*Law Firm, Chicago, Illinois*
September 17, 2003

**Vendor Audits, How to Recover Money**
*ICPAS, Annual Fraud Conference*
November 6, 2003

**How Labor and Employment Lawyers Can Use Forensic Accountants/
Expert Witnesses in Litigation Proceedings**
*Law Firm, Chicago, Illinois*
February 19, 2004

**Due Diligence Considerations, Preparing to Buy or Sell a Closely Held Business**
*Lorman Education Services, Oak Brook, Illinois*
October 19, 2004

**ACFE Report to the Nation: Occupational Fraud and Abuse**
*Law Firm, Chicago, Illinois*
December 3, 2004

**Composite Manufacturing – A Financial (Mis)Statements Case Study**
*Law Firm, Chicago, Illinois*
February 8, 2005

18


**Forensic Accounting**
*Business Law Center, School of Law, Loyola University, Chicago, Illinois*
April 19, 2005

**Financial Statements, Finding the Red Flags**
*CBA Young Lawyers Section, Family Law Committee*
May 10, 2005

**Understanding the Fraud Environment and How Fraud Occurs in the Construction Industry: Price Fixing, Bid Rigging and Customer Allocation**
*ICPAS Construction Conference*
November 7, 2005

**ACFE Report to the Nation on Occupational Fraud and Abuse**
*Professional Networking Group, Inc.*
January 18, 2006

**Some Thoughts on Vendor Fraud**
*Law Firm, Chicago, Illinois*
February 20, 2006

**Fraud and Forensic Accounting**
*ICPAS*
February 21, 2006

**Fraud & Forensic Accounting**
*Independent Accountants Association of Illinois, Northwest Suburban Chapter 18*
August 3, 2006

**Forensic Accounting and Construction Claims/Damages**
*ICPAS, Construction Conference, Oak Brook, Illinois*
November 2, 2006

**The Red Flags of Fraud: Finding and Preventing Financial Fraud in the Real Estate Industry**
*ICPAS, Chicago, Illinois*
December 15, 2006

**Forensic Accounting Update**
*Professional Networking Group*
Other 2006

**Financial Statements**
*Business Law Center, School of Law, Loyola University, Chicago, Illinois*
April 10, 2007

**Forensic Accounting Conference: Special Applications in Business Litigation**
*Half-Day Conference, ICPAS, Chicago, Illinois and Springfield, Illinois*
May 22, 2007 & July 27, 2007

**Forensic Accounting and Fraud: 2006 ACFE Report to the Nation on Occupational Fraud and Abuse**
*Graduate School of Business, Loyola University, Chicago, Illinois*
June 25, 2007

**Top Five Issues to Look For In Financial Statements**
*Law Firm, Chicago, Illinois*
June 28, 2007

**Forensic Procedures and Specialists**
*Graduate School of Business, Loyola University, Chicago, Illinois*
October 2, 2007

*MICHAEL D. PAKTER*



**Forensic Accounting Half-Day Conference**
*ICPAS, Chicago, Illinois*
May 13, 2008 & May 13, 2009

**ACFE 2008 Report to the Nation**
*Loyola University, Chicago, Illinois*
September 15, 2008

**ACFE 2008 Report to the Nation on Occupational Fraud and Abuse:**
**With Special Emphasis on Financial Statement Fraud**
*Illinois Chapter of the Association of Inspector Generals, Chicago, Illinois*
*Also, ICPAS, Industry & Business Forum, Skokie, Illinois*
April 13, 2009

**An Analysis of Recent Published Fraud Surveys: Lessons for Academics and Practitioners**
*Working Paper*
July 8-11, 2009

**Exploring the Anatomy of Fraud – The Cendant/CUC Revenue Recognition Fraud**
*Thomson Reuters AuditWatch National School for Audit Leaders, Chicago, Illinois*
August 7, 2009

**Lost Profits Damages 101**
*Gould & Pakter Associates, LLC, Chicago, Illinois*
August 13, 2009

**Financial Statement Fraud**
*ICPAS, North Shore Chapter, Northbrook Illinois*
September 15, 2009

**Lost Profits Damages 101:**
**Including Comparisons to Business Interruption Claims, Lost Earnings and Lost Business Value**
*Loyola University, Chicago, Illinois & CPA CPE Group, Highland Park, Illinois*
October 6, 2009 & October 7, 2009

**Are You Being Robbed From Within**
*Ravinia Green Country Club, Deerfield Illinois*
November 5, 2009

**Warning Signs of Distressed Entities[2]**
*CBA Corporation & Business Law Committee Forum*
November 17, 2009

**Financial Shenanigans and Accounting Magic Tricks in Mergers and Acquisitions**
*CBA Corporation & Business Law Committee, Mergers and Acquisitions Subcommittee Forum*
December 10, 2009

**Initial Financial Analysis of Financial Statements**
*Law Firm, Chicago, Illinois*
*Loyola University, School of Law, Chicago, Illinois*
February 8, 2010 & February 16, 2010

**Using Forensic Accounting in Real World Litigation**
*Prentice Hall Accounting Symposium for Educators, Oak Brook, Illinois*
March 5, 2010

**Business Damages Determination: Special Forensic Accounting Considerations**
*ICPAS, Forensic Accounting Conference*
June 2, 2010

---

2 Part of Panel Presentation: Distressed Entity Issues for the Non-Bankruptcy/Insolvency Practitioner.



**Business Damages Determination: Special Forensic Accounting Considerations**
*Loyola University, School of Accounting, Chicago, Illinois*
June 22, 2010

**Composite Manufacturing Company: A Financial (Mis)Statement Case Study**
*Journal of Business Case Studies, Clute Institute for Academic Research, Vol. 6, No. 5 (2010)*
2010[3] (Presented with Best Paper Award October 11-13, 2010)

**Composite Manufacturing Company: A Financial (Mis)Statement Case Study**
*Business Law Center, School of Law, Loyola University, Chicago, Illinois*
November 2, 2010

**Composite Manufacturing Company: A Financial (Mis)Statement Case Study**
*Bankruptcy Law Firm, Chicago, Illinois*
January 11, 2011

**Unique Forensic Accounting Issues Involving Organized Crime**
*Learnucopia, Indianapolis, Indiana*
February 25, 2011

**Composite Manufacturing Company: A Financial (Mis)Statement Case Study**
*Business Law Center, School of Law, Loyola University, Chicago, Illinois*
March 29, 2011

**Annual Forensic Accounting Update**
*ICPAS Fox River Trail Chapter, Lake Zurich, Illinois*
April 28, 2011

**Janis Joplin's Yearbook, Ex Ante, Ex Post and
Other Essential Elements of Measuring Benefit
Streams in Determining Economic Damages**
*ICPAS Forensic Accounting Conference, Chicago, Illinois*
June 8, 2011

**Economic Damages: Non-Competition and Other Claims:
Establishing Lost Profits Damages in the Context
Of a Violation of a Non-Compete Agreement**
*Law Firm, Chicago, Illinois*
June 22, 2011

**Establishing Lost Profits Damages**
*Law Firm, Chicago, Illinois*
June 29, 2011

**Composite Manufacturing Company: A Financial (Mis)Statement Case Study**
*Business Law Center, School of Law, Loyola University, Chicago, Illinois*
October 18, 2011

**Economic Damages: Non-Competition and Other Claims:
Establishing Lost Profits Damages in the Context
Of a Violation of a Non-Compete Agreement**
*Loyola University, School of Accounting, Chicago, Illinois*
October 19, 2011
*ICPAS Financial Forensic Workshop*
June 27, 2012

---

3 Co-authored with Professor Ellen Landgraf, Ph.D., MBA, CPA, BBA and Andrea Katzenstein, CFE and presented by Professor Landgraf to the 2009 International Fraud & Forensic Accounting Education Conference, Las Vegas, Nevada.



**Composite Manufacturing Company: A Financial (Mis)Statement Case Study**
*The Chicago Bar Association*
September 17, 2007, May 21, 2008, September 11, 2008, September 11, 2009, September 15, 2010, November 8, 2011,
September 11, 2012, September 10, 2013, September 9, 2014, September 20, 2016 and September 19, 2017

**SEC Whistleblower Program**
*American Accounting Association*
*2012 Forensic and Investigative Accounting Section Meeting*
March 30, 2012

**Financial Forensics in Litigated Solvency and Preference Analyses**
*National Association of Certified Valuators and Analysts*
May 18, 2012

**Cornerstones of Financial Forensics Workshop**
*National Association of Certified Valuators and Analysts*
May 25, 2012 (Chicago), August 10, 2012 (Denver), November 16, 2012 (Philadelphia); July 19, 2013 (Orlando); October 25, 2013
(San Diego); November 8, 2013 (Houston); November 18, 2013 (Fort Lauderdale); and October 24, 2014 (New Orleans)

**Financial Forensics in Litigated Solvency and Preference Analyses**
*National Association of Certified Valuators and Analysts*
August 17, 2012

**Composite Manufacturing Company: A Financial (Mis)Statement Case Study**
*Law Firm, Chicago, Illinois*
July 23, 2012
October 3, 2012

**Latest Developments in Forensic Accounting**
*ICPAS, Industry & Business Forum, Skokie, Illinois*
September 10, 2012

**Business Valuations**[4]
*Sacramento Valley Bankruptcy Forum; Annual Fall Program, California*
September 28, 2012

**Providing Services to Family Offices … CPA Risks and Responses**
*Accountants & Lawyers' Annual Defense Network ("ALADN") Conference*
October 10, 2012

**Litigation for Bankruptcy and Insolvency**
*Consultants' Training Institute Online Learning Lecture Series*
January 17, 2013 and February 8, 2013

**Apple v. Samsung: Lessons Learned for Financial Experts**
*National Litigation Consultants' Review*
Volume 1, 2013

**Book Review: How to Prepare Your Expert Witness for Deposition**
*National Litigation Consultants' Review*
Volume 1, 2013

**Spousal Support and Asset Division**
*AICPA 2013 Family Law Conference, Las Vegas, Nevada*
May 9, 2013

---

4 Three-part program with emphasis on normalizing adjustments, valuation approaches, methods and discount rates for "mom & pop,"
distressed and start-up businesses and identifying fraudulent financial statements and persons engaged in fraud.

22



**Measuring Performance and Defending Your Budget**
*Developing, Managing and Analyzing a Budget*
*Lorman Education Services, Chicago, Illinois*
May 16, 2013

**Financial Forensics Symposium: Bankruptcy, Insolvency, Reorganization**
*2013 NACVA Annual Consultants' Conference, Washington, DC*
June 6, 2013

**Janis Joplin's Yearbook: Ex Post, Ex Ante and**
**Other Approaches to Determining Economic Damages**
*ICPAS Forensic Accounting Conference, Chicago, Illinois*
June 21, 2013

**Apple v. Samsung Debate: Focus on Damages**
*National Litigation Consultants' Review*
Volume 2, 2013

**Book Review: The Litigation Services Handbook**
*National Litigation Consultants' Review*
Volume 2, 2013

**Introduction to Financial Forensics in Bankruptcy Proceedings**
*NACVA's Business Valuation Webinar Week*
July 22, 2013

**Economic Damages: Non-Competition and Other Claims:**
**Establishing Lost Profits Damages in the Context**
**Of a Violation of a Non-Compete Agreement**
*Law Firm, Chicago, Illinois*
July 24, 2013; October 17, 2013; November 6, 2013

**Composite Manufacturing – A Financial (Mis)Statements Case Study**
*Law Firm, Chicago, Illinois*
July 30, 2013

**How to Survive a Motion to Exclude Your Expert Testimony**
*John Marshall Law School*
August 5, 2013

**How to Survive a Motion to Exclude Your Expert Testimony**
*NACVA Webinar*
August 8, 2013

**ACFE 2012 Report to the Nations on Occupational Fraud and Abuse**
*Law Firm, Chicago, Illinois*
September 24, 2013

**How to Survive a Motion to Exclude Your Expert Testimony**
*Forensic Expert Witness Association*
December 7, 2013

**Book Review: Determination of Value**
*National Litigation Consultants' Review*
Volume 3, 2013

**How to Survive a Motion to Exclude Your Expert Testimony**
*NACVA Webinar*
February 20, 2014



**Determining a Distressed Debtor Company Discount Rate, Part 1**
*Business Valuation Update*
Vol. 20, No. 1, January 2014

**Determining a Distressed Debtor Company Discount Rate, Part 2**
*Business Valuation Update[5]*
Vol. 20, No. 2, February 2014

**Ex-Ante and Ex-Post Considerations in Economic Damages Calculations**
*NACVA QuickRead*
April 2, 2014

**Composite Manufacturing – A Financial (Mis)Statements Case Study**
*Law Firm, Chicago, Illinois*
April 3, 2014

**Presenting Personal Injury and Wrongful Death Opinions to the Judge and Jury**
*Consultants' Training Institute Financial Forensics Webinar Week*
March 14, 2014 and April 11, 2014

**Lost Profits Methods and Procedures**
*NACVA Master Analyst in Financial Forensics Specialty Webinar*
May 8, 2014

**Other Considerations in Lost Profits Calculations**
*NACVA Master Analyst in Financial Forensics Specialty Webinar*
May 9, 2014

**Nature, Timing and Extent of Financial Investigations
Necessary to Determine Income Available for
Spousal and Child Support Calculations**
*NACVA Webinar*
May 19, 2014

**Establishing Lost Profits Damages in the Context
Of a Violation of a Non-Compete Agreement**
*Law Firm, Chicago, Illinois*
May 30, 2014

**Composite Manufacturing – A Financial (Mis)Statements Case Study**
*Law Firm, Chicago, Illinois*
June 11, 2014

**Does Your Expert Report Need a Peer Review?**
*National Litigation Consultants' Review*
Volume 2, 2014

**Developing a FRE 702 Expert Report**
*John Marshall Law School*
August 7, 2014

**Financial Investigations Necessary to Determine Spousal and Child Support**
*NACVA*
September 22, 2014

**Composite Manufacturing – A Financial (Mis)Statements Case Study**
*Law Firm, Chicago, Illinois*
October 8, 2014

---

5 Part 1 and Part 2 republished in Business Valuation Resources, LLC. (BVR) Business Valuation & Bankruptcy Case Law Compendium, Second Edition, 2014

24



**Services Provided to Distressed Businesses**
*NACVA Master Analyst in Financial Forensics (MAFF) Workshop*
November 3, 2014

**Fraud, Financial Forensics and Special Investigations**
*NACVA Master Analyst in Financial Forensics (MAFF) Workshop*
November 4, 2014

**Finance for Lawyers**
*Law Firm, Chicago, Illinois*
February 3, 2015

**Determining a Distressed Debtor Company Discount Rate**
*NACVA Business Valuation Specialty Webinar Week*
March 13, 2015

**Standards For Distressed Business Valuation, Part One**
*NACVA QuickRead*
April 1, 2015

**Unique Issues in Standards for Distressed Business Valuation, Part Two**
*NACVA QuickRead*
May 6, 2015

**Business Valuation with a Focus on Valuations of Distressed Businesses**
*Northwest Bar Association's Civil Litigation Seminar*
November 11, 2015

**The Income Tax Treatment of Economic Damages Awards**
*National Litigation Consultants' Review*
Volume 3, 2015
*NACVA QuickRead*
June 16, 2016

**Mr. Unlucky—A Construction Worker Injured Twice On-site**
*NACVA QuickRead*
April 6, 2016

**How To Assist An Expert Witness Practice – The Support Staff Program**
*Gould & Pakter Associates, LLC*
April 7, 2016

**Valuation 2016 - Bankruptcy Valuation Issues**
**Valuation in the Context of a Fraudulent Transfer or Preference Attack**
*Financial Poise Faculty Webinar*
May 27, 2016

**Book Review: The Comprehensive Guide to Economic Damages**
**Volume 1 and 2, 4th ed.**
*Business Valuation Update*
Volume 22, No. 7, July 2016

**Book Review: Analyzing Complex Appraisals for Business Professionals**
*NACVA QuickRead*
October 27, 2016

**Fraud in Local Governmental Entities**
*City of Chicago, Department of Law*
March 7, 2017

**Composite Manufacturing Company: A Financial (Mis)Statement Case Study**
*Office of the Illinois Attorney General*
March 22, 2017

25



**Taking a Deeper Dive Into The Lost Profits "But-For" World**
*NACVA 2017 Annual Conference*
June 9, 2017
*City of Chicago, Law Department*
July 21, 2017

**Role of Financial Litigation Consultants in Class Certification**
*NACVA Financial Litigation and Expert Witness Superconference*
November 15, 2017

**Foundation of Financial Forensics – Bankruptcy**
*Consultants' Training Institute*
November 16, 2017



PRIOR EXPERT REPORTS AND/OR TESTIMONY

| MATTER | VENUE | DETAILS |
|---|---|---|
| Woodbine Healthcare Center and First Healthcare Associates, Inc. v. American Zurich Insurance Company | *Circuit Court of Cook County, Illinois, County Department, Law Division (1999)* | Submit Insured's Claim for Contents, Repairs, Extra Expenses and Business Interruption Loss (circa 2000): and present at Mediation (circa 2001). |
| Stanley R. Meierfeld and Alfred J. Mascia v. Geldermann, Inc. | *New York Mercantile Exchange, NYMEX Arbitration (1998)* | Submit Expert Report Of Estimated Interest Claimed by Meierfeld and Mascia (November 6, 1997): and testify at arbitration (circa 1998). |
| Jeffrey B. Gelman v. William A. Miller | *Circuit Court of Cook County, Illinois, County Department, Chancery Division (1998)* | Submit Expert Report (circa 1999). |
| In Re: Novamont SpA | *New York, 3rd District, Bankruptcy Court (1998)* | Submit Expert Report (circa 1997): and provide current accounting information during Court appearance (circa 1998-1999). |
| David J. Freund v. E. D. & F. Man International, Inc. | *United States District Court, Northern District of Illinois (1998)* | Submit Expert Report (Damages Issues): testify at deposition (July 29, 1998): and testify at trial (circa 1999). |
| In Re: Midwest Video Games | *United States Bankruptcy Court, Northern District of Illinois, Eastern Division (1998)* | Submit Expert Report (Valuation Issues) (August 24, 1998). |
| In Re: American Limousine Partners, Inc. | *Chicago Commission on Human Relations (Circa 1995)* | Submit Expert Report Of Estimated Lost Revenues to Be Sustained by Airport Limousine Partners, Inc. (October 12, 1995). |
| George Ahlstrand et al. v. Jeffrey Krol et al. | *Circuit Court of Cook County, Illinois Law Division (1994)* | Testify at deposition (circa 1999). |
| In the Matter of G. Bradley Taylor | *Securities and Exchange Commission, Administrative Matter 3-9955 (1999)* | Testify at SEC Administrative Hearing (circa 1999). |
| EPA Assistance Audit Dispute of the Napoleon Area City School District | *United States Environmental Protection Agency, Assistance Agreement No. J858656 (Audit Dispute Regarding Audit Report No. 2001-1-00073)* | Submit Expert Report of Financial Analysis of Expenditures by Napoleon Area City Schools (May 5, 2001). |
| In Re: Metropolitan Plant & Flower, Inc., a/k/a The Silkcorp Factory Outlet, Debtor | *United States Bankruptcy Court, Northern District of Illinois, Eastern Division (1998)* | Submit Expert Report Regarding the Financial Condition and Related Matters of Metropolitan Plant & Flower, Inc. (April 30, 1997): and submit Affidavit Regarding Debtor's First Amended Plan Of Reorganization (circa 1997). |
| Chicago District Council of Carpenters Pension Fund, et al. v. United Interiors, Inc. et al. | *United States District Court for the Northern District of Illinois, Eastern Division (2001)* | Submit Expert Report (2001): testify at deposition (circa December 21, 2001): and submit Declaration (circa January 2002). |
| Protocomm Corporation v. Novell, Inc. | *United States District Court for the Eastern District of Pennsylvania (various dates)* | Submit Expert Report (December 7, 2000): submit Response Report (July 7, 2001): and testify at deposition (circa July 2001). |
| In Re: Chris Pawlowicz, et al. v. David P. Leibowitz as Chapter 7 Trustee | *United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (2001)* | Submit Expert Report on the Debtors' Financial Condition (September 10, 2003): and testify at trial (circa April 16, 2004). |
| FutureSoft Consulting, Inc. v. Msys, Inc. and Rajamani Thiyagarajan | *Arbitration before the American Arbitration Association (AAA #51 117 003 0602)* | Submit Expert Report On Damages By Claimant (circa 2003): testify at deposition (circa February 24, 2004): and testify at arbitration (circa March 2, 2004). |

Case 2:17-cv-04025-NKL    Document 69-1    Filed 04/03/18    Page 48 of 99



| | | |
|---|---|---|
| Zenith Electronics Corporation v. The Dow Chemical Company, Inc. and Liqui-Flo, Inc. | *Circuit Court Cook County, Illinois, County Department, Law Division, Civil (No. 99 L 010701)* | Submit Rebuttal Report on Damages Claimed (February 6, 2004). |
| Golden Image Graphics, Inc. v. Mitsubishi Lithographic Presses and MLP USA, Inc. | *Arbitration before the American Arbitration Association (AAA #13 Y 181 02830 03)* | Submit Expert Report (circa 2004): submit Rebuttal Report (circa 2004): and testify at arbitration (circa July 22, 2004). |
| American Top English, Inc. v. Lexicon Marketing (USA), Inc. | *United States District Court for the Northern District of Illinois, Eastern Division (Case No. 03 C 7021)* | Submit Expert Report (circa 2004): and testify at deposition (circa August 10, 2004). |
| Jamax Corporation v. Alvin J. Varner and Pam D. Varner d/b/a Whoa Nellie's Disposal | *Circuit Court of the Second Judicial Circuit, Lawrence County, Illinois (Case No. 04-L-7)* | Submit Rebuttal Report (February 1, 2005): and testify at deposition (August 18, 2005). |
| Budget Rent-A-Car System, Inc. v. Consolidated Equity LLC | *United States District Court for the Northern District of Illinois, Eastern Division (Case No. 04C 1772)* | Submit Expert Report (June 29, 2005): submit Supplemental Expert Report (September 7, 2005): and testify at deposition (September 7, 2005). |
| Luis Puig, Sr. and Luis Puig, Jr. v. Infinity Outdoor, Inc. | *Circuit Court of Cook County, County Department, Chancery Division (Case No. 02 CH 5978)* | Submit Expert Report on Payments For Billboard Site (August 9, 2005). |
| Owner-Operator Independent Drivers Association, Inc. et al. v. Bridge Terminal Transport, Inc. | *United States District Court for the District of New Jersey (Case No. 04-2846)* | Submit Expert Report (November 22, 2005): and testify at deposition (January 19, 2006). |
| Central Mfg. Co, Lindy-Little Joe, Inc., Pure Fishing, Inc. et al. v. Leo Stoller et al. | *United States District Court for the Northern District of Illinois, Eastern Division (Case No. 05C 0725)* | Submit Declaration (circa 2005). |
| Howard B. Samuels, Credicorp, Inc., and Jeffrey B. Schwartz v. Kupferberg Goldberg Niemark, LLC | *Circuit Court of Cook County, Illinois, County Dept., Law Division* | Submit Expert Report (January 16, 2006): and testify at deposition (July 12, 2006). |
| Owner-Operator Independent Drivers Association, Inc. et al. v. Landstar Inway, Inc.; Landstar Ligon, Inc.; and Landstar Ranger, Inc. | *United States District Court for the Middle District of Florida, Jacksonville Division (Case No. 3:02-CV-1005-J-25-MCR)* | Submit Expert Report (July 14, 2006): and testify at deposition (August 21, 2006). |
| Owner-Operator Independent Drivers Association, Inc. et al. v. C. R. England, Inc. | *United States District Court for the District of Utah (Case No. 2:02 CV 950 TS)* | Submit Expert Report (January 13, 2006): submit Responsive Expert Witness Report (March 21, 2006): testify at deposition (February 7, 2006): and testify at trial (October 19, 2006). |
| Arlene Gladney v. Francine Gladney | *Circuit Court of Cook County, Illinois, County Dept., Chancery Division* | Submit Expert Report (July 19, 2006). |
| PRW Inc., Claimant, and Gloria Jean's Gourmet Coffees Franchising Corp., Respondent. | *American Arbitration Association, Chicago, Illinois (December 9, 2005)* | Submit Summary of Opinions (September 1, 2006). |
| Owner-Operator Independent Drivers Association, Inc. et al. v. SuperValu, Inc. | *United States District Court, District of Minnesota (Case No. 05-cv-2809 JRT/JJG)* | Submit Expert Report on Actual and Estimated Lumping Fees Paid by Owners and Operators (October 2, 2006): submit Report on Lumping Service Fees Paid by Drivers (March 31, 2008): and testify at deposition (May 30, 2008). |



| | | |
|---|---|---|
| Brian J. Cloch and AT&R II LLC, v. Evergreen Healthcare Realty, LLC, et al. | *Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 04 L 004113)* | Submit Rebuttal Report (December 11, 2006); and submit Rebuttal Report of Supplemental Report (February 2, 2007). |
| In Re: The Quay Corporation, Inc., Debtor/Debtor in Possession | *United States Bankruptcy Court For the Northern District of Illinois, Eastern Division* | Submit Rebuttal Report on Lost Profits (January 14, 2007); testify at deposition (January 19, 2007); submit Expert Report on the Debtor's Cash Flow Projections (January 16, 2007); and testify at deposition (January 22, 2007). |
| In Re: Super Wash, Inc. and Robert D. Black | *Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 2005 L 23)* | Submit Expert Report on Preliminary Financial Analyses of Losses (in eleven Plaintiff cases, consolidated for discovery purposes) (various dates 2006-7); and testify at depositions (various dates on and after May 14, 2007). |
| In Re: Delta Phones, Inc., Debtor | *United States Bankruptcy Court For the Northern District of Illinois, Eastern Division* | Submit Expert Report on the Financial Condition of Delta Phones, Inc. from October 1, 2002 to January 8, 2004 (November 7, 2007). |
| Infinity Resources, Inc. v. Oracle Corporation; and Does 1-50 | *Superior Court of California, County of San Francisco (Case No. CGC 06 – 455550)* | Submit Financial Analyses and Expert Opinion regarding Damages (November 21, 2007); testify at deposition (August 29, 2007); and testify at trial (November 26-27, 2007). |
| In Re: The Matter of Mark A. Frommer v. Lehman Brothers, Inc. | *Arbitration Before the Financial Industry Regulatory Authority (FINRA Arbitration No. 06-01341)* | Submit Rebuttal of Expert Report on Damages (January 7, 2008); and testify at arbitration (January 25, 2008). |
| Lorillard Tobacco Company v. Elston Self Service Wholesale Groceries, Inc., et al. | *United States District Court for the Northern District of Illinois, Eastern Division (Civil Action No. 03C 4753)* | Submit Expert Report on Defendants' Fraud Schemes (January 18, 2008); submit Rebuttal Report on Anticipated Testimony Regarding Damages Suffered by Defendants (March 12, 2008); submit Supplemental Expert Report on the Defendants' Fraud Schemes and the Depositions of Defendants' witnesses (September 23, 2008); and testify at deposition (December 19, 2008). |
| One CW, LLC v. Cartridge World Midwest, LLC, Steven V. Vollmer and Cartridge World North America, LLC | *Arbitration Before the Franchise Arbitration and Mediation Services (FAM Case No. 07A1001)* | Submit Expert Report on the Actual and Statutory Damages Sustained by One CW, LLC (May 1, 2008); and testify at arbitration (September 5, 2008). |
| United States of America v. Frank Calabrese, Sr., et al. | *United States District Court for the Northern District of Illinois, Eastern Division (Case No. 02 CR 1050-4)* | Submit Expert Report on Lost Earnings Capacity (October 1, 2008) and submit Revised Report on Lost Earnings Capacity (January 15, 2009). |
| Java TC, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp. | *Arbitration Before the American Arbitration Association (Case No. 51 114 Y 00873 08)* | Testify at arbitration on audit procedures performed and damages calculations made (January 23, 2009). |
| Roger Shekar v. Steve Zielinski, Jack Kopis, Alice Kopis, Paulette Zielinski and Quality Surface Mount, Inc. | *Circuit Court of DuPage County, Illinois, Chancery Division (Case No. 2007MR:000128)* | Submit Expert Report on Mr. Shekar's Lost Earnings (January 28, 2009); and testify at deposition (May 14, 2009). |
| In Re: Restaurant Development Group, Inc., Debtor | *United States Bankruptcy Court For the Northern District of Illinois, Eastern Division (Case No. 07 B592: Adv. No. 07 A937)* | Submit Expert Report on Financial Analysis of the Debtor's December 28, 2003 Restructuring and Certain Other Matters (March 23, 2009). |
| Jesus Hernandez, et al. v. Gatto Industrial Platers, Inc. and George Gatto | *United States District Court For the Northern District of Illinois, Eastern Division (Case No. 08 C 2622)* | Submit Declaration (May 8, 2009); submit Preliminary Report of Payment of Gross Wages by Gatto Industrial Platers, Inc. in Accordance with the Fair Labor Standards Act (May 13, 2009); and testify at deposition (May 29, 2009). |
| In Re: JII Liquidating Inc. f/k/a Jernberg Industries, Inc. et al. | *United States Bankruptcy Court For the Northern District of Illinois, Eastern Division (Case No. 05-25909) (Advs. No. 07-A-0585)* | Submit Expert Report on the Debtor's Net Potential Preference To Republic Engineered Products, Inc. (May 22, 2009); and submit responses to other expert's report (June 15, 2009). |

29



| | | |
|---|---|---|
| National Union Fire Insurance Company Of Pittsburgh, Pa, v. Wade A. Beck; Bank One, NA; et al. | *Circuit Court Of Cook County, Illinois, County Department - Law Division (Case No. 02 L 5293)* | Submit Report On Wade A. Beck's Fraud and Gannett Company's Internal Controls (June 18, 2009). |
| Sendra Retail, Inc. v. Sears, Roebuck and Co. | *Arbitration Before the American Arbitration Association (AAA Case No. 51-114-01371-08)* | Submit Rebuttal of the Damage Calculation Of Sendra Retail, Inc. (July 24, 2009). |
| Alter Asset Management, LLC, as agent for SMII Oak Creek/LP | *Circuit Court of the 18th Judicial Circuit, DuPage County, Illinois (Case No. 2007 L 00579)* | Submit Rebuttal of the Report of William H. Thullen (August 10, 2009). |
| Apex Digital, Inc. v. Sears, Roebuck and Co. | *United States District Court For the Northern District of Illinois, Eastern Division (Case 09 CV 1452)* | Submit Report on The Amount That May Be Owed By Sears, Roebuck and Co. to Apex Digital, Inc. and/or CIT Group (August 20, 2009): and testify at deposition (December 3, 2009). |
| Sylvester and Tanja D'Souza v. Andjelko Galic and Andjelko Galic & Associates, Ltd. | *Circuit Court of Cook County, Illinois County Department, Law Division (Case No. 2006 L 011637)* | Submit Report on Lost Earnings of Tanja and Sylvester D'Souza (September 8, 2009): and testify at trial (September 27, 2010). |
| Michael S. Pekin v.  The Paul Revere Life Insurance Company | *United States District Court For the Northern District of Illinois, Eastern Division (Case No. 08 C 3644)* | Submit Financial Analysis of Michael Pekin's Claim of Alleged Losses of Monthly Earnings (October 2, 2009): and testify at deposition (January 6, 2010). |
| Rose Terry, et al. v. Ameriquest Mortgage Company, et al. | *United States District Court For the Northern District of Illinois, Eastern Division (Case No. 08-2475)* | Submit Affidavit Regarding Defendant's Financial Condition While Paying Dividends (October 29, 2009). |
| Mark McManus, Deborah McManus and McManus Enterprises, LLC v. Super Wash, Inc. and Robert D. Black | *Circuit Court for the 14th Judicial District Whiteside County, Illinois (Case No. 06 L 58 ST)* | Submit Affidavit Regarding Financial Analysis of Losses (November 25, 2009): submit Expert Report on Plaintiff's Compensatory Damages Under Counts I, II and V of the Complaint (July 3, 2012): and testify at deposition (February 14, 2013). |
| John J. Roh and OLM, LLC v. George Devack | *United States District Court For the District of Connecticut  (Case No. 3:07CV01901PCD)* | Submit Affidavit Regarding Financial Information and Documentation (December 18, 2009). |
| Cousins Subs Systems, Inc. v. Better Subs Development, Inc., Better Subs Restaurants, LLC, James B. Railing, Karen E. Railing, and Shantel E. Vaughn | *United States District Court For the Eastern District of Wisconsin, Eastern Division (Case No. 09-cv-0336)* | Submit Expert Report on Lost Franchise Fees and Royalties (March 1, 2010). |
| The People of the State of Illinois v. Janet Yurus, et al. | *Circuit Court of Cook County, Illinois County Department, Criminal Division (Case No. 06-CR-13771)* | Submit Responsive Expert Report on the Financial Condition of Janet Yurus (March 4, 2010): and testify at trial (November 19, 2010). |
| K's Merchandise Mart, et al. v. Gordon Brothers Group, et al. | *United States District Court for the District of Massachusetts (Case No. 08-11254 (DPW)* | Submit Expert Report on Lost Profits of New K's Furniture Department and Expert Report on Count II (Accounting) (June 15, 2010): submit First Supplemental Expert Report on Count II (Accounting) (August 31, 2010): and testify at deposition (October 20, 2010). |
| Echo, Inc. v. Timberland Machines & Irrigation, Inc. | *United States District Court For The Northern District of Illinois, Eastern Division (Case No. 08 CV 7123)* | Submit Expert Report on (a) Timberland's Financial Condition and Risk of Business Failure and (b) Rebuttal of Initial Expert Report of Jerome H. Lipman and Timberland's damages (July 12, 2010): and testify at deposition (July 26, 2010). |
| F, G, H & S 2 D, L.L.C. f/k/a CenterPoint Capital Funding, L.L.C., v. CenterPoint Properties Trust | *Circuit Court Of Cook County, Illinois, County Department, Chancery Division (Case No. 05 CH 15840)* | Submit Expert Report on Calculations of Fair Market Value Pursuant to Landlord's Purchase Option and Tripartite Agreements (August 12, 2010): and testify at deposition (February 23, 2011). |

30



| | | |
|---|---|---|
| WDT Wireless Communications, Inc. v. Dolins, Dolins & Sorinsky, Ltd. | *United States District Court For The Northern District of Illinois Eastern Division (Case No.: 1:09-cv-00622)* | Submit Michael D. Pakter's Expert Report on The Accountants' Standard of Due Care (September 14, 2010). |
| MKJ Holding of Illinois, Inc. v. SDI, LLC, Seif Elsharif and Deborah Diaz | *Arbitration Before the American Arbitration Association* | Testify at arbitration as to the Value of MKJ Holding of Illinois' 25% Ownership Interest in SDI, LLC as of September 30, 2008 (October 14, 2010 and November 15, 2010). |
| Board of Education, Joliet Township High School District No. 204 v. CenterPoint Intermodal LLC and the Village of Elwood | *Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois (Case No. 05 L 524)* | Submit Responsive Expert Report On Joliet Township High School District 204's Lost Tax Increment Financing Revenues (January 10, 2011). |
| John M. Schoppe v R.J. Schoppe | *United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (Case No. 09-04652)* | Submit Expert Report on the Debtor's Preferential Transfers to R. J. Schoppe (February 1, 2011). |
| Bureau Veritas North America, Inc. v. St. John Mittelhauser & Associates, Daniel J. Lombardi, Gary Perkowitz and Monte Nienkerk | *Circuit Court of the 18th Judicial District, DuPage County, Illinois (Case No. 2008CH5033)* | Submit Affidavit Regarding Completeness of Accounting Books and Records (February 8, 2011). |
| Vincent E. Jackson v. N'Genuity Enterprises, Co., Valerie Littlechief, Alfred Bowen and Dustin Thomas Bowen | *United States District Court For The Northern District of Illinois, Eastern Division (Case No. 09 CV 06010)* | Submit Affidavits (February 24, 2011 and May 31, 2011); submit Expert Report On Plaintiff's Prove Up of Damages Following Judgment by Default on Liability Against the Default Judgment Defendants (February 1, 2012); testify at deposition (March 20, 2012); submit Declaration for Trial (October 24, 2012); submit Affidavit (December 17, 2012); submit Addendum to Michael D. Pakter's Expert Report on Plaintiff's Prove Up of Damages Following Judgment by Default on Liability Against the Default Judgment Defendants (February 3, 2014); submit Affidavit (March 25, 2014); and submit Affidavit (June 6, 2014). |
| N'Genuity Enterprises Co., Debtor | *United States Bankruptcy Court for the District of Arizona (Case No. 2:11-bk-28705-GBN)* | Submit Affidavit (November 23, 2011); submit Expert Report Rebutting the November 17, 2011 Declaration and Business Valuation Filed in Support of the Debtor's Chapter 11 Proceedings (March 16, 2012); testify at deposition (March 20, 2012); testify at trial (February 1, 2013); and submit Calculation Report: The Fair Value of Vincent E. Jackson's 49% Ownership Interest in N'Genuity Enterprises Co., Debtor (January 27, 2014). |
| In Re N'Genuity Enterprises Co., Debtor Vincent E. Jackson v. Wayne H. Clouser, Ltd., Wayne H. Clouser and Richard J. DeAlva | *United States Bankruptcy Court for the District of Arizona (Case No. 2:11-bk-28705-GBN) (Adv. No. 2:13-ap-00215)* | Submit Expert Report On Defendants' Standard of Due Care and Economic Damages (July 18, 2014); submit Expert Report Rebutting the Opinions of Douglas E. Farrow Dated September 9, 2014 (October 3, 2014); and provide sworn statements under oath (June 30, 2015). |
| N'Genuity Enterprises Co., Debtor | *United States Bankruptcy Court for the District of Arizona (Case No. 2:14-bk-11553-GBN)* | Submit Affidavit (September 5, 2014). |
| National Union Fire Insurance Company of Pittsburgh, PA v. Steven Cordell and JPMorgan Chase Bank | *Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 08 L 1982)* | Submit Expert Report on Atlantic Express' Failure to Exercise Ordinary Care and Related Matters (March 11, 2011). |
| Habersham Plantation Corporation v. Bernard Molyneux, et al. | *United States District Court Southern District of Florida (Case No. 10-CV-61526-XXXX)* | Submit Expert Report on Economic Damages Due to Copyright and Trade Dress Infringements (April 2, 2011); submit a responsive expert report (May 6, 2011); submit a supplemental expert report (August 29, 2011); testify at deposition (June 15, 2011); and testify at trial (January 5 and 9, 2012). |

31



| | | |
|---|---|---|
| Habersham Plantation Corporation v. Art & Frame Direct, Inc., et al. | *United States District Court Southern District of Florida (Case No. 10-CV-61532-JIC)* | Submit Expert Report on Economic Damages Due to Copyright, Trade Mark and Trade Dress Infringements (April 4, 2011): submit a responsive expert report (June 6, 2011): testify at deposition (June 17, 2011): and testify at trial (September 23, 26 and 27, 2011). |
| Thorncreek Apartments I, LLC et al. v. Village of Park Forest, et al. | *United States District Court For The Northern District of Illinois (Case No. 08 C 4303)* | Submit Expert Report On The Owner's Financial Damages (April 15, 2011): testify at deposition (May 20, 2011): and testify at trial (April 21, 2014). |
| Thorncreek Apartments II, LLC et al. v. Village of Park Forest, et al. | *United States District Court For The Northern District of Illinois (Case No. 08 C 869)* | Submit Expert Report On The Owner's Financial Damages (April 15, 2011): testify at deposition (May 20, 2011): and testify at trial (April 21, 2014). |
| Thorncreek Apartments III, LLC et al. v. Village of Park Forest, et al. | *United States District Court For The Northern District of Illinois (Case No. 08 C 1225)* | Submit Expert Report On The Owner's Financial Damages (April 15, 2011): testify at deposition (May 20, 2011): and testify at trial (April 21, 2014). |
| Xyience Incorporated v. Zyen, LLC, Fertitta Enterprises, Inc. et al. | *United States Bankruptcy Court District of Nevada (Case No. BK-S-08-10474-MKN and Case No. 09-1402-MKN and Adversary Case No. 09-1402-MKN)* | Submit Expert Report on Xyience's Financial Condition at October 5, 2007 (April 29, 2011). |
| Jennifer S. Arons v. Centrum Properties, Inc., et al. | *Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 08 L 007322)* | Submit Expert Report Calculating Amounts Due to Jennifer S. Arons Pursuant to Her Employment Contract (May 28, 2011): submit Rebuttal of the Expert Report of Ronald A. Bero, Jr. (July 15, 2011): testify at deposition (July 22, 2011): and testify at trial (October 5 and 14, 2011). |
| National Presto Industries, Inc. v. Grant Thornton, LLP | *Circuit Court of Eau Claire County, Wisconsin (Case No. 09 CV 246)* | Testify at deposition (June 10, 2011 and June 24, 2011): and testify at trial (January 11, 2012). |
| United States of America ex. rel. Greg Hudalla v. Walsh Construction Company | *United States District Court for the Northern District of Illinois, Eastern Division (Case No. 05 C 5930)* | Submit Expert Report on Walsh Construction Company's Improper Billing Scheme (July 1, 2011, revised July 29, 2011): testify at deposition (August 11, 2011): and submit Supplemental Expert Report (October 20, 2011). |
| Andrew Dean v. Krash Creative Solutions, LLC et al. | *United States District Court For The Northern District Of Ohio, Western Division (Case No. 3:10 CV 00386)* | Submit Expert Report On Plaintiff's Economic Damages Due to Defendants' Alleged Copyright Infringement (October 28, 2011). |
| Jayshree Patel v. Chicago Carriage Cab Corp. and Mohamed N. Ali | *Circuit Court of Cook County, Illinois, County Department, Law Division* | Submit Expert Report on Jayshree Patel's Lost Earnings Resulting from Her March 15, 2009 Injuries (April 20, 2012). |
| Novaflex, Inc. and The Ameriflex Group, LLC v. Denny McGee, Advanced Converting Technology, LLC and MPS Systems, B.V. | *Circuit Court of Cook County, Illinois, County Department, Chancery Division* | Submit Expert Report (May 15, 2012): testify at deposition (June 6, 2012): testify at trial (August 15, 2013): and sign affidavits (July 21, 2016 and September 20, 2016). |
| Green Investment Group, Inc. v. Alton Recovery, LLC et al. | *Circuit Court, Third Judicial Court, Madison County, Illinois* | Submit Expert Report on Lost Profits Suffered By Green Investment Group, Inc. (August 1, 2012): and testify at deposition (November 2, 2012). |
| Ohio National Life Assurance Corporation v. Douglas W. Davis, et al. | *United States District Court For The Northern District of Illinois, Eastern Division (Case No. 10-cv-2386)* | Submit Expert Report on The Design and Structure of The Financial Transactions Relating to Certain Life Insurance Policies (August 22, 2012). |
| MJK Partners, LLC, F. Paul Ohadi, F. Paul Ohadi, as Trustee of the F. Paul Ohadi Family Trust, and James Mann, as Trustee of the Mann 1994 Family Trust v. David Husman | *United States District Court for the Northern District of Illinois, Eastern Division (Case No. 10-C-87)* | Submit Expert Report on Economic Damages in Response to Plante & Moran's August 17, 2012 Report (October 2, 2012): and testify at deposition (October 19, 2012). |



| | | |
|---|---|---|
| United States of America v. David Vance, et al. | *United States District Court for the Northern District of Illinois, Eastern Division (Case No. 05 C 5930)* | Submit Expert Report on the Lifetime Lost Earnings of Tramaine Gibson (October 12, 2012, Supplemented November 1, 2012). |
| Miriam Haskins, et al. v. First American Title Insurance Co. | *United States District Court for the District of New Jersey (Case No. 1:10-cv-05044)* | Submit Expert Statement In Support of Plaintiffs' Application for Discovery Relief (November 1, 2012): submit Expert Report on Overcharges of Title Insurance Premiums (March 1, 2013): submit Corrected Expert Report on Overcharges of Title Insurance Premiums (March 5, 2012): testify at deposition (April 19, 2013): submit Supplemental Expert Report on Overcharges of Title Insurance Premiums (June 21, 2013): testify at the class certification hearing (January 9, 2014): and submit Declaration (June 9, 2014). |
| Ramon Vahdatinia, dba Sonic Futures and Options ~ Arman Vahdatinia, dba Expo Futures and Options v. Farr Financial, Inc.; Ironbeam, Inc.; and Omid M. Farr | *Arbitration Before the National Futures Association (NFA Arbitration No.: 12-ARB-11 ~ 12-ARB-12)* | Submit Expert Report on Economic Damages (November 12, 2012): submit Supplementary Financial Analysis (November 19, 2012): and testify at arbitration (November 29, 2012). |
| Edward J. Tyrpak v. Roundy's Supermarkets, Inc. | *State of Wisconsin, Circuit Court, Milwaukee County (Case No. 12-CV-005605)* | Submit Expert Report on Financial Accounting and Reporting for Vendor Allowances and Related Matters (November 27, 2012): and testify at deposition (December 20, 2012). |
| Arbitration Demand By RCI Capital Group Inc. against FPP Investments LLC, Robert W. Kraft, Richard Zagorski and Daniel Wycklendt | *Arbitration Before the American Arbitration Association: International Centre for Dispute Resolution (Case No. 50 148 T 00212 12)* | Submit Expert Report on the Total Present Value of RCI FPP Investments LLC's Net Assets (November 2, 2012): and submit Rebuttal of the November 2, 2012 Report of John D. Emory, Jr. (November 28, 2012). |
| General Insurance Company of America v. Clark Mall Corp. d/b/a Discount Mega Mall Corp., et al. | *United States District Court for the Northern District of Illinois, Eastern Division (Case No. 08-CV-2787)* | Submit Expert Report on the Mega Mall's Business Interruption and Other Lost Profits After the September 8, 2008 Fire (February 1, 2013): and testify at deposition (July 16, 2013). |
| In Re: The Marriage of Julie A. O'Flaherty and John C. O'Flaherty | *In the Circuit Court of Cook County, Illinois, County Department – Domestic Relations Division (Case No. 10 D 552)* | Submit Expert Report Tracing Certain Cash Disbursements by the O'Flaherty Corporations (March 15, 2013). |
| In Re: The Marriage of Julie A. O'Flaherty and John C. O'Flaherty | *In the Circuit Court of Cook County, Illinois, County Department – Domestic Relations Division (Case No. 13 D 4792)* | Submit Affidavits (April 2, 2015, November 16, 2015 and February 9, 2016): submit Preliminary Expert Report Reviewing and Analyzing Certain of John O'Flaherty's Real Estate Transactions (January 14, 2016): submit Expert Report On Lifestyle Expenditures (January 14, 2016): submit Expert Report Reviewing and Analyzing Certain of John O'Flaherty's Real Estate Transactions (February 4, 2016): and testify at deposition (February 16, 2016). |
| In Re: LHC, LLC, an Illinois Limited Liability Company | *United States Bankruptcy Court, Northern District of Illinois, Eastern Division (Case No. 13-07001)* | Submit Expert Report On The Debtor's March and April 2013 Expenditures and Related Matters (May 10, 2013): testify at deposition (May 13, 2013): submit Supplemental Expert Report On The Debtor's March and April 2013 Expenditures and Related Matters (May 17, 2013): and testify at hearing to appoint a trustee (June 4, 2013 and June 11, 2013). |
| Dawn Geraty v. The Village of Antioch | *In the United States District Court, Northern District of Illinois, Eastern Division (Case No. 09-cv-6992)* | Submit Expert Report On the Lost Earnings of Dawn Geraty As a Result of the Denied Promotion (June 7, 2013): and submit Supplemental Lost Earnings - Back Pay Calculation of Dawn Geraty As a Result of the Denied Promotion (April 30, 2014). |
| Tom Waldbillig and W Squared, LLC v. Blue Magic, Inc., York International Corporation, Blains' Supply, Inc. | *United States District Court, Western District of Wisconsin (Case No. 12 CV 713)* | Submit Expert Report On Plaintiffs' Lost Business Income (June 14, 2013). |



| Chaz Altman and Gina Gaffke v. P.O. Kirk Helgesen, individually, and the Village of Gurnee | *United States District Court, Northern District of Illinois, Easter Division (Case No. 10 CV 5619)* | Submit Expert Report on Lifetime Lost Earnings and the Value of Lost Household Services (June 21, 2013): and testify at deposition (January 30, 2014). |
|---|---|---|
| Joan E. Comiskey v. Mandel, Lipton and Stevenson Limited, et al. | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 12 L 001727)* | Submit Expert Report on Comiskey's Unpaid Wages For the Period July 1, 2003 through June 30, 2006 (August 12, 2013). |
| Anthony J. Tomaska, individually and derivatively on behalf of Old Town Entertainment, LLC and Old Town Entertainment Management, LLC v. Old Town Entertainment, LLC, d/b/a Club 33, et al. | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 2011 L 8364)* | Submit Expert Report on Checks Made Payable to Cash By Old Town Entertainment, LLC (September 23, 2013): testify at deposition (November 15, 2013): and submit Expert Rebuttal Report (January 10, 2014). |
| Kensington Research and Recovery, Inc. v. Office of the Cook County Treasurer and Maria Pappas | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 08 L 10777)* | Submit Affidavit (October 8, 2013 and October 16, 2013). |
| W44 Trading Company v. Highland Credit Strategies Fund, L.P., et al. | *In the District Court, Dallas County, Texas, 95th Judicial District (Cause No. 11-01021)* | Submit Expert Report (October 11, 2013): and submit Affidavit of Michael D. Pakter in Support of Plaintiff W44 Trading Company's Opposition to Defendants' Motion to Strike Plaintiff's Expert Witness (February 16, 2014). |
| Federal Insurance Company as subrogee of MonoSol Holdco, LLC v. J.K. Manufacturing Co. | *In the United States District Court for the Northern District of Illinois (Case No. 1:12-cv-03465)* | Submit Expert Report on MonoSol's Property and Business Interruption Damages (November 27, 2013): and submit Supplemental Expert Report on MonoSol's Property and Business Interruption Damages (January 6, 2014). |
| J.B. Kenehan, LLC v. Open Sky Media, LLC | *In the Circuit Court, Civil Division of Waukesha County, Wisconsin (Case No. 13CV01885)* | Submit Expert Rebuttal Report Regarding J.B. Kenehan, LLC's Lost Profits (January 22, 2014). |
| Charles Petrishe, Nikki Caputo-Petrishe and Dianne McGann v. Oak Lawn Police Officers Todd Tenison and Scott Kirk and the Village of Oak Lawn | *In the United States District Court for the Northern District of Illinois (Case No. 10-cv-7950)* | Submit Expert Report on Lifetime Lost Earnings and the Value of Lost Household Services (February 21, 2014). |
| John D. Marks v. Verbeck Associates, LLC and Jon Verbeck | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 11 L 013850)* | Testify at deposition (February 21, 2014). |
| Pratima Muzumdar, individually, and Tranquil Passage, LLC v. Robert Plotkin, The Robert Law Firm, P.C. and Plotkin & Plotkin, LLC. | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 08 L 000350)* | Submit Expert Report Rebutting the Damages Report of Bruce S. Schaeffer Dated December 2, 2013 (February 27, 2014). |
| Clarence William Brown, M.D. and Vassilios Dimitropoulos, M.D. v. Rush University Medical Center, et al. | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 09 L 15110)* | Submit Expert Report on the Amounts Owing to the Plaintiffs (February 28, 2014): testify at deposition (April 4, 2014): submit Expert Report on the Amounts Owing to the Plaintiffs (Revised September 16, 2014 Pursuant to Court Order Dated June 19, 2014): and testify at trial (October 1, 2014). |
| James Eric Wahl v. James Quigley, Cynthia Quigley and Clarkson Company | *In the Circuit Court of Cook County, Illinois, County Department, Chancery Division (Case No. 10 CH 52640)* | Submit Expert Report on The Liquidity of the Clarkson Company and Related Matters (April 7, 2014): and testify at deposition (April 30, 2014). |
| Suky Jodi, Inc. v. Prak Properties, LLC, Amit Shah, Rakesh Shah, Kishore Patel and Nipun Panchal | *In the Circuit Court Branch, Sauk County, State of Wisconsin (Case No. 13-CV-390)* | Submit Expert Report on Economic Damages (April 14, 2014). |

34



| | | |
|---|---|---|
| TNJB, LLC v. Greenview Group of Illinois, LLC | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 11 L 005248)* | Submit Expert Report on TNJB's Damages (April 21, 2014). |
| Apex Consulting Group, Inc. v. TTMKK Holdings, LLC and MPS Partners LLC | *In the Circuit Court of Cook County, Illinois, County Department, Chancery Division (Case No. 2009 CH 47207)* | Submit Expert Report Rebutting Opinion A.2(d) of Plaintiff's Rule 213 Disclosures dated January 2, 2014 (May 19, 2014): and testify at deposition (July 24, 2014). |
| Mahmoud Shaffie, Maliheh Shaffie, Microsonic Computer, Inc. and Cell Phone Repair (CPR) Inc. v. Cell Phone Repair, LLC, CPR-Cell Phone Repair Franchise System, Inc. and Jeremy Kwaterski | *American Arbitration Association, San Francisco, California (Case No. 74 114 00275)* | Submit Expert Report Rebutting Claimants' Alleged Damages (June 2, 2014): and testify at deposition (June 24, 2014). |
| Neck & Back Clinic Ltd. v. Keefe and Associates LLC | *Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 2006L 11110)* | Submit Expert Report on Plaintiff's Damages As a Result of Defendant's August 2006 Publication (June 27, 2014). |
| Touhy and Touhy, Ltd. v. Ryan F. Stephan, James B. Zouras and Stephan & Zouras, LLP | *In the Circuit Court of Cook County, Illinois, County Department, Chancery Division (Case No. 07 CH 13552)* | Testify at deposition (August 13, 2014). |
| Nancy M. Harvey v. Stephen Wolfram, Wolfram Research, Inc. and Wolfram Alpha, LLC | *In the Circuit Court for the 18th Judicial Circuit, DuPage County, Illinois, Law Division (Case No. 2010L000593)* | Submit Expert Report Rebutting the Opinions of Peggy Tracy Dated April 24, 2014 (August 18, 2014): submit Expert Report Rebutting the Opinions of Steven R. Kursh Dated May 14, 2014 (August 18, 2014): and testify at trial (November 7 and 10, 2014). |
| Dwight Nelson v. Launch Creative Marketing, Inc. and Kevin Keating | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 2012L012357)* | Submit Affidavit (October 21, 2014): and submit Expert Report on Plaintiff's Economic Damages (November 24, 2014). |
| Cendrowski Corporate Advisors v. The Rosen Law Firm | *American Arbitration Association (Case No. 01-14-0000-6976)* | Submit Expert Report Regarding the Standard of Care Exercised by Dr. Barry J. Epstein In Re Puda Coal Securities, Inc., et al. (October 28, 2014): and testify at arbitration (November 18, 2014). |
| John W. Lee, III v. Chicago Youth Centers and J. Harry Wells | *In the United States District Court for the Northern District of Illinois, Eastern Division (Case No. 12 cv 9245)* | Submit Expert Report Regarding John W. Lee, III's Lost Salary and CYC's Financial Condition (November 24, 2014): and testify at deposition (January 15, 2015). |
| Bruce Levine, et al. v. First American Title Insurance Co. | *United States District Court for the Eastern District of Pennsylvania (Civil Action No.:09 842-JHS)* | Submit Expert Report On Title Insurance Premium Overcharges and Related Matters (January 9, 2015): submit Supplemental Expert Report On Title Insurance Premium Overcharges and Related Matters (May 1, 2015): and testify at deposition (May 15, 2015). |
| Stephanie Coleman, et al. v. Commonwealth Land Title Insurance Company | *United States District Court for the Eastern District of Pennsylvania (Civil Action No.:09-CV-679-JHS)* | Submit Expert Report On Title Insurance Premium Overcharges and Related Matters (January 9, 2015): testify at deposition (May 14, 2015): submit Responsive Expert Report – Responding to the Korman, Visser and Effner Reports: testify at deposition (October 27, 2015): testify at class action certification hearing (December 8, 2015): and submit Declaration Regarding Possible Overcharges in Defendants' Database (March 7, 2016). |
| Mitchell and Randi Schwartz, et al. v. Lawyers Title Insurance Company | *United States District Court for the Eastern District of Pennsylvania (Civil Action No.:09-CV-841-JHS)* | Submit Expert Report On Title Insurance Premium Overcharges and Related Matters (January 9, 2015): testify at deposition (May 14, 2015): submit Responsive Expert Report – Responding to the Korman, Visser and Effner Reports: testify at deposition (October 27, 2015): testify at class action certification hearing (December 8, 2015): and submit Declaration Regarding Possible Overcharges in Defendants' Database (March 7, 2016). |

35


| | | |
|---|---|---|
| Leemor Katz v. Joel J. Levin | *Circuit Court of Cook County, Illinois (Case No. 11 L 005157)* | Submit Expert Report On Unidentified Disbursements and Related Matters (February 12, 2015): and testify at deposition (April 13, 2015). |
| United States Securities and Exchange Commission v. Jason R. Hyatt, Jay Johnson and Hyatt Johnson Capital LLC | *United States District Court Northern District of Illinois Eastern Division (Case No.:1:08-cv-2224)* | Submit Michael D. Pakter's Expert Report On Hyatt Johnson Capital, LLC Manager Compensation Review (February 16, 2015). |
| Beth and Sheldon Gaffen et al. v. Charles H. Jesser, et al. | *Circuit Court of Cook County, Illinois, County Department, Chancery Division (Case No. 12 CH 32776)* | Submit Affidavit (March 13, 2015): submit Michael D. Pakter's Expert Report On Plaintiffs' Damages and Related Matters (May 3, 2017): submit Michael D. Pakter's Supplemental Expert Report On Plaintiffs' Damages and Related Matters (August 15, 2017): and testify at deposition (November 14, 2017). |
| Nicole Callaly vs. Lieberman Management Services Inc. and the Klein Creek Condominium Association | *Circuit Court for the 18th Judicial Circuit DuPage County, Illinois (Case No. 2011 L 000545)* | Submit Expert Report on Damages Suffered By Nicole Callaly (February 2, 2015): and testify at deposition (March 25, 2015). |
| Nestle Waters North America, Inc. v. Mountain Glacier, LLC | *Judicial Arbitration and Mediation Services (Case No.: 1340009869 and 1340010633)* | Submit Expert Report on Mountain Glacier's Lost Profits (April 1, 2015): and testify at deposition (May 1, 2015). |
| Stuart Simonsen and GMS Devco LLC v. BdS Quant Capital, LLC and BdS Quant, LLC. | *Circuit Court of Cook County, Illinois, County Department, Chancery Division (Case No. 11 CH05557)* | Submit Affidavit (April 17, 2015). |
| 26 BRIX, LLC. d/b/a B Cellars v. Vin Divino, Ltd | *American Arbitration Association (Case No. 01-14-0000-6831)* | Submit Affidavit (April 21, 2015): submit Expert Report on Vin Divino's Economic Damages (May 5, 2015): submit Supplementary Expert Report Responding to Questions 3 and 4 of Patrick L. Anderson's B Cellars Damages Analysis: and Analyzing B Cellars' Effective Wholesale Selling Prices (June 9, 2015): and testify at arbitration (August 28, 2015). |
| Wendy Guzman and Danielle Johnson, et al. v. Lincoln Technical Institute, Inc. et al. | *United States District Court District of Nevada (Case No. 2:13-cv-02251-JAD-VCF)* | Submit Expert Report On the Net Losses of the Green Valley Clinic (May 5, 2015): and submit Michael D. Pakter's Rebuttal Expert Report on the May 4, 2015 Forensic Analysis Report of Michael Saccomanno and Chad Keeports (June 29, 2015). |
| Vivian Makris, et al. v. John Svigos, et al. | *Circuit Court of Lake County, Illinois, County Department, Chancery Division (Case No. 14 CH 2391)* | Submit Affidavit (May 7, 2015). |
| A. L. Dougherty Real Estate Management Company, LLC. and Phyllis K. Dougherty v. Su Chin Tsai and Cube Global, LLC | *Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 13 L 3920)* | Testify at deposition pursuant to Illinois Supreme Court Rule 206(a)(1) (May 21, 2015): submit Michael D. Pakter's Expert Report on the November 2010 Transfer of Assets from March Fasteners to Cube Global and Related Matters (October 2, 2015): testify at deposition (October 12, 2015): and testify at trial (November 3-4, 2015). |
| Tresa Puthenveetil On Her Own Behalf and, Derivatively, On Behalf of Victory Pharmacy, Inc. and North Town Pharmacy, Inc. v. Arun Patel and Bharat Patel | *Circuit Court of Cook County, Illinois, County Department, Chancery Division (Case No. 09 CH 26982)* | Testify at deposition pursuant to Supplemental Rule 213(f)(3) Disclosures (May 28, 2015): and testify at trial (March 3, 2016). |



| Maria Ford et al. v. Gary Yasuda et al. | *United States District Court Central District of California (Case No.5:13-cv-1961-PSG-DTB)* | Submit Michael D. Pakter's Expert Report on the Net Losses of the Bakersfield, Clovis and Fairfield Clinics (June 10, 2015): submit Michael D. Pakter's Rebuttal Expert Report on the June 10, 2015 Report of Steven B. Boyles (July 8, 2015): testify at deposition (February 3, 2017), submit Opening Declaration Of Michael D. Pakter In Support Of Defendants Gary Yasuda And Amarillo College Of Hairdressing, Inc.'s Motion For Summary Judgment And/Or Order For Specifying Material Facts Existing Without Substantial Controversy Against Plaintiffs Maria Ford, Sundae Worthy, And Paige Martin On All Counts Of Their Second Amended Complaint (April 13, 2017): and submit the Declaration Of Michael D. Pakter In Support Of Defendants Gary Yasuda And Amarillo College Of Hairdressing, Inc.'s Motion For Summary Judgment And/Or Order For Specifying Material Facts Existing Without Substantial Controversy Against Plaintiffs Maria Ford, Sundae Worthy, And Paige Martin On All Counts Of Their Second Amended Complaint (June 12, 2017). |
| Dr. Nicholas Angelopoulos v. Keystone Orthopedic Specialists, S.C., WACHN, LLC, Martin R. Hall, M.D., Ira K. Dubin LTD. d/b/a Green Dubin & Co, and Ira K. Dubin | *United States District Court for the Northern District of Illinois, Eastern Division (Case No. 12-cv-05836)* | Submit Expert Report of Michael D. Pakter Rebutting the Opinions of Jay Sanders (June 26, 2015): testify at deposition (July 23, 2015): and testify at trial (June 2, 2017). |
| Michael Colgrove v. Shawn M. Davies and Shawn M. Davies, S.C., | *Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 2014-L-006745)* | Submit Michael D. Pakter's Expert Report on Michael Colgrove's Economic Damages (June 29, 2015): testify at deposition (July 31, 2015): and testify at trial (November 18, 2015). |
| Robert Irvine v. Owner Insurance Company and Auto Owners Insurance Company | *Circuit Court of 17ᵗʰ Judicial Circuit, Winnebago County, State of Illinois (Case No. 12 L 32)* | Submit Michael D. Pakter's Expert Report on Robert Irvine's Lost Wages Before Taxes As a Result of the March 15, 2010 Accident (July 29, 2015). |
| Unique Insurance Company v. Tri-State Insurance Agency | *Circuit Court of Cook County, Illinois Municipal Department, 1ˢᵗ District (Case No. 13 1107259)* | Submit Michael D. Pakter's Expert Report on the Lost Profits Sustained By The Tri-State Insurance Agency (September 18, 2015): and testify at deposition (March 7, 2016). |
| Benjamin Buttolph as Receiver for Mobile Doctors USA, LLC. Mobile Doctors USA, LLC., Mobile Doctors Management, LLC and Lake MI Mobile Doctor, P.C. v. Dike Ajiri, Christine Chung Kenney, Christopher Stemler, Eileen Ajiri and Samuel Ajiri | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 14-L-009268)* | Testify at deposition (October 30, 2015). |
| Federal Deposit Insurance Company As Receiver For First Southern Bank, Plaintiff, v. BKD, LLP, Defendant | *In the United States District Court for the Eastern District of Arkansas (Case No. 4:13 –cv-JM)* | Submit Expert Report (November 21, 2015): testify at deposition (December 17, 2015): and submit Rebuttal Expert Report (February 22, 2016). |
| Ryszard Skrzeczyna and Beata Skrzeczyna v. Imperial Homes, Inc. et al. | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 11 L 3260)* | Submit Michael D. Pakter's Calculations of Ryszard Skrzeczyna's Lost Wages and Medical Expenses (Excluding Loss of Household Services, Other Economic Damages and Prejudgment Interest) (October 16, 2015): testify at deposition (November 23, 2015 and March 1, 2016): and submit Medicare Set-aside Declaration (August 29, 2017) |
| In the Matter of CSX Intermodal Terminals, Inc. 5567-880-4 | *Jesse White, Secretary of State, State of Illinois, File No. C-C1-14* | Submit Expert Report On the December 31, 2010 Transaction (January 5, 2016). |



| | | |
|---|---|---|
| Samuel P. Mathew, M.D. v. Unum Life Insurance Company of America, and Provident Life and Accident Insurance Company | *United States District Court for the Northern District of Illinois, Eastern Division (Case No. 1:14-cv-08000)* | Submit Expert Report (March 7, 2016). |
| Dominick R. Voso v. Sharon Teresa Ewton, Kenneth Frank, and Frederic W. Frank, III | *In the United States District Court for the Northern District of Illinois, Eastern Division (Case No. 16-CV-00190)* | Submit Affidavit (March 8, 2016). |
| Thai Tours and Trans Airways Company, Ltd., v. BCI Aircraft Leasing, Inc., and Craig Papayanis | *In the United States District Court for the Northern District of Illinois, Eastern Division (Case No. 13-cv-08511)* | Submit Expert Report On Plaintiff's Lost Profits Claims (March 18, 2016): and testify at deposition (April 26, 2016). |
| Greg Tehle v. Texor Petroleum Co. Inc. and World Fuel Services, Inc. d/b/a Shell Gas Station | *In the Circuit Court for the Nineteenth Judicial District Lake County – Waukegan, Illinois (Case No. 14 L 905)* | Submit Michael D. Pakter's Expert Report On The Alleged Damages Suffered By Dr. Gregory S. Tehle on May 19, 2014 (April 4, 2016). |
| Diagnostic Imaging Associates, Ltd. v. Abrix Radiology Billing Services, LLC and The Abrix Group, LP, Abrix Billing Services, LLC, Robert Krypel and Linda Siegel | *In the Circuit Court of Cook County, Illinois, County Department – Law Division (Case No. 151470)* | Submit Affidavit (April 29, 2016). |
| In Re: The Former Marriage of Orenstein | *In The Circuit Court of the Nineteenth Judicial Circuit – Lake County, Illinois (Case No.: 03 D 560)* | Submit Michael D. Pakter's Expert Report On Richard Orenstein's Net Income For Child Support Purposes (April 29, 2016). |
| Greg Merdinger, individually and derivatively on behalf of Buck Broadway & Reade, LLC v. The John Buck Company LLC | *In the Circuit Court of Cook County, Illinois, County Department, Chancery Division (Case No.: 12 CH 37780)* | Submit Affidavits (April 29, 2016). |
| In Re: Blue Buffalo Company, LTD. Marketing And Sales Practices Litigation | *In The United States District Court For The Eastern District Of Missouri (Case No.: 4:14 MD 2562 RWS)* | Submit Affidavit (May 10, 2016). |
| Virginia Blasco v. Milina Gerasimov | *In the Circuit Court of Cook County, Illinois (Case No. 14 L 6697)* | Submit Michael D. Pakter's Rebuttal Expert Report Of Stan V. Smith's June 1, 2015 Letter Regarding Blasco's Loss of Earnings (May 17, 2016): testify at deposition (June 24, 2016): submit Michael D. Pakter's Supplementary Expert Report Of Stan V. Smith's Supplementary July 16, 2015 Letter Regarding Blasco's Loss of Earnings: and testify at trial (October 14, 2016). |
| Mark Oliver, Dana Shourd, Wayne Herman, and Signature Sales & Marketing, LLC, v. The Combined Group, LLC, and Combined Holding Group Inc. | *In the Circuit Court of Cook County, County Department, Chancery Division (Case No. 2013 CH 15233)* | Submit Michael D. Pakter's Expert Report On Amounts Due and Owing To Dana Shourd and Wayne Herman (May 20, 2016): testify at deposition (June 29, 2016): submit Michael D. Pakter's Expert Report On Damages Arising From Counter-Defendants Not Transferring Saleslink, LLC to Signature Sales & Marketing, LLC (January 25, 2017): submit Michael D. Pakter's Revised Expert Report On Damages Arising From Counter-Defendants Not Transferring Saleslink, LLC to Signature Sales & Marketing, LLC (May 3, 2017): and testify at trial (June 29, 2017). |
| Great Northern Lumber, Inc. v. Illinois Concrete - I.C.I., Inc., et al. and Willow Electrical Supply Co., Inc. v. Illinois Concrete - I.C.I., Inc., et al. | *In the Circuit Court of Cook County, Illinois, County Department, Chancery Division Mechanics Lien Section (Case No. 2010 CH 41543 Consolidated with 2010 L 66042 and 2011 CH 05114)* | Submit Michael D. Pakter's Expert Report (August 26, 2016): testify at deposition (November 11, 2016): and testify at trial (May 16, 2017). |



| | | |
|---|---|---|
| Fona International, Inc. v. Flavor Concepts, Inc. et al. | *In the Circuit Court of the Eighteenth Judicial Circuit, County Department, Chancery Division (Case No. 2010 CH 3722)* | Submit Michael D. Pakter's Expert Report and Disclosure - Rebuttal of Expert Report and Disclosure of Melissa A. Bennis - Concerning Defendants' Alleged Unjust Enrichment (September 6, 2016); and testify at deposition (September 28, 2016). |
| Unifin, Inc. v. Van Ru Credit Corporation | *In the Circuit Court Cook County, Illinois, County Department, Law Division (Case No. 2015 L 2181)* | Submit Michael D. Pakter's Expert Report On Unifin's Damages (September 9, 2016). |
| Branko Tupanjac, individually and derivatively on behalf of 233 E. Ontario LLC v. Ramiro Cazares, a/k/a Tony Cazares, James Cazares and Ivy Hotel LLC. (and counterclaims) | *In the Circuit Court Cook County, Illinois, County Department, Law Division (Case No. 2013 L 003364)* | Submit Michael D. Pakter's Expert Report on Plaintiff's Damages (September 30, 2016); submit Michael D. Pakter's Expert Report Responding to Joan Bowen's Letter Dated September 28, 2016 (November 21, 2016); and testify at trial (October 26, 30 and 31, 2017). |
| The People of the State of Illinois v. Jacquelyn Greco | *In the Circuit Court of Cook County, Illinois, County Department, Criminal Division (Case No. 13MC3001359)* | Submit Michael D. Pakter's Expert Report Concerning The Net Assets of Carl Anthony Gaimari Near The Date of His Death (October 4, 2016). |
| Robert Lauciello v. Vince & Sons Pasta Company, Robert Okon and Jo Mo Enterprises | *In The Circuit Court Of Cook County, Illinois, County Department, Law Division (Case No. 2013-L-002483)* | Submit Michael D. Pakter's Expert Report On Robert Lauciello's Lost Compensation (October 26, 2016); and testify at trial (December 12, 2016). |
| Edvard Grinyov v. Igor Maslennikov, Vem Transportation, Inc. 303 Taxi L.L.C., Suburban Dispatch LLC, Main Street Investments LLC, Henry Elizar, David Gauer and Eugene Rappaport | *In The Circuit Court of Cook County, Illinois, County Department, Law Division (Case No. 2009 L 008192)* | Submit Michael D. Pakter's Expert Report On Unnecessary Payments Made By 303 Taxi, LLC To Related Entities From 2008 to 2010 (October 14, 2016); and testify at deposition (November 15, 2016). |
| Stephanie Gentles, Richard Messerly, Gregg Brown and David Bair, individually and on behalf of all others similarly situated v. Healthport Technologies, LLC | *In The United States District Court, Southern District of Illinois (Case No.: 3:15-cv-00069-DRH-DGW)* | Submit Michael D. Pakter's Expert Report On Healthport Technologies, LLC's Allegedly Unauthorized Overcharges (December 9, 2016). |
| Vici Marketing, LLC V. United Marketing Group, LLC, Teleformix, LLC and SHC Direct, LLC D/B/A Inte Q or Inte Q Global, LLC | *In The United States District Court For The Northern District Of Illinois, Eastern Division (Case No.: 1:15-cv-11614)* | Submit Michael D. Pakter's Expert Report On Vici Marketing, LLC's Past and Future Unpaid Monthly Commissions (December 22, 2016). |
| State Farm Fire & Casualty Company v. David Brown | *In The Circuit Court of Cook County, Illinois, County Department, Chancery Division (Case No.: 16 CH 7201)* | Submit Affidavits (January 18, 2017 and January 25, 2017). |
| La Playita Cicero, Inc., d/b/a Serenata Restaurant and Bar, and Gerardo Meza, v. The Town of Cicero | *In the Circuit Court of Cook County, Illinois County Department – Law Division (Case No.: 11 CV 1702)* | Submit Michael D. Pakter's Expert Report Regarding The Opinions Of Dr. Gregory Green (January 25, 2017). |
| Nicholas Nesson, Individually and as Executor of the Estate of Jannette Nesson, deceased; Vilas Buckley Nesson, Julie Vandover, f/k/a Julie Nesson; Erika Stoker, f/k/a Erika Nesson; Abby Jean Alvarez, f/k/a Abby Jean Nesson; and Dusty Grant Nesson, v. William Warren Nesson | *In The Circuit Court Of The Twenty-Third Judicial Circuit Kendall County, Illinois (Cases No: 09 CH 0261 and 2014 L 68)* | Submit Michael D. Pakter's Expert Report On Monies Taken By William Warren Nesson From The Nesson Family Agreement And His Accounting Thereof And Related Issues (February 13, 2017); submit Michael D. Pakter's Supplemental Expert Report On Monies Taken By William Warren Nesson From The Nesson Family Agreement And His Accounting Thereof And Related Issues (September 11, 2017); and testify at trial (December 6, 2017). |

39



| | | |
|---|---|---|
| Nicholas Nesson, as former Agent in Fact of Jannette Nesson, and as Executor of the Estate of Jannette Nesson v. William Nesson | *In The Circuit Court Of The Twenty-Third Judicial Circuit Kendall County, Illinois (Case No.: 2015-L-76)* | Submit Michael D. Pakter's Expert Report On Monies Taken By William Warren Nesson From The Fidelity "Convenience" Account (February 13, 2017). |
| Nicholas Nesson, Individually and as Executor of the Estate of Jannette Nesson v. William Nesson | *In The Circuit Court Of The Twenty-Third Judicial Circuit Kendall County, Illinois (Case No.: 2014-L-0067)* | Submit Michael D. Pakter's Expert Report On Notes Payable To The Estate of Jannette Buckley Nesson From William Warren Nesson And Related Matters (February 13, 2017); and testify at trial (December 6, 2017). |
| C&C Power, Inc. and uPower Supplies LLC, v. C&D Technologies, Inc.; Diversified Assembly Technologies Corporation; EnXergy, LLC; and Gary Gray | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No.: 09 L 12138)* | Submit Michael D. Pakter's Expert Report Responding to the January 26, 2017 Expert Report of John R. Bone and Candice K. Quinn (March 14, 2017); and testify at deposition (April 6, 2017). |
| Ocean Tomo, LLC v. Jonathan Barney and PatentRatings, LLC | *In The United States District Court For The Northern District Of Illinois, Eastern Division (Case No.: 12 C 8450)* | Issue Preliminary Royalty Audit Report Under the September 1, 2004 License Agreement (May 14, 2014); testify at deposition (March 22, 2017); submit Michael D. Pakter's Expert Report On Royalties and Other Payments Owing By Ocean Tomo, LLC to PatentRatings, LLC (May 1, 2017); submit Michael D. Pakter's Expert Report Regarding Jonathan Barney's Member's Capital Account, Undistributed Profits And Distributions Owed To Jonathan Barney Under The Ocean Tomo, LLC Operating Agreement And Related Matters (May 1, 2017); submit Declaration of Michael Pakter (May 12, 2017); testify at deposition (May 19, 2017); testify at deposition (June 6, 2017); and testify at trial (July 26-28, 2017). |
| Demil Metals, Inc. v. Bedford Recycling, Inc. | *In the Circuit Court of Cook County, Illinois, County Department, Law Division (Case No.: 15 L 2694)* | Submit Michael D. Pakter's Expert Report Responding to the Preliminary Report of Michael Goldman Regarding the Accounting and Joint Venture Profitability (March 27, 2017); testify at deposition (June 14, 2017); and testify at trial (September 1, 2017). |
| Greg Allen, et al., v. International Truck and Engine Corporation, f/k/a Navistar International Corporation | *In The United States District Court For The Southern District Of Indiana, Indianapolis Division (Case No.:1:02-cv-00902-RLY-MJD)* | Submit Calculation of the Estimated Taxes Owing on Mr. Matthew Whitfield's Damages Award letter (May 2, 2017); and submit Response to the FTI Expert Report of the Estimated Taxes Owing on Mr. Matthew Whitfield's Damages Award letter (May 12, 2017). |
| David Craig v. Village Greene Phase IV Condominium Assn. Building C and M.W. Roofing and Aluminum Incorporated | *In the Circuit Court of Cook County, Illinois County Department Law Division (Case No. 14 L 9567)* | Submit Michael D. Pakter's Expert Report Responding to Stan Smith's February 28, 2017 Letter Regarding Lost Wages, Benefits and Household Services (May 15, 2015); and testify at deposition (June 16, 2017). |
| John Jamrozik v. Lynda Jamrozik | *In the Circuit Court of Cook County, Illinois (Case No.: 15 D 8976)* | Submit Michael D. Pakter's Calculation Report On The Fair Market Value Of John Jamrozik's 100% Ownership Interest In LaGrange Custom Concrete, Inc. as of December 31, 2016 (June 23, 2017); and submit supplemental letter (December 9, 2017). |
| D5 Iron Works Inc., Richard Lindner, Scott Kudingo, Bill Tonnesen, The Estate of Joe Weil, and Harry Harper v. Iron Workers Local 395, AFL-CIO, Thomas Williamson Sr., Jeffrey Veach, Joseph Upchurch and Sean Griswald | *In the District Court for the Northern District of Indiana, Hammond Division, Case No. 16 CV 200 JD PRC* | Submit Michael D. Pakter's Expert Report Responding to Paul C. Maurin's March 27, 2017 and March 28, 2017 Letters on D5 Iron Works Damages Allegedly as a Result of the January 2016 Incident (9.1.2017); and testify at deposition (9.6.2017). |




| | | |
|---|---|---|
| Bluff City, LLC v. Plote Investments, L.P. et al | *In the Circuit Court of Cook County, Illinois, Case No. 15 L 011334* | Submit Michael D. Pakter's Expert Report on Total Royalties on Chargeable Aggregates Owing to Bluff City, LLC for Calendar Years 2008 through 2016 (10.23.2017); testify at deposition (December 20, 2017); and update royalty calculations for additional information received (February 23, 2018). |
| Robert Bratton, Individually and On Behalf of All Others Similarly Situated, Plaintiff, v. The Hershey Company, Defendant. | *In the United States District Court For the Western District of Missouri, Civil Action No.: 2:16-cv-4322-C-NKL* | Submit Declaration of Michael David Pakter In Support of Plaintiff's Motion for Class Certification (October 27, 2017); and testify at deposition (December 1, 2017) |
| Halo Creative & Design Limited, Halo Trademarks Limited and Halo Americas Limited v. Comptoir Des Indes Inc., CDI International, and CDI Furniture | *In the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 1:14-cv-08196* | Submit Michael D. Pakter's Expert Report On Plaintiffs' Damages (November 7, 2017); submit Michael D. Pakter's Supplemental Expert Report On Plaintiffs' Damages (December 22, 2017); testify at deposition (January 4, 2018) and testify at trial (January 26, 2018). |
| Amy Montagnani And Steven Montagnani vs. Advocate Health and Hospitals Corporation, et al. | *In the Circuit Court of Cook County, Illinois County Department Law Division (Case No. 14 L 2915)* | Testify at deposition as to the following components of Amy Montagnani's damages: Household Services; Personal Care Services; Past and Future Medical Costs; and Lost Wages (November 28, 2017). |
| Jeffrey S. Reiniche, et al vs. Andrew M. Paul, et al | *In the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Case No. 2013 CH 05368* | Submit Michael D. Pakter's Rebuttal Expert Report of the Expert Report of James L. McGovern (December 22, 2017); and testify at deposition (January 16, 2018). |
| Wisconsin Central Ltd. v. Soo Line Railroad Company | *In the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 1:14-cv-08196* | Submit Michael D. Pakter's Expert Report Rebutting The Expert Report of Joseph D. Kenyon and Ryan D. Stretmater (January 16, 2018). |
| In Re John Johnson and LaNitta Johnson, Debtors, Chapter 7; Installation Specialists, Inc., v. John Johnson and La Nitta Johnson | *In the United States Bankruptcy Court for the Northern District of Illinois, Adversary No. 14-00856* | Submit Michael D. Pakter's Expert Report In Support of Plaintiff's Amended Adversary Complaint To Deny Discharge and Other Relief (February 7, 2018). |
| Knight Capital Partners Corporation v. Henkel AG & Company, KGaA | *In the United States District Court for the Eastern District of Michigan Southern Division, Case No. 16-12022, filed June 3, 2016* | Submit Michael D. Pakter's Expert Report on Plaintiff's Damages (March 1, 2018) |
| DT Grill, Inc. vs. Bolo and Lulu | *In the Circuit Court of Cook County, Illinois County Department Law Division (Case No. 16 L 2646)* | Submit Michael D. Pakter's Expert Report Estimating DT Grill's Property and Business Losses As a Result of the April 7, 2011 Fire (March 26, 2018) |

*Today's Date: 3.31.2018*

# Exhibit 2

## List of Bate Stamp Documents Reviewed

- JB00000040
- JB00000300
- JB00002951
- JB00003350
- JB00003453
- JB00003583
- JB00003881
- JB00004051
- JB00004179
- JB00004507
- JB00005609
- JB00006120
- JB00022748
- JB00023582
- JB00023583
- JB00023586
- JB00024959
- JB00026437
- JB00028353
- JB00030445
- JB00031252
- JB00035671
- JB00041801

# EXHIBIT N

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| 1. Arkansas | "To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore. There must also be some operative act, intent, or situation to make the enrichment unjust and compensable." *City of Alexander v. Doss,* 284 S.W.3d 74, 77 (Ark. Ct. App. 2008) (citing *El Paso Prod. Co. v. Blanchard,* 371 Ark. 634, 269 S.W.3d 362 (2007)). | "In *Smith v. Whitener,* 42 Ark. App. 225, 856 S.W.2d 328 (1993), this court held that privity of parties was not required in order for a plaintiff to assert the equitable remedy of unjust enrichment." *Abernathy v. Adous,* 149 S.W.3d 884, 891 (Ark. Ct. App. 2004) (Robbins, J., dissenting).<br><br>"'If one has money belonging to another, which, in equity and good conscience, he ought not to retain, it can be recovered although there is no privity between the parties.'" *Day v. Case Credit Corp.*, 427 F.3d 1148, 1154 (8th Cir. 2005) (quoting *Smith v. Whitener*, 856 S.W.2d 328, 329 (Ark. Ct. App. 1993)). | "It is not necessary, in order to create an obligation to make restitution, that the party unjustly enriched should have been guilty of any wrongful act. Even an innocent party who has been unjustly enriched may be compelled to surrender the fruits to another more deserving party." *Hall v. Bias*, 381 S.W.3d 152, 157–58 (Ark. Ct. App. 2011) (Abramson, J., concurring) (internal citations omitted). |
| 2. Colorado | "A party claiming unjust enrichment must prove that (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the | "Unjust enrichment is a form of quasi-contract or contract implied in law that does not depend in any way upon a promise or privity between the parties." | Colorado case law directs that unjust enrichment plaintiffs must allege misconduct on the part of the defendant only in limited situations (landlord- |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | benefit without commensurate compensation." *Sterenbuch v. Goss*, 266 P.3d 428, 437 (Colo. App. 2011) (citing *Lewis v. Lewis,* 189 P.3d 1134, 1141 (Colo. 2008)). | *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008) (citing *DCB Constr. Co., Inc. v. Cent. City Dev. Co.,* 965 P.2d 115, 119 (Colo.1998)). . | tenant) not applicable here. *Lewis v. Lewis*, 189 P.3d 1134, 1142 (Colo. 2008) (Colorado supreme court confirmed that the imposition of the misconduct requirement "is specific to a contractor's claim that the landlord was unjustly enriched and did not extend to all unjust enrichment circumstances."). |
| 3. Connecticut | "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 970 A.2d 592, 609–10 (Conn. 2009) (quoting *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282–83, 649 A.2d 518 (1994)). . | It is sufficient for the plaintiff to recover under a theory of unjust enrichment "if the defendant was benefited, the defendant did not pay for the benefit and the failure of payment operated to the detriment of the plaintiff." *United Coastal Ind., Inc. v. Clearheart Constr. Co., Inc.*, 802 A.2d 901, 905 (Conn. App. Ct. 2002). "The elements of a cause of action for unjust enrichment ... do not include a contractual, 'privity' requirement." *Bank of N.Y. Mellon v. Fid. Nat. Title Ins. Co.,* 2013 WL 5663263, at *4 (Conn. Super. Ct. | "Unjust enrichment, in turn, 'does not require the performance of any wrongful act by the one enriched ... Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property under such circumstances that in equity and good conscience he ought not to retain it.'" *U.S. Elec. Servs. v. Zolla*, 2015 WL 9948202, at *9 (Conn. Super. Ct. Dec. 17, 2015) (quoting *Trevorrow v. Marcuccio,* Superior Court, judicial district of Windham, Docket No. CV–08 5003144–S (August 21, 2009, Swords, J.), aff'd, |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | | Sept. 20, 2013) (quoting *Coastal, Inc. Plumbing–Heating v. TP Builders, Inc.,* Superior Court, judicial district of Ansonia–Milford, Docket No. CV 04 0084236 (April 11, 2005, Stevens, J.) (39 Conn. L. Rptr. 103, 104)). | *supra*). |
| 4. District of Columbia | "The elements of an unjust enrichment claim are '(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.'" *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) (quoting *News World Communs., Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)). | The District of Columbia's appellate courts do not appear to have considered the issue of whether privity is required to maintain an unjust enrichment claim. One trial court, however, denied a motion to dismiss where "Defendants cite no controlling District of Columbia authority supporting the proposition that an indirect purchaser may not state a claim for unjust enrichment." *Dahlgren v. Audiovox Communs. Corp.*, 2010 WL 2710128, *77.<br><br>Because District of Columbia does not have controlling authority, the court relied on Maryland law as useful | "A claim of unjust enrichment does not require fault on the part of the recipient of the benefit. His innocence in receiving the benefit does not mean that his retention of that benefit without payment is just." *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.,* 870 A.2d 58, 63 (D.C. 2005) (quoting *4934, Inc. v. District of Columbia Dep't of Employment Servs.*, 605 A.2d 50, 55-56 (D.C. 1992)) (internal quotation omitted). |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | | authority on common law questions to "deny the motion to dismiss and await the production of evidence so that it can evaluate the circumstances that might or might not warrant a finding that the plaintiff conferred a benefit on the defendants, that they retained it, and that it would be unjust to allow them to continue to retain it." *Id.* at \*79-80. | |
| 5. Hawaii | "Unjust enrichment, as a claim for relief, is not clearly defined in either the Hawai'i Revised Statutes or [its] jurisprudence." *Durette v. Aloha Plastic Recycling, Inc.*, 100 P.3d 60, 72 (Haw. 2004).<br><br>However, Hawaii courts abide by the general theory of the Restatement of Restitution that "[o]ne who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust." *Id.* (citing *Small v. Badenhop*, 701 P.2d 647, 654 (Haw. 1985)).<br><br>"To prevail on a claim for unjust enrichment, a party must prove that he/she/it conferred a benefit upon the | Hawaii's courts do not appear to have directly addressed whether privity is required to state a claim for unjust enrichment. However, one court rejected implementing a fiduciary relationship requirement as stating a fiduciary relationship aspect was not an element of the claim: "A valid 'claim for unjust enrichment requires only that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be | Hawaii state courts do not require a showing of misconduct to maintain an unjust enrichment claim. *Durette v. Aloha Plastic Recycling, Inc.*, 100 P.3d 60, 72-74 (Haw. 2004); *Combs v. Case Bigelow & Lombardi*, 122 Haw. 58, 222 P.3d 465, 2010 WL 370275, \*16-17 (Haw. Ct. App. 2010). |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | opposing party and that the retention of that benefit would be unjust." *Kona's Best Nat. Coffee LLC v. Mountain Thunder Coffee Plantation Int'l, Inc.*, 2017 WL 3310451, *20 (Ct. App. 2017) (internal citation omitted); *see also Porter v. Hu,* 169 P.3d 994, 1005 (Haw. Ct. App. 2007) ("In order for Plaintiffs to prevail on their Unjust Enrichment Claim . . . they must prove each of the following elements by a preponderance of the evidence: (a) receipt of a benefit without adequate legal basis by Defendants; and (b) unjust retention of that benefit at the expense of Plaintiffs." (citing *Small v. Badenhop,* 67 Haw. 626, 636, 701 P.2d 647, 654 (1985))). | unjust.'" *Combs v. Case Bigelow & Lombardi*, 2010 WL 370275, *17 (Haw. Ct. App. 2010) (quoting *Durette v. Aloha Plastic Recycling, Inc.*, 105 Haw. 490, 504, 100 P.3d 60, 74 (2004)). | |
| 6. Illinois | "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 935 N.E.2d 949, 962 (Ill. App. Ct. 2009) (citing *HPI Health Care Services, Inc.,* | Illinois does not require privity. *In re Sobel v. Franks*, 633 N.E.2d 820, 828 (Ill. App. Ct. 1994) (In discussing privity, the court relied on *M.J. McCarthy Motor v. Van C. Argiris & Co.*, 78 Ill.App.3d 725, 33 Ill.Dec. 529, 396 N.E.2d 1253 (1979) for the proposition that "there is no duty or privity requirement when bringing a claim for unjust | Misconduct is not required: a "'cause of action based upon unjust enrichment does not require fault or illegality on the part of [the] defendants; the essence of the cause of action is that one party is enriched and it would be unjust for the party to retain the enrichment.'" *Eighteen Inv., Inc. v. NationsCredit Fin. Servs. Corp.*, 876 |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (1989)). | enrichment.") <br><br> A plaintiff may pursue a cause of action for unjust enrichment where the benefit was transferred to the defendant by a third party "where (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 161-62, 137 Ill.Dec 19, 26, 545 N.E.2d 672, 679 (Ill. 1989) (internal citation omitted). | N.E.2d 1096, 1103 (Ill. App. Ct. 2007) (citations omitted). <br><br> "Usually, unjust enrichment results from wrongdoing, such as actual fraud or the breach of a fiduciary duty, but it is possible to be unjustly enriched without having done anything wrong." *Tummelson v. White*, 47 N.E.3d 579, 584–85 (Ill. App. Ct. 2015) (internal citations omitted). |
| 7. Iowa | "There are three elements to unjust enrichment: '(1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the | "We recognize unjust enrichment is a broad principle with few limitations." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 155 (Iowa 2001). | Iowa courts have not required that plaintiffs allege misconduct on the part of the defendant in order to recover on a theory of unjust enrichment as it "may arise from |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | benefit under the circumstances.'" *Pro Commercial, LLC v. K & L Custom Farms, Inc.*, 870 N.W.2d 273, 2015 WL 2406782, *6 (Iowa Ct. App. 2015) (quoting *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142,154-55 (Iowa 2001)). | "We have never limited this principle to require the benefits to be conferred directly by the plaintiff. Instead, benefits can be direct or indirect, and can involve benefits conferred by third parties. The critical inquiry is that the benefit received be at the expense of the plaintiff." *Id.* (internal citations omitted) | contracts, torts, or other predicate wrongs, or it may also serve as independent grounds for restitution in the absence of mistake, wrongdoing, or breach of contract." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154-55 (Iowa 2001). |
| 8. New York | "The elements of a cause of action to recover for unjust enrichment are '(1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'" *Gym Door Repairs, Inc. v. Astoria Gen. Contracting Corp.*, 43 N.Y.S.3d 381, 386 (App. Div. 2016) (internal citations omitted). | "[W]e agree . . . that a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment . . . ." *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) (although privity not required, purchasers of tires could not pursue unjust enrichment claim against manufacturer of chemicals used in the rubber-making process because the connection between the parties was "simply too attenuated"). | "'Unjust enrichment ... does not require the performance of any wrongful act by the one[s] enriched ... [, and even i]nnocent parties may frequently be unjustly enriched'" *Simpson & Simpson, PLLC v. Lippes Mathias Wexler Friedman LLP*, 14 N.Y.S.3d 258, 261 (App. Div. 2015) (quoting *Simonds v. Simonds*, 45 N.Y.2d 233, 242, 408 N.Y.S.2d 359, 380 N.E.2d 189 (1978)) (alterations in original). *See also Ptachewich v. Ptachewich*, 465 N.Y.S.2d 277, 278-79 (App. Div. 1983) ("Innocent parties |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | | | may frequently be unjustly enriched"). In fact, the defendant need not even take an "active role in obtaining the benefit" for a claim of unjust enrichment to lie. *Aetna Casualty and Surety Co. v. LFO Constr. Corp.*, 615 N.Y.S.2d 389, 391 (App. Div. 1994). |
| 9. Oklahoma | "Unjust enrichment arises 'from the failure of a party to make restitution in circumstances where it is inequitable,' or one party holds property 'that, in equity and good conscience, it should not be allowed to retain.'" *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820, 828 (Okla. 2016)*(quoting Harvell v. Goodyear Tire and Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006)). | Parties to an unjust enrichment claim need not have been in privity. *Berry v. Barbour*, 279 P.2d 335, 338 (Okla. 1955)("For a quasi contract neither promise nor privity . . . is necessary). | Oklahoma courts have taken a nuanced position on the issue of whether a showing of misconduct is required to pursue a claim of unjust enrichment, appearing to require the same, but where a constructive trust is sought. The Oklahoma Supreme Court weighed whether early, innocent investors in a "Ponzi" scheme who recouped their investments should surrender their profits under a theory of unjust enrichment to later, equally innocent investors who lost their principle investments when the pyramid was toppled. *Oklahoma Dep't of Sec. ex rel. Faught v.* |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|-------|----------------------------|------------------------|---------------------------|
|       |                            |                        | *Blair*, 231 P.3d 645, as corrected (Apr. 6, 2010).<br><br>The court noted that "[o]ne element of the claim which does not receive uniform treatment by courts is whether the party against whom relief is sought has engaged in wrongful conduct." *Id.* at 659.<br><br>The court began its analysis by noting it had previously "explained that a 'careful reading' of opinions in Oklahoma shows that when a constructive trust is sought to remedy unjust enrichment, there must be some active wrongdoing on the part of the person against whom recovery is sought." *Id.*<br><br>However, the litany of conduct potentially constituting wrongdoing had been ruled to include: "fraud, actual or constructive, by devices or abuse of confidence, by commission of wrong, or by any form of |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | | | unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." *Id.* (quoting *Easterling v. Ferris*, 651 P.2d 677, 680 (Okla. 1982)). Enrichment could be unjust "regardless of fault" on the part of the defendant. *French Energy, Inc. v. Alexander*, 818 P.2d 1234, 1237 (Okla. 1991). Turning to the conundrum of the two competing innocent factions of Ponzi scheme investors, the court ultimately adopted the compromise position: The ruling states that only profits that were "artificially high" – a quantitative determination to be set by the trial court – could be recovered from the innocent early investors. *Oklahoma Dep't of* |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | | | *Sec. ex rel. Faught v. Blair*, 231 P.3d 645, 663 as corrected (Apr. 6, 2010). |
| 10. West Virginia | "The Court has also indicated that if benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value." *Realmark Devs. Inc. v. Ranson*, 542 S.E.2d 880, 884-85 (W.Va. 2000) (citing *Copley v. Mingo County Board of Education*, 195 W.Va. 480, 466 S.E.2d 139 (1995)). | "Recovery of damages based upon the theories of quasi contract or unjust enrichment does not necessitate a finding of privity of contract." *Dunlap v. Hinkle*, 317 S.E.2d 508, 512 n.2 (W.Va. 1984).<br><br>"Quasi contractual obligations are imposed by the law for the purpose of bringing about justice without reference to the intention of the parties." *Id.* (citations omitted). | West Virginia courts do not appear to have considered the issue of whether a showing of misconduct is required to maintain an unjust enrichment claim.<br><br>Accordingly, this state does not appear to maintain such a requirement. |

# EXHIBIT O

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| 1. Alaska | The elements of unjust enrichment are: "1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Kiernan v. Creech*, 268 P.3d 312, 322 (Alaska 2012)(Christen, J., dissenting)(quoting *Alaska Sales and Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987)). | This state's courts do not appear to have considered the issue of whether a showing of privity is required to maintain an unjust enrichment claim. The Alaska Supreme Court has observed, however, that "[u]njust enrichment does not depend on any actual contract, or any 'agreement between the parties, objective or subjective.'" *Darling v. Standard Alaska Production Co.*, 818 P.2d 677, 679-80 (Alaska 1991) (quoting *Alaska Sales and Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987)). | Alaska state courts do not appear to have considered the issue of whether a showing of misconduct is required to maintain an unjust enrichment claim. Accordingly, this state does not appear to maintain such a requirement. |
| 2. Kansas | "The theory of unjust enrichment rests upon three elements: (1) a benefit conferred; (2) an appreciation or knowledge of the benefit by the one receiving the benefit; and (3) the acceptance or retention of the benefit under such circumstances as to make it inequitable to retain the benefit without payment of its value." *In re Estate of Sauder*, 156 P.3d 1204, 1220 (Kan. 2007) (citing *Haz–Mat Response, Inc. v. Certified Waste* | The theory of quasi-contract and unjust enrichment does not require privity. *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 910 P.2d 839, 847 (Kan. 1996) ("apart from unjust enrichment, . . . [one] has no right to a personal judgment against one not in privity."). | "[N]othing within the elements of unjust enrichment states that the defendant has to have created or participated in the circumstances that make the retention of the property unjust. Furthermore . . . our Supreme Court held that innocent third parties may be held liable for unjust enrichment." *Walsh v. Weber*, 2016 WL 4750102, at *21 |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | *Services, Ltd.,* 910 P.2d 839, 847 (1996); *J.W. Thompson Co. v. Welles Products Corp.,* 758 P.2d 738, 745 (1988)). | | (Kan. Ct. App. 2016) (citing *Nelson v. Nelson,* 288 Kan. 570, 580 (2009)). |
| 3. Kentucky | "For a party to prevail under the theory of unjust enrichment, they must prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks,* 297 S.W.3d 73, 78 (Ky. Ct. App. 2009) (citing *Guarantee Electric Co. v. Big Rivers Electric Corp.,* 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987)). | "A lack of privity of contract is a prerequisite to the initiation of an action *in quantum meruit.*" *Guarantee Electric Co. v. Big Rivers Electric Corp.,* 669 F. Supp. 1371, 1380 n.9 (W.D. Ky. 1987) (citation omitted). | Kentucky's state courts do not appear to have considered the issue of whether a showing of misconduct is required to maintain an unjust enrichment claim. Accordingly, this state does not appear to maintain such a requirement. |
| 4. Maine | "There are three elements of unjust enrichment: [ (1) ] a benefit conferred upon the defendant by the plaintiff; [ (2) ] an appreciation or knowledge by the defendant of the benefit; and [ (3) ] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Thibeault v. Brackett,* 938 A.2d 27, 32 (Me. 2007) (alterations in original) (citing *Aladdin Elec. Assoc. v. Town of Old* | "Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay, and the 'damages analysis is based on principles of equity, not contract.'" *Paffhausen v. Balano,* 708 A.2d 269, 271 (Me. 1998) (citing *Aladdin Elec. Assoc.* | Maine's state courts do not appear to have considered the issue of whether a showing of misconduct is required to maintain an unjust enrichment claim. Accordingly, this state does not appear to maintain such a requirement. |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | *Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994)). | *v. Town of Old Orchard Beach*, 645 A.2d 1142, 1145 (Me. 1994)).<br><br>"Lack of privity of contract . . . do[es] not bar an action for unjust enrichment" *Aladdin Elec. Assoc. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994) (citing *Pendleton v. Sard*, 297 A.2d 889, 894 (Me. 1972)). | |
| 5. Maryland | "Unjust enrichment consists of three elements: 1. A benefit conferred upon the defendant by the plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007) (citations omitted). | "[A] cause of action for unjust enrichment may lie against a transferee with whom the plaintiff had no contract, transaction, or dealing, either directly or indirectly." *Bank of Am. a Corp. v. Gibbons*, 918 A.2d 565, 571 (Md. Ct. Spec. App. 2007). | "Although the basis for recovery in unjust enrichment is not based on fault, misconduct or fault of one of the parties is sometimes considered in determining whether to permit recovery." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 352 (Md. 2007) (citation omitted).<br><br>An unjust enrichment claim very well may "deprive the defendant of benefits that in equity and good conscience he out not to keep, even though he may have received those benefits quite honestly in the first |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | | | instance, and even though the plaintiff may have suffered no demonstrable losses." *Dep't of Hous. and Cmty. Dev. v. Mullen*, 886 A.2d 900, 921 (Md. Ct. Spec. App. 2005) (citation omitted). |
| 6. Massachusetts | "To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value." *Infinity Fluids Corp. v. Gen. Dynamics Land Sys., Inc.*, 210 F. Supp. 3d 294, 309 (Mass. Dist. Ct. 2016) (citation omitted); see also *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009). | Privity is not required; there need not be any "contractual or fiduciary relationship" between the parties to an unjust enrichment claim. *Greenwald v. Chase Manhattan Mortg. Corp.*, 241 F.3d 76, 78 n.1 (1st Cir. 2001).<br><br>However, in the contractor-subcontractor context, absent a perfected lien, a subcontractor may not recover against an owner where the sole contractual arrangements are with the general contractor. *Brick Const. Corp. v. CEI Dev. Corp.*, 710 N.E.2d 1006, 1008 (Mass. App. Ct. 1999). | No fraud or wrongdoing is necessary for unjust enrichment claims. *Sutton v. Valois*, 66 Mass.App.Ct. 258, 267 (2006).<br><br>"Without fraud or wrongdoing . . . the only claim that could give rise to a remedy of constructive trust would be one of unjust enrichment . . ." *Rupprecht v. Rae*, No. MICV201100508F, 2013 WL 2445506, at *2 (Mass. Super. May 16, 2013). |
| | | | |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| 7. Missouri | "To establish the elements of an unjust enrichment claim, a plaintiff must show, (1) it conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances that are inequitable or unjust. *AIG Agency, Inc. v. Mo. Gen. Ins. Agency, Inc.*, 474 S.W.3d 222, 228 (Mo. Ct. App. 2015) (citing *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)). | Missouri does not require that the parties to an unjust enrichment claim have been in privity for the action to proceed. *Gate City Nat'l Bank v. Miners' & Farmers' Bank*, 168 S.W. 725 (Mo. 1914). *See also Mays-Maune & Assocs., Inc. v. Werner Bros.*, 139 S.W.3d 201, 207-08 (Mo. Ct. App. 2004) (holding "that the trial court erred in granting the general contractor's motion to dismiss the plaintiff's claim of unjust enrichment against the general contractor" where "the plaintiff sought to state its unjust-enrichment claims against three different parties, but it only had a direct contractual relationship with the subcontractor"). | Although not a requirement, Missouri courts do consider the defendant's wrongful conduct. *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo. App. 2000) ("One thing the courts consider is whether any wrongful conduct by the defendant contributed to plaintiff's disadvantage. While a defendant's good faith or absence of fault does not necessarily preclude restitution, the defendant's innocence may affect the extent to which the defendant is liable."). *See also Petrie v. LeVan*, 799 S.W.2d 632, 635 (Mo.Ct. App. 1990) (finding that an argument that a claim of unjust enrichment will not lie without a showing of fraud or wrongdoing by the defendant "simply does not avail."); *Brown v. Brown*, 152 S.W.3d 911, 918 (Mo. Ct. App. 2005) (noting that "it is not necessary that the unjustly enriched party be found to have engaged in legal wrongdoing or have had wrongful or malicious intent" in |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | | | order for a constructive trust to be imposed). |
| 8. Nevada | "Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is 'acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (internal citation omitted). | Even without privity of contract, a claim of unjust enrichment can still exist. "Although Ahern conceded that it could not prove privity of contract, Ahern asserted that it still had a colorable claim for unjust enrichment. The district court ultimately granted LVFF's motion for summary judgment in part and denied it in part. Specifically, the court found that while Ahern had abandoned its breach of contract claim, Ahern's claim for unjust enrichment presented a genuine issue for trial." *Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 182 P.3d 764, 765 (Nev. 2008) (affirming district court's judgment). | Nevada state courts do not appear to have directly considered the issue of whether a showing of misconduct is required to maintain an unjust enrichment claim. However, the Supreme Court of Nevada has stated that "constructive trust as a remedy is not ''limited to [fraud and] misconduct cases; it redresses unjust enrichment, not wrongdoing.''" *Waldman v. Maini*, 195 P.3d 850, 857 (Nev. 2008) (internal citation omitted and alternations in original). *See also Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257–58 (Nev. 2012) ("But while '[r]estitution may strip a wrongdoer of all profits gained in a transaction with [a] claimant ... principles of unjust enrichment will not support the imposition of a liability that leaves an innocent recipient worse off ... than if the |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | | | transaction with the claimant had never taken place.' That is the state of our law, too." (internal citations omitted).<br><br>Accordingly, this state does not appear to maintain such a requirement. |
| 9. New Mexico | "To prevail on a claim for unjust enrichment, 'one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust.'" *City of Rio Rancho v. Amrep Sw. Inc.*, 260 P.3d 414, 428–29 (N.M. 2011) (internal quotation omitted). | Privity between the parties is not required to pursue a claim of unjust enrichment in New Mexico. *Ontiveros Insulation Co., Inc. v. Sanchez*, 3 P.3d 695, 698-699 (N.M. Ct. App. 2000) ("the theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity."). | New Mexico state courts have not expressly required misconduct on the part of the defendant. Broadly, the principle of unjust enrichment is unrelated to "abstract notions of fault or neglect." *Teco Invs., Inc. v. Taxation and Revenue Dept., of State of New Mexico*, 957 P.2d 532, 538 (N.M. Ct. App. 1998). |
| 10. Pennsylvania | "The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *WFIC, LLC v.* | An unjust enrichment action may be maintained where the parties were not in privity. *First State Orthopaedics v. Concentra, Inc.*, 534 F.Supp.2d 500, 518-19 (E.D. Pa. 2007) (an unjust enrichment claim "does not require a specific | An unjust enrichment action may be maintained regardless of wrongdoing. *Vautar v. First Nat. Bank of Pennsylvania*, 133 A.3d 6, 13 (Pa. Super. Ct. 2016) (". . . FNB was not required to demonstrate wrongdoing on the part of the Appellants |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | *LaBarre*, 148 A.3d 812, 819 (Pa. Super. Ct. 2016) (citing *Styer v. Hugo*, 619 A.2d 347, 350 (1993)). | contract between the parties. . .”); *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 781 (M.D. Pa. 2008) (“because the plaintiffs are not in contractual privity with [defendants], the plaintiffs' claim for unjust enrichment may proceed against them.”); *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006) (allowing claims for unjust enrichment to proceed against defendants who were not parties to the original contract). | to prove unjust enrichment.”). |
| 11. Rhode Island | “‘[I]n order to recover . . . for unjust enrichment, a plaintiff is required to prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof.’” *Multi-State Restoration, Inc. v. DWS Properties, LLC*, 61 A.3d 414, 418–19 (R.I. 2013) (internal citations omitted). | “‘In the absence of privity between the parties, a party is permitted to seek equity through this quasi-contractual theory of unjust enrichment.’” *S. Cty. Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 214 (R.I. 2015) (citing language from the trial court and concurring with the trial court). | Rhode Island's state courts do not require a showing of wrongdoing on the part of the defendant to establish a claim of unjust enrichment. *Merchants Mut. Ins. Co. v. Newport Hospital*, 272 A.2d 329, 332 (R.I. 1971) (holding that “it is not necessary in order to create the obligation to make restitution or to compensate that the party unjust enriched be guilty of a tortious or fraudulent act”) (citation omitted). |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | | | |
| 12. South Carolina | The elements for unjust enrichment are: "(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Regions Bank v. Wingard Properties, Inc.*, 715 S.E.2d 348, 356 (S.C. Ct. App. 2011) (quoting *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868, 872 (2000)). | This state's courts do not appear to have considered the issue of whether privity is required to maintain an unjust enrichment claim. Accordingly, this state does not appear to maintain such a requirement. | South Carolina's state courts do not appear to have considered the issue of whether a showing of misconduct is required to maintain an unjust enrichment claim. Accordingly, this state does not appear to maintain such a requirement. |
| 13. South Dakota | In order to prevail on a claim of unjust enrichment, plaintiff must show: "(1) [defendant] received a benefit; (2) [defendant] was aware he was receiving a benefit, and (3) that it is inequitable to allow [defendant] to retain this benefit without paying for it." *Hofeldt v. Mehling*, 658 N.W.2d 783, 788 (S.D. 2003). | This state's courts do not appear to have considered the issue of whether privity is required to maintain an unjust enrichment claim. Accordingly, this state does not appear to maintain such a requirement. | South Dakota's state courts do not appear to have considered the issue of whether a showing of misconduct is required to maintain an unjust enrichment claim. Accordingly, this state does not appear to maintain such a requirement. |
| 14. Tennessee | "The elements of an unjust enrichment claim are: 1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would | "A plaintiff need not be in privity with a defendant to recover under a claim of unjust enrichment." *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) | Tennessee's state courts do not appear to have considered the issue of whether a showing of misconduct is required to maintain an unjust enrichment claim. Accordingly, this state |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (internal quotations and citation omitted). | (citing *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966)). "Our conclusion is consistent with other jurisdictions that have also concluded that the benefit received by a defendant need not be direct to establish an unjust enrichment claim." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). | does not appear to maintain such a requirement. |
| 15. Utah | Three elements must be proven in order to prevail on a claim for unjust enrichment: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Rawlings v. Rawlings*, 240 P.3d 754, 763 (Utah 2010) (internal citation omitted). | Although explained in the dissent, Utah does not require privity for claims of unjust enrichment. *Commercial Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773, 774-75 (Utah 1977) (Maughan, J., dissenting). | "The elements of unjust enrichment under Utah law do not include active wrongdoing . . . ." *In re McGavin*, 189 F.3d 1215, 1219 (10th Cir. 1999). |
| 16. Vermont | "A claim for unjust enrichment must allege that a benefit was conferred on defendant, that defendant accepted the benefit, and that it would be inequitable | Vermont courts do not require that the parties to an unjust enrichment claim be in privity. *Beauregard v.* | Vermont's state courts do not appear to have considered the issue of whether a showing of misconduct is required to maintain an unjust |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | to allow defendant to retain the benefit." *Johnson v. Harwood*, 945 A.2d 875, 881 (Vt. 2008) (citing *Center v. Mad River Corp.*, 561 A.2d 90, 93 (1989)). | *Orleans Trust, Co.*, 182 A. 182, 183-84 (Vt. 1936) ("in order to maintain this action there need be no privity between the parties . . . ."). | enrichment claim. Accordingly, this state does not appear to maintain such a requirement. |
| 17. Washington | "[I]n order to establish an unjust enrichment claim, the plaintiff must demonstrate that '(1) the defendant receive[d] a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment.'" *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wash. 2d 872, 899, 297 P.3d 688, 701 (Wash. 2013) (internal citation omitted). | The lack of privity between the parties will not preclude a claim of unjust enrichment. *Mill & Logging Supply Co. v. West Tenino Lumber Co.*, 265 P.2d 807, 813 (Wash. 1954) ("Want of privity between the parties is no obstacle to recovery under quasi-contract."). | "Unlike the law of conversion, which requires that the transferee have *wrongfully* received the property of another, the law of restitution requires only that the transferee have received the property of another under circumstances that result in the transferee's 'unjust enrichment.'" *Davenport v. Wash. Educ. Ass'n*, 197 P.3d 686, 698 (Wash. Ct. App. 2008) (emphasis in original). |
| 18. Wisconsin | "The elements of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge or appreciation of the benefit by the defendant; and (3) acceptance or retention by the defendant of such benefit under such circumstances that it would be inequitable for him or her to retain it without paying the value thereof." | Privity is not required to proceed with a claim of unjust enrichment in Wisconsin. *Puttkammer v. Minth*, 266 N.W.2d 361, 366 (Wis. 1978) ("This court's decisions establish that privity is not necessary for recovery on a theory of unjust enrichment."). *See* | There is no requirement that a defendant in an unjust enrichment claim in Wisconsin be at fault or guilty of any type of wrongdoing. *Aetna Finance Co. v. Selenske*, 1987 WL 267664, *2 (Wis. Ct. App. 1987) (citing Wis JI—Civil 3028: "'[it] is not necessary to prove that the |

| State | Elements of Cause of Action | No Privity Requirement | No Misconduct Requirement |
|---|---|---|---|
| | *Admiral Ins. Co. v. Paper Converting Mach. Co.*, 811 N.W.2d 351, 360 n.16 (Wis. 2012) (citing Wis JI—Civil 3028). | *also Sealtite Roofing v. Nelson*, 1981 WL 139333, *2 (Wis. Ct. App. 1981) ("Privity of contract is not necessary for recovery on a theory of unjust enrichment."). | recipient of the benefit was at fault or guilty of wrongdoing in any way . . . .'"). *See also Lawlis v. Thompson*, 405 N.W.2d 317, 320 n.1 (Wis. 1987) (citing jury instructions requiring no finding of fault); *Sulzer v. Diedrich*, 664 N.W.2d 641, 645 (Wis. 2003) ("while wrongful conduct an serve as the basis for a constructive trust, it is not necessary that the person on whom a constructive trust is imposed have committed any wrongdoing."). |

# EXHIBIT P

# STEELMAN, GAUNT & HORSEFIELD
**901 Pine Street, Ste. 110**
**P.O. Box 1257**
**Rolla, Missouri 65402**
**Telephone: (573)-341-8336**
**Facsimile: (573)-341-8548**

## FIRM PROFILE:

The law firm of Steelman, Gaunt & Horsefield was founded in 1993. It emphasizes civil trial practice with an emphasis on complex commercial litigation, Class Actions and trial practice. The firm has represented clients throughout Missouri in both state and federal courts as well as other jurisdictions, and has achieved the AV rating in the Martindale-Hubbell Law Directory and has been recognized in the Bar Register of Preeminent Lawyers, and the Missouri and Kansas Super Lawyers.

## MEMBERS OF THE FIRM:

**DAVID L. STEELMAN**, born Columbia, Missouri, March 8, 1953; admitted to the bar, 1978, Missouri and U.S. District Court, Western District of Missouri; 1930 U.S. District Court, Eastern District of Missouri. *EDUCATION*: University of Missouri Columbia (A.B. summa cum laude, 1975); University of Missouri (J.D. 1978). Phi Beta Kappa, Order of the Coif, Associate Editor, Missouri Law Review. Member of 80th, 81st, and 82nd Missouri General Assembly, 1978-1983. *MEMBER*: Phelps County and American Bar Associations; Missouri Bar (Member, Torts Committee, 1980 – Vice Chairman Torts Committee, 1996-2002); American Association for Justice; Missouri Association of Trial Attorneys; National Board of Trial Advocacy (Civil Trial Advocate). *PRACTICE AREAS*: Complex Commercial Litigation, including Class Action; Products Liability. David Steelman has tried cases to conclusion in more than forty counties in the State of Missouri and both the Western District and Eastern District of the United States District Courts of the State of Missouri. He has been appointed lead counsel in both state and national Class Actions. He has also been recognized as a Missouri and Kansas Super Lawyer in both the areas of trial practice and complex litigation. David Steelman is both an experienced trial lawyer and qualified in complex litigation and class actions. In the last ten years David Steelman has been appointed class counsel in both federal and state courts, many involving novel and difficult issues. In the case of *Mezyk, et al. v. U.S. Bank Pension Plan*, Case Number 3:09-cv-00384-JPG DGW. Steelman was appointed co-lead counsel in a challenge to the U.S. Banks Pension Plan. The Plan's conversion to a cash balance plan had been previously unsuccessfully challenged in both Illinois and Missouri, yet Steelman was able to achieve a nationwide class settlement. In his Order Judge Gilbert commented that, "given the complexity of this litigation, it took highly qualified attorneys performing at a high quality level to achieve the results obtained in this case, which stands virtually alone in this type of litigation." Member, Supreme Court Civil Rules Committee, 1988-1994; Member, Board of Curators for the University of Missouri, 2014-present. Email: dsteelman@steelmanandgaunt.com

**STEPHEN F. GAUNT**, born Columbia, Missouri, May 27, 1960; admitted to bar, 1985, Missouri; 1994, U.S. District Court, Eastern District of Missouri; 1995, U.S. District Court, Western District of Missouri. *EDUCATION*: University of Missouri Columbia (B.A. cum laude, 1982; J.D., 1985). Delta Theta Phi; Phi Beta Kappa; Golden Key. Law Clerk to: Honorable Albert L. Rendlen, Judge, Missouri Supreme Court, 1987-1989; Honorable James R. Reinhard, Judge, Missouri Court of Appeals, Eastern District, 1985-1987. *MEMBER*: Bar Association of Metropolitan St. Louis; Cole County, Phelps County, and American Bar Associations; The Missouri Bar; Missouri Association of Trial Attorneys; The American Association for Justice. *PRACTICE AREAS*: Complex Commercial Litigation, including Class Action; Personal Injury; Appellate Practice. Email: sgaunt@steelmanandgaunt.com


**PATRICK J. HORSEFIELD**, born Cuba, Missouri, March 2, 1973; admitted to bar, 2000, Missouri and U.S. District Court, Eastern and Western Districts of Missouri. *EDUCATION*: Truman State University (B.A., Political Science, 1995); University of Missouri Columbia School of Law (J.D., 2000). *MEMBER*: The Missouri Bar; The American Association for Justice; Missouri Association of Trial Attorneys. *PRACTICE AREAS*: Personal Injury Torts; Medical Malpractice; Products Liability. Email: phorsefield@steelmanandgaunt.com

# EXHIBIT Q



# Practice of KamberLaw

KamberLaw excels in litigating complex cases that call for attorneys with uncommon legal and technical insight, who act out of a spirit of public service and community-mindedness—qualities that have motivated our attorneys throughout their legal careers.

KamberLaw attorneys share a common goal of seeking justice through meaningful vindication of consumer rights. We invest significant time and resources in pre-complaint research and investigation, including expert consultation, equipping us to take on matters passed on by other consumer fraud attorneys, involving issues such as hazardous consumer products, mislabeled consumer products, sophisticated financial fraud, Internet technology, software, and computer hardware.

The attorneys of KamberLaw are not typical plaintiffs' attorneys. Our collective backgrounds as defense counsel, corporate compliance counsel, prosecutors, and consultants are important factors in our success—we can understand and communicate what went wrong and construct creative and workable ways to make it right. This deep understanding of technology, business, and law facilitates resolutions that provide timely relief to affected consumers while promoting better relationships in ongoing business-to-consumer dealings.

With offices in New York, California, and Illinois, KamberLaw is committed to advancing the cause of consumer rights from coast to coast.

## Selected Cases In Area of Consumer Protection

- *In Re Blue Buffalo Marketing & Sales Practices Litig.*, 4:14-md-2562 (E.D. Mo. 2014). Class counsel in case of alleged falsely labeled dog food. Settlement for $32 million.

- *Guido v. L'Oreal, USA, CV* 11-1067 CAS; *Altamura v. L'Oreal, USA*, CV 11-5465 CAS (C.D. Cal. 2012). Class counsel in false advertising case relating to flammability of hair product. New York and California classes certified.

- *In Re Clearspring Flash Cookie Litig.,* No. 10-cv-05948-GW*; In Re Quantcast Advertising Cookie Litig.,* 10-cv-05484-GW-JCG (C.D. Cal. 2010). Lead counsel in cases that resulted in landmark settlements including *cy pres* funds and injunctive relief that stopped third-party ad and analytics companies from illegally tracking consumers.

- *Valentine v. NebuAd,* No. C 08-05113 TEH (N.D. Cal. 2011). Lead counsel in case that related to ECPA (Wiretap Act) implications of online ad-serving company's use of deep packet inspection for behavioral targeting of online ads. Obtained a *cy pres* fund for ECPA violations.

- *Lofton v. Bank of America*, No. 3:07-cv-05892 (N.D. Cal. 2009). Lead counsel in class action alleging deceptive imposition of "fuel-related fees" in connection with airline ticket purchases. Settled for over $2,000,000 in cash, in addition to other relief.

- *McFerren v. AT&T Mobility*, No. 08-CV-151322 (Fulton Cty. Sup. Ct. 2009). Lead counsel in class action settlement involving 16 related cases against largest wireless service provider in the nation. Settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cook Cty., Ill. 2008). Appointed co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement valued at over $30 million provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re HP Power Plug and Graphic Card Litigation*, No. 06-2254 RMW (N.D. Cal. 2008). Co-Lead counsel in class action related to defective personal computer power plugs. Settlement provided for free repairs and reimbursement of affected consumers' out-of-pocket expenses.

- *In Re: ATI Tech. HDCP Litig.*, No. 5:06-CV-01303-JW (N.D. Cal. 2009). Co-lead counsel in class action related to defective video cards. Settlement provided for replacement of defective cards with upgraded cards.

- *In re Sony BMG CD Technologies*, No. 05-cv-09575 (S.D.N.Y. 2006). Co-lead counsel in case that resulted in settlement correcting risk of harm to computer users caused by digital rights management (DRM) software on music CDs. Settlement included replacement of all affected music CDs and an award of additional music CDs to class members.
- *Weaver v WebTV*, No. 793551 (Santa Clara Sup Ct., Cal. 2003). Co-lead counsel in certified nationwide consumer class action case alleging consumer fraud and deceptive advertising of computer services and capabilities. The settlement provided the class with a collective award with a guaranteed minimum face value of six million dollars.

## Selected Attorney Biographies

The attorneys of KamberLaw have been recognized as leaders in their fields by state and federal governments, national and international media groups, the courts, and peers. We have testified before legislatures and a variety of federal and state agencies on various consumer issues and have been asked to work on federal and state legislation involving issues of import to consumers. Our attorneys have appeared on national and international television and radio programs to discuss the intersection of technology and the law, and class action and consumer protection issues more generally.

**Scott A. Kamber**, the founding member of KamberLaw, has served as lead counsel in dozens of class actions resulting in hundreds of millions of dollars in relief for his clients. His cases have set precedents for consumer protection, Internet privacy rights, and data breach liability.

Mr. Kamber worked as a financial consultant and, after entering private legal practice, represented both plaintiffs and defendants in a wide range of commercial litigations, initially at Hughes Hubbard & Reed. His experience in defense practice continues to inform his philosophy of effective litigation.

His interest in Internet privacy rights began in the 1990s when he resolved what is believed to be the first Internet privacy case to recover a benefit for impacted class members. His interest in consumer rights and technology extends to new media, and he has led standard-setting litigations and resolutions involving digital rights management software for computer software, video games, and music. He was the only plaintiff's class action attorney invited to speak at the international conference of data protection and privacy commissioners, and was the only plaintiff's class action attorney invited by the Israeli Ministry of Justice, to speak on the topic of coordinating private class actions with government enforcement. Mr. Kamber was also a keynote speaker for the IAPP annual conference.

In pursuing these matters, Mr. Kamber has gained extensive courtroom experience and tried over 15 cases to verdict. Beyond litigation, Mr. Kamber's commitment to the value of effective negotiation and dispute resolution is apparent through an active and broad international law practice that has taken him to over 30 countries, handling negotiations on five continents and structured transactions with the Olympic Committees of several Eastern European and Latin American nations. Mr. Kamber has worked to vindicate the rights of African torture victims and worked with the President of the United Nations General Assembly. He frequently lectures on international matters and was a regular speaker and moderator for the Center for International Legal Studies based in Austria.

Mr. Kamber graduated *cum laude* from the University of California Hastings College of the Law in 1991 where he was *Order of the Coif*, Articles Editor for the *Hastings Constitutional Law Quarterly* and a member of the Moot Court Board. He graduated with University and Departmental Honors from The Johns Hopkins University. He is admitted to practice in the State of New York as well as the United States Supreme Court, the United States Courts of Appeals for the Second and Ninth Circuits, and the United States District Courts for the Southern and Eastern Districts of New York. Mr. Kamber is well versed in the procedures and practices of numerous arbitration forums, both domestic and international.

**Deborah Kravitz**, Senior Counsel at KamberLaw, has a unique career history that spans the corporate world, U.S. government, and a high-profile private practice. She has focused on complex civil and criminal litigation, including SEC enforcement and securities litigation, white-collar criminal defense, and corporate compliance. In addition to practicing with defense firms of national and international stature, most recently with Heller Ehrman, Ms. Kravitz served as a federal prosecutor in the Tax Division of the Department of Justice. In addition, as the Chief Compliance Officer of a global company serving the oil and gas industry, Ms. Kravitz was an integral member of the senior management team and was responsible for the implementation of a global compliance program during a period of time when the

company was under a deferred prosecution agreement arising from violations of the Foreign Corrupt Practices Act. This broad range of experience allows Ms. Kravitz to develop practical solutions to a wide array of commercial, litigation, and compliance matters, and informs Ms. Kravitz's unique perspective on plaintiffs' practice.

Ms. Kravitz graduated with honors from the University of Maryland School of Law in 1991, where she was an assistant editor of the *Law Review* and member of the Moot Court Board. Following law school, Ms. Kravitz clerked for the Honorable Deborah K. Chasanow in the District of Maryland. Ms. Kravitz received her B.A. in International Studies from Johns Hopkins University. She is admitted to practice in the States of California and Maryland, and the District of Columbia, as well as various federal courts.

**Christopher D. Moon**, a partner at KamberLaw, has successfully litigated a variety of consumer class-action cases on behalf of plaintiff classes in state and federal courts across the country. In addition, Mr. Moon has substantial experience in complex-commercial and intellectual-property litigation.

Prior to joining KamberLaw, Mr. Moon was a Deputy District Attorney in San Diego County for eight years, where he tried dozens of cases to jury verdict, including a number of high-profile prosecutions. In recognition of his success in those cases, Mr. Moon was awarded the District Attorney's Office Outstanding Achievement Award, as well as received the County of San Diego Proclamation. Mr. Moon is also a faculty member for the National Institute of Trial Advocacy.

Mr. Moon earned both his B.A. and J.D. at the University of California, Berkeley. He is admitted to practice in California as well as various federal courts.

**Naomi B. Spector**, a partner at KamberLaw, has substantial experience in complex, consumer litigation. Ms. Spector has represented clients in a diverse array of class action litigation, including those based on consumer product misrepresentations and violations of financial services regulations. Ms. Spector has authored articles addressing emerging issues in consumer protection laws, and has spoken at seminars concerning consumer class action litigation.

Ms. Spector graduated from the University of California, San Diego, and earned her J.D. at the University of California, Davis. She is admitted to practice in California as well as various federal courts.

3

# EXHIBIT R

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

DARYL WHITE, JR., Individually )
and on behalf of all others similarly )
situated, )
)
          Plaintiff, )   Civil Action No: 2:17-CV-C-04025-NKL
)
   vs. )
)
JUST BORN, INC., )
)
        Defendant. )

## STIPULATION FOR PURPOSES OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

For the purpose of reaching an agreement regarding the scheduling of the Defendant's 30(b)(6) depositions, Defendant stipulates to the following in connection with Plaintiff's motion for class certification as to its Mike and Ike and Hot Tamales candy, which are enclosed in opaque cardboard containers with the following dimensions: 3.25 inches x .75 inches x 6 inches:

1.    The fill and net weight of the Products (as defined in Plaintiff's Complaint) were consistent from one unit of Product to the next during the Class Period within expected ranges inherently determined by the physical characteristics of the candies and the nature of the filling process.

2.    The manner in which the Products were made, formed, and filled was materially the same from one unit of Product to the next during the Class Period.

3.    The boxes enclosing the candy, including the box dimensions, were materially the same from one unit of Product to the next during the Class Period.

4.     The amount of slack-fill contained in the Products was consistent from one unit of Product to the next during the Class Period within expected ranges inherently determined by the physical characteristics of the candies and the nature of the filling process.

5.     The extent of product settling, if any, was consistent from one unit of Product to the next during the Class Period within expected ranges inherently determined by the physical characteristics of the candies and the nature of the filling process.

6.     During the Class Period, Defendant sold "Promotional" Mike and Ike and Hot Tamales candy in cardboard containers with the same dimensions as the Products (3.25 inches x .75 inches x 6 inches) and included 10% more candy in the "Promotional" products.

7.     The proposed Classes are "so numerous that joinder of all members is impracticable," in satisfaction of Federal Rule of Civil Procedure 23(a)(1).

8.     The Products were sold in every state in the United States during the Class Period.

9.     Documents produced to Plaintiff by Just Born and that are prepared by Just Born may be used in Plaintiff's class certification briefing without authentication by deposition, and Just Born will not dispute the admissibility of those documents for purposes of class certification.

10.     This stipulation is not to be construed as any concession by Defendants that any class certification is warranted and Defendant opposes the certification of any class on the grounds to be set forth in its suggestions in opposition to such motion.

Dated:  March 30, 2018

By: /s/ Leo A. Bautista_____

*Attorneys for Defendant Just Born, Inc.*